

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed April 25, 2024**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNLAND MEDICAL FOUNDATION, *et al.*,[1] | ) | Case No. 23-80000 (MVL) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

### AMENDED ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF SUNLAND MEDICAL FOUNDATION AND 4750 GHW BUSH LAND HOLDINGS LLC

The Debtors[2] having:

(a) commenced their Chapter 11 Case on the Petition Date;

(b) continued to operate their business and manage their property as debtors-in-possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Sunland Medical Foundation (7757) and 4750 GHW Bush Land Holdings LLC (6536). The location of the Debtors' service address is P.O. Box 203024, Austin, Texas 78720.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan, as defined herein.

(c)     on February 27, 2024, filed *The Debtors' Motion for Entry of an Order: (I) Conditionally Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan; (III) Approving Certain Forms and Notices; (IV) Scheduling a Confirmation Hearing; and (V) Granting Related Relief* [Docket No. 400] ("Solicitation Procedures Motion");

(d)     on March 14, 2024, filed the *Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC* [Docket No. 440] (as amended, modified, and revised, the "Plan");

(e)     on March 14, 2023, filed the *Disclosure Statement for the Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC* [Docket No. 441] (the "Disclosure Statement");

(f)     caused (i) the Solicitation Packages (as defined in the Solicitation Procedures Motion) to be distributed to Holders of Claims entitled to vote on the Plan and (ii) the notices and opt-out forms described in the Solicitation Procedures Motion to be distributed to Holders of Claims and Interests not entitled to vote on the Plan, in accordance with the Disclosure Statement Order, as evidenced by the *Certificates of Service* [Docket Nos. 454, 485, and 495] (the "Solicitation Certificates of Service") filed on March 21, 2024, April 15, 2024, and April 17, 2024, respectively;

(g)     on April 9, 2024, filed the Plan Supplement [Docket No. 473];

(h)     on April 17, 2024, filed the Second Plan Supplement [Docket No. 497];

(i)     On April 17, 2024, filed the First Modification to the Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC [Docket No. 498] (the "First Modification");

(j)     On April 22, 2024, filed the *Second Modification to the Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC* [Docket No. 511] (the "Second Modification" and together with the First Modification, the "Modifications");

(k)     on April 22, 2024, filed the *Amended Certification of Stretto Regarding Tabulation of Votes in Connection with the Debtors' Disclosure Statement and Chapter 11 Plan* [Docket No. 513] (the "Voting Report");

(l)     on April 23, 2024, filed the *Declaration of Jonathan Nash in Support of Confirmation of the Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC* [Docket No. 514] (the "Nash Declaration");

The Bankruptcy Court having:

(a)     on March 15, 2024, entered the Disclosure Statement Order at Docket No. 446 conditionally approving the Disclosure Statement;

(b)    set April 16, 2024, at 5:00 p.m. (Central Time) as the deadline for filing objections to Confirmation of the Plan (the "Objection Deadline");

(c)    set April 16, 2024, at 5:00 p.m. (Central Time) as the deadline for voting on the Plan;

(d)    set April 23, 2024, as the date for the commencement of the confirmation hearing (as continued from time to time, the "Confirmation Hearing");

(e)    reviewed the Plan, the Disclosure Statement, the Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses and comments regarding the Confirmation of the Plan, including all objections, statements, and reservations of rights filed by parties-in-interest on the docket of these Chapter 11 Cases;

(f)    held the Confirmation Hearing commencing on April 23, 2024;

(g)    heard the statements and arguments made by counsel regarding Confirmation of the Plan;

(h)    considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings and other evidence presented at the Confirmation Hearing;

(i)    approved the Modifications by this order, with findings of fact and conclusions of law detailed herein, so that the Plan considered for confirmation at the Confirmation Hearing is the Plan inclusive of the modifications, as set forth in the Plan attached as **Exhibit A**;

(j)    made rulings on the record at the Confirmation Hearing; and

(k)    overruled on the merits all unresolved objections, reservations of rights, and other statements opposing Confirmation of the Plan, except as otherwise stated or indicated on the record.

NOW, THEREFORE, IT IS HEREBY FOUND AND CONCLUDED THAT:

A.    Findings of Fact and Conclusions of Law.  The findings and conclusions set forth in this Confirmation Order constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction and Venue</u>.  The Debtors are and were qualified to be debtors under section 109 of the Bankruptcy Code.  Venue in the Northern District of Texas was proper as of the Petition Date and continues to be proper.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

C.    <u>Voting Report</u>.  Prior to the Confirmation Hearing, the Voting Agent filed the Voting Report.  All procedures used to distribute solicitation materials to the applicable Holders of Claims and Interests and to tabulate the Ballots, were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.  Pursuant to sections 1124, 1126 and 1129(a)(10) of the Bankruptcy Code, at least one Impaired Class entitled to vote on the Plan has voted to accept the Plan.

D.    <u>Judicial Notice</u>.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases (including the Confirmation Hearing). Resolutions of any objections to Confirmation addressed on the record at the Confirmation Hearing are hereby incorporated by reference.

E.    <u>Notice</u>.  Except as otherwise supplemented herein, as evidenced by the Solicitation Certificates of Service, and the Voting Report, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Hearing, and the release

4

and exculpation provisions set forth in Article 8 of the Plan, along with all deadlines for voting on or objecting to the Plan, has been given to (a) all known holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, (c) all parties to Contracts and Leases, and (d) all taxing authorities listed on the Schedules or in the Claims Register, in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002, 3017, 3019, and 3020(b), and such transmittal and service were appropriate, adequate, and sufficient. Adequate and sufficient notice of the Confirmation Hearing and other dates, deadlines, and hearings described in the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and such order, and no other or further notice is or shall be required.

F.     <u>Solicitation</u>. Votes for final approval of the Disclosure Statement and acceptance and rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations. The Debtors and (a) Jonathan Nash, as Chief Restructuring Officer, and MeadowLark Advisors, LLC; and (b) the Professionals retained by the Debtors and the Committee in these Chapter 11 Cases, and their respective employees, agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her capacity as such, have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

G.     <u>Burden of Proof</u>. The Debtors, as proponent of the Plan, have satisfied their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

      H.     The Plan complies with all requirements of section 1129 of the Bankruptcy Code as follows:

      1.     <u>Proper Classification</u>.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article 3 of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Priority Tax Claims, which are not required to be classified.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

      2.     <u>Specification of Unimpaired Classes</u>.  Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article 2 of the Plan specifies all Classes of Claims and Interests that are not Impaired.

      3.     <u>Specification and Treatment of Impaired Classes</u>.  Pursuant to section 1123(a)(3) of the Bankruptcy Code, Article 4 of the Plan specifies the treatment of all Classes of Claims and Interests that are Impaired.

      4.     <u>No Unfair Discrimination</u>.  Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan provides the same treatment for each Claim or Interest within a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest, as applicable.

      5.     <u>Plan Implementation</u>.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate and proper means for the Plan's implementation. Immediately upon the Effective Date, sufficient Cash and other consideration provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.  Moreover, Article 5 and various other provisions of the Plan specifically provide adequate means for the Plan's implementation.

      6.     <u>Nonvoting Equity Securities</u>.  In accordance with section 1123(a)(6) of the Bankruptcy Code, there are no nonvoting equity securities.

      7.     <u>Liquidating Trustee and GUC Liquidating Trustee</u>.  To the extent that section 1123(a)(7) of the Bankruptcy Code applies to the selection of the Liquidating Trustee and the GUC Liquidating Trustee, the selection of the Liquidating Trustee and GUC Liquidating Trustee is consistent with the interests of holders of Claims and Interests and public policy.

8.      <u>Impairment/Unimpairment of Classes of Claims and Interests</u>.  Pursuant to section 1123(b)(1) of the Bankruptcy Code: (a) Class 1 Other Priority Claims, Class 2 Secured Tax Claims, and Class 9 Medicare and Medicaid Secured Claims are Unimpaired under the Plan; and (b) Class 3 DIP Financing Claims, Class 4 Sandton Secured Claims, Class 5 Trustee Advance Notes Secured Claims, Class 6 Bond Trustee Expense Claims, Class 7 AMI Secured Claims, Class 8 Bondholder Secured Claims, Class 10A Other Secured Claims (Talley Riggins), Class 10B Other Secured Claims (Polk Mechanical), Class 10C Other Secured Claims (Cardinal Health), Class 10D Other Secured Claims (Humana), Class 10E (PFC), Class 11 General Unsecured Claims, Class 12 Batsu Claims, Class 13 Intercompany Claims, and Class 14 Interests are Impaired under the Plan.

9.      <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  In accordance with sections 365(b) and 1123(b)(2) of the Bankruptcy Code, pursuant to Article 6 of the Plan, on the Effective Date, except with respect to the Insurance Policies, all Contracts and Leases shall be deemed rejected as of the Effective Date, unless a particular Contract or Lease (i) has previously been assumed or rejected under Bankruptcy Code section 365 pursuant to a Final Order of the Bankruptcy Court, or (ii) has expired or otherwise terminated pursuant to its terms.  The Debtors have exercised reasonable business judgment in determining whether to reject, assume, or assume and assign each of its Contracts and Leases under the terms of the Plan.  Each pre- or post-Confirmation rejection, assumption, or assumption and assignment of an Executory Contract pursuant to Article 6 of the Plan will be legal, valid and binding upon the Debtors and all other parties to such Contracts and Leases, all to the same extent as if such rejection, assumption, or assumption and assignment had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Effective Date under section 365 of the Bankruptcy Code.  Notwithstanding the foregoing, the D&O Policies are not rejected executory contracts.

10.      <u>Settlement of Claims and Causes of Action</u>.  All the settlements and compromises pursuant to and in connection with the Plan or incorporated by reference into the Plan, including, but not limited to, the AMI Settlement and DIP Lenders Settlement, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.  Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, any and all compromise and settlement provisions of the Plan constitute good-faith compromises, are in the best interests of the Debtors, the Debtors' Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

11.      <u>Other Appropriate Provisions</u>.  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including without limitation, provisions for (a) Distributions to Holders of Claims and Interests, (b) objections to Claims, (c) procedures for resolving Disputed Claims, and (d) the settlement, release, injunction, and exculpation provision in Article 5 of the Plan.

I.      Section 1129(a)(2) – Compliance of the Debtors with Applicable Provisions of the

Bankruptcy Code.  The Debtors, as proponents of the Plan, have complied with all applicable

provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code,

including, without limitation, sections 1123, 1125, and 1126 of the Bankruptcy Code and

Bankruptcy Rules 3017, 3018, and 3019.  In particular, the Debtors are proper debtors under

section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of

the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan was

(a) pursuant to the Disclosure Statement Order; (b) in compliance with all applicable laws, rules,

and regulations governing the adequacy of disclosure in connection with such solicitation; and

(c) solicited after disclosure to Holders of Claims or Interests of adequate information as defined

in section 1125(a) of the Bankruptcy Code.  Accordingly, the Debtors and (a) Jonathan Nash, as

Chief Restructuring Officer, and MeadowLark Advisors, LLC; and (b) the Professionals retained

by the Debtors and the Committee in these Chapter 11 Cases, and their respective employees,

agents, attorneys, accountants, consultants, representatives, and other professionals, each in his/her

capacity as such, have solicited votes on the Plan in good faith and in compliance with the

applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled

to the protections afforded by section 1125(e) of the Bankruptcy Code.

J.      Section 1129(a)(3) – Proposal of Plan in Good Faith.  The Debtors have proposed

the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has

been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances

surrounding the filing of the Debtors' Chapter 11 Cases, the Plan itself, and the process leading to

its formulation.  The Debtors' Chapter 11 Cases were filed, and the Plan was proposed, with the

legitimate purpose of allowing the Debtors to wind up their Estates.

K.      <u>Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as</u> <u>Reasonable</u>.  Pursuant to section 1129(a)(4) of the Bankruptcy Code, the payments to be made for services or for costs in connection with the Debtors' Chapter 11 Cases or the Plan are approved as set forth in the Plan.  The fees and expenses incurred by Professionals retained by the Debtors or the Committee shall be payable according to the orders approving such Professionals' retentions, other applicable Bankruptcy Court orders, or as otherwise provided in the Plan.

L.      <u>Section 1129(a)(5) – Disclosure of Identity of Proposed Management,</u> <u>Compensation of Insiders, and Consistency of Management Proposals with the Interests of</u> <u>Creditors and Public Policy</u>.   Pursuant to section 1129(a)(5) of the Bankruptcy Code, (a) information concerning the Person proposed to serve as the Liquidating Trustee and GUC Liquidating Trustee, respectively, have been disclosed in the Plan and/or Plan Supplement, and (b) the Liquidating Trustee's and GUC Liquidating Trustee's proposed compensation have been disclosed in the Plan Supplement, which satisfies the requirements of § 1129(a)(5) of the Bankruptcy Code.

M.      <u>Section 1129(a)(6) – No Approval of Rate Changes</u>.  Section 1129(a)(6) of the Bankruptcy Code is not applicable, because the Plan does not provide for rate changes by the Debtors.

N.      <u>Section 1129(a)(7) – Best Interests of Creditors and Interest Holders</u>.   The liquidation analysis included in the evidence related to the Plan that was proffered or adduced at or prior to, or in affidavits in connection with, the Confirmation Hearing, is reasonable.  The methodology used and assumptions made in such liquidation analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing, are reasonable.  With respect to each Impaired Class, each Holder of an

Allowed Claim or Interest in such Class has accepted the Plan or will receive under the Plan on

account of such Claim or Interest property of a value, as of the Effective Date, that is not less than

the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code.

      O.      <u>Section 1129(a)(8) – Conclusive Presumption of Rejection by Certain Impaired</u>

<u>Classes; Acceptance of the Plan by Each Impaired Class</u>.  At least one Impaired Class that was

entitled to vote has voted to accept the Plan.  Because the Plan provides that certain Classes of

Claims and Interests will be Impaired and no Distributions shall be made to Holders in such

Classes, such Holders are deemed conclusively to have rejected the Plan pursuant to section

1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

The Plan is confirmable nonetheless, because it satisfies sections 1129(a)(1) and 1129(b) of the

Bankruptcy Code, as found below and on the record at the Confirmation Hearing.

      P.      <u>Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to</u>

<u>Section 507(a) of the Bankruptcy Code</u>.  The treatment of Administrative Claims, Other Priority

Claims, and Priority Tax Claims under Article 2 and Article 3 of the Plan, as applicable, satisfies

the requirements of section 1129(a)(9) of the Bankruptcy Code.

      Q.      <u>Section 1129(a)(10) – Acceptance by at Least One Impaired Class</u>.  As set forth in

the Voting Report, at least one of the Impaired Classes has voted to accept the Plan.  Accordingly,

section 1129(a)(10) of the Bankruptcy Code is satisfied.

      R.      <u>Section 1129(a)(11) – Feasibility of the Plan</u>.  The Plan satisfies section

1129(a)(11) of the Bankruptcy Code.  Based upon the evidence proffered or adduced at, or prior

to, or in affidavits filed in connection with, the Confirmation Hearing, the Plan is feasible, and

Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the Debtors or any successor to the Debtors, except as such liquidation is proposed in the Plan. Furthermore, the Debtors will have adequate assets to satisfy their obligations under the Plan.

S.      <u>Section 1129(a)(12) – Payment of Bankruptcy Fees</u>.  Articles 2.5 and 5.38 of the Plan provides for the payment of all fees payable under 28 U.S.C. § 1930(a) in accordance with section 1129(a)(12) of the Bankruptcy Code.

T.      <u>Section 1129(a)(13) – No Retiree Benefits</u>.  Section 1129(a)(13) of the Bankruptcy Code is not applicable, because the Debtors have no retiree benefit plans.

U.      <u>Section 1129(a)(14) – Domestic Support Obligations</u>.  The Debtors are not required by any judicial or administrative order, or by statute, to pay any domestic support obligations, and therefore, section 1129(a)(14) of the Bankruptcy Code is not applicable.

V.      <u>Section 1129(a)(15) – Each Debtor Is Not an Individual</u>.  The Debtors are not an individual, and therefore, section 1129(a)(15) of the Bankruptcy Code is not applicable.

W.      <u>Section 1129(a)(16) – No Applicable Nonbankruptcy Law Regarding Transfers</u>. The Plan satisfies § 1129(a)(16) and any applicable nonbankruptcy law that governs transfers of property under a plan to be made by a nonprofit entity.  Section 1129(a)(16) does not require the Bankruptcy Court to remand or refer any proceeding, issue, or controversy to any court other than the Bankruptcy Court or to require the approval of any court (including, without limitation, any Texas or New Mexico court under relevant nonprofit laws) other than the Bankruptcy Court for any prior, current, or future transfer of property. Therefore, because the Plan contains the Bankruptcy Court's approval of any prior, current, or future property transfers, the Plan satisfies the requirements of § 1129(a)(16).

X.    <u>Section 1129(b) – Confirmation of Plan Over Rejection of Impaired Classes</u>.  The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Classes presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan does not discriminate unfairly with respect to Holders of Claims and Interests in the Classes deemed to reject the Plan because such Holders are receiving the same treatment as Holders of similarly situated Claims and Interests against the Debtors.  The Plan also is fair and equitable with respect to each Class deemed to reject the Plan because (a) it does not provide a recovery on account of any Claim or Interest that is junior in priority to the Impaired, non-accepting Classes of Claims and Interests and (b) no Holder of a Claim or Interest in any Class will receive or retain property under the Plan that has a value greater than 100% of such Holder's Allowed Claim or Interest.

Y.    <u>Section 1129(c) – Confirmation of Only One Plan with Respect to the Debtors</u>.  The Plan is the only plan that has been filed in this Chapter 11 Case with respect to the Debtors. Accordingly, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

Z.    <u>Section 1129(d) – Principal Purpose Not Avoidance of Taxes or Securities Act of 1933</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

AA.    <u>Section 1129(e) – Not a Small Business Case</u>.  Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases thereunder.

BB.    <u>Releases, Injunction, and Exculpation</u>.  The releases of Claims and Causes of Action described in Article 8 of the Plan, including (a) releases by the Debtors; (b) consensual releases of the Released Parties by the Releasing Parties; and (c) exculpation of the Exculpated

Parties constitute good faith compromises and settlements of the matters covered thereby. Such compromises and settlements are made in exchange for consideration and are in the best interests of Holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the resolution of the Debtors' Chapter 11 Cases in accordance with the Plan. Each of the release, injunction, and exculpation provisions set forth in the Plan: (1) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Debtors' Chapter 11 Case; (6) is consistent with sections 105, 1123, 1129, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable bankruptcy or non-bankruptcy law; and (7) given and made after due notice and opportunity for hearing.

CC.    <u>Confirmation Hearing Exhibits</u>. The exhibits presented at the Confirmation Hearing that were received into evidence are part of the record before the Bankruptcy Court.

DD.    <u>Objections to Confirmation of the Plan</u>. Any and all objections to Confirmation have been withdrawn, settled, overruled, or otherwise resolved.

EE.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 10.01 of the Plan and section 1142 of the Bankruptcy Code.

FF.    <u>Plan Supplement</u>. The Debtors filed the Plan Supplement on April 9, 2024. All documents included therein, including any supplementation or modifications thereto, comply with the terms of the Plan; and the filing and notice of such documents was adequate, proper and in

accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

GG.   <u>Modifications to the Plan</u>.  Pursuant to section 1127 of the Bankruptcy Code, the Modifications addressed at the Confirmation Hearing and any other modifications to the Plan described or set forth in this Confirmation Order constitute technical changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest. Notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code and do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply to the Plan.

HH.   <u>Transfers to Liquidating Trust and GUC Liquidating Trust</u>.  The transfers of the Liquidating Trust Assets to the Liquidating Trust and the GUC Liquidating Trust Assets to the GUC Liquidating Trust are legal and valid and consistent with the laws of the State of Texas.

II.   <u>Order Binding on All Parties</u>.  Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be immediately binding upon, and inure to the benefit of: (a) the Debtors; (b) the Liquidating Trust; (c) the GUC Liquidating Trust; (d) any and all Holders of Claims (irrespective of whether such Claims are Impaired under the Plan or whether the Holders of such Claims accepted, rejected or are deemed to have accepted, or rejected the Plan); (e) any other person giving, acquiring, or

14

receiving property under the Plan; (f) any and all non-Debtor parties to Contracts and Leases with

any the Debtors; and (g) the respective heirs, executors, administrators, trustees, affiliates, officers,

directors, agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any,

of any of the foregoing. On the Effective Date, all settlements, compromises, releases, waivers,

discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all

Persons.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS
FOLLOWS:

1.      The Plan (including the Plan Supplement and all transactions contemplated in the

Plan) is confirmed pursuant to section 1129 of the Bankruptcy Code.

2.      <u>Plan Supplement and Related Documents</u>.  The documents contained in the Plan

Supplement, (as subsequently supplemented or amended) and the exhibits to the Plan are integral

to the Plan and are approved by the Bankruptcy Court, and the Debtor, the Liquidating Trustee,

and the GUC Liquidating Trustee are authorized to take all actions required or appropriate under

the Plan, and the Plan Supplement documents to effectuate the Plan.

3.      The terms of the Plan, the Plan Supplement, and any exhibits thereto are

incorporated herein by reference, and are an integral part of this Confirmation Order.  The terms

of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary

documents shall be effective and binding as of the Effective Date (unless different date(s) is/are

specified in the applicable foregoing documents, in which case the applicable terms shall be

effective and binding on such date(s)).  The failure to specifically include or refer to any particular

article, section, or provision of the Plan, the Plan Supplement, the exhibits thereto, or any related

document in this Confirmation Order does not diminish or impair the effectiveness or

enforceability of such article, section, or provision.

4.      The compromises and settlements set forth in the Plan (including exhibits thereto) are approved and will be effective immediately and binding on all parties in interest on the Effective Date (unless different date(s) is/are specified in the applicable foregoing documents, in which case the applicable terms shall be effective and binding on such date(s)).

5.      <u>Consolidation of the Debtors</u>.  The Court having heard and overruled all objections to such consolidation filed or served by any party, pursuant to Article 1.4 of the Plan, the limited administrative consolidation of the Debtors solely for administrative purposes related to the Plan, including for purposes of voting, assessing whether the standards for Confirmation have been met, calculating and making Distributions under the Plan, filing post-Confirmation reports and paying quarterly fees to the U.S. Trustee, as set forth in Articles 2.5 and 5.38, is hereby approved. Pursuant to such administrative consolidation, as of the Effective Date: (a) all assets and liabilities of the Debtors shall be deemed merged; (b) all guarantees by one Debtor of the obligations of any other Debtor shall be deemed eliminated, and all guarantees executed by multiple Debtors of the obligations of any other Entity shall be deemed consolidated into a single obligation, so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the Debtors; and (c) each and every Claim Filed or to be Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against all Debtors and shall be deemed one Claim against and a single obligation of the Debtors.  Notwithstanding the foregoing, the Plan Consolidation shall not affect: (i) the legal or organizational structure of the consolidated Debtors, (ii) pre- or post-Petition Date Liens or security interests, or (iii) defenses to any Cause of Action.

6.      <u>Treatment of Intercompany Claims</u>.   All Intercompany Claims shall be characterized as equity for all purposes, regardless of the recordation of Intercompany Claims in

the Debtors' books and records. Intercompany Claims shall not receive a Distribution under the

Plan.  All Intercompany Claims are canceled as of the Effective Date.

      7.    <u>Releases by the Debtors</u>.  The following releases by the Debtors in Article 8.7 of

the Plan are approved:

      Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or arising from actual fraud, gross negligence, or willful misconduct, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date; *provided, however*, that the foregoing release shall not prohibit the Debtors, the Liquidating Trust, the Liquidating Trustee, the GUC Liquidating Trust, or the GUC Liquidating Trustee, as applicable, from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Party.  For the avoidance of doubt, except as set specifically forth herein, nothing in this Plan or any related document shall impair any rights with respect to any D&O Claims and all D&O Claims are expressly reserved and preserved.

      Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors' Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors' Estates, Liquidating Trust, or the GUC Liquidating Trust asserting any Claim or Cause of Action released under the Debtor Release.

      8.    <u>Releases by holders of Claims and Interests</u>.  The following releases by holders of

Claims and Interests in Article 8.8 of the Plan are approved:

As of the Effective Date, each of the Releasing Parties (other than the Debtors) shall be deemed to have expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the AMI Settlement, the DIP Lenders Settlement, the formulation, preparation, dissemination, negotiation, or filing of the DIP Financing, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any sale, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the DIP Financing, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the assumption, rejection, or amendment of any Contract and/or Lease; (e) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected through the liquidation (including pursuant to the Plan) or classified in the Plan; (f) the filing or administration of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, including, but not limited to, the Liquidating Trust and GUC Liquidating Trust; (g) pre-petition financing, including the financing from Sandton, AMI, and related to the Trustee Advance Notes; or (h) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing (collectively, the "Covered Released Matters").

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release any post-Effective Date obligations of any Entity under the Plan, including the Plan Supplement, or other document, instrument or agreement executed to implement the Plan.

      9.    Injunctions.  The following injunctions set forth in Articles 8.2 and 8.3 of the Plan

are approved:

All Holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against any of the Debtors, the Estates, the Liquidating Trustee, the GUC Liquidating Trustee, the Liquidating Trust, or the GUC Liquidating Trust with the intent or effect of interfering with the Consummation or implementation of the Plan or the transfers, payments or Distributions to be made thereunder.

(a)     <u>Satisfaction of Claims and Interests</u>.  The treatment to be provided for Allowed Claims and Interests shall be in full satisfaction, settlement, and release of each such Claim and Interest.

(b)     <u>Scope of Injunction</u>.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim or Interest are permanently enjoined from taking any of the following actions against the Debtors, the Liquidating Trustee, the GUC Liquidating Trustee, or any Released Party on account of any Claim or Interest: (1) commencing or continuing in any manner any action or other proceeding with respect to a Claim or Interest or based upon a theory which arises out of such Holder's Claim or Interest; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim or Interest; (3) creating, perfecting, or enforcing any Lien or Encumbrance with respect to a Claim or Interest; (4) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim or Interest, the Liquidating Trust Assets, GUC Liquidating Trust Assets, the Assets, or other property of the Estates; and (5) commencing or continuing any action that does not comply with or is inconsistent with the Plan.  For the avoidance of doubt, nothing in this injunction shall limit the rights of a Holder of a Claim to enforce the terms of the Plan.

(c)     <u>Release of Collateral</u>.  Except as expressly provided herein, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (1) each Holder of (i) an Allowed Secured Claim; and/or (ii) an Allowed Claim that is purportedly secured, on the Effective Date shall (2) turn over and release to the Liquidating Trust any and all property that secures or purportedly secures such Claim; and (3) execute such documents and instruments as the Liquidating Trustee requires to evidence such claimant's release of such property; and (4) on the Effective Date, all Claims, rights, title, and interest in such property shall revert to the Liquidating Trust, free and clear of all Claims, including (without limitation) Liens, charges, pledges, Encumbrances, rights of setoff, rights of recoupment, and/or security interests of any kind. No Distribution shall be made to or on behalf of any Holder of such Claim unless and until such Holder executes and delivers to the Liquidating Trustee such release of Liens.  Any such Holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or Disallowed.

(d)     <u>Cause of Action Injunction</u>.  On and after the Effective Date, all Persons or Entities other than the Liquidating Trustee and the GUC Liquidating Trustee, as applicable, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, retains authority to pursue in accordance with the Plan.

(e)     <u>Gatekeeper Provision</u>.  No enjoined party may commence or pursue a claim or Cause of Action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Cases.  The negotiation of the Plan, the administration of the Plan or property to be disturbed under the Plan, the wind down of the business of the Debtors, the administration of the

19

Liquidating Trust, the administration of the GUC Liquidating Trust, or any transaction in furtherance of the foregoing without the Bankruptcy Court (1) first determining after notice and a hearing, that such claim or Cause of Action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, actual fraud, or gross negligence against a Protected Party and (2) specifically authorizing such enjoined party to bring such claim or Cause of Action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article 8 of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.

10.     _Exculpation_.  The following exculpation of the Exculpated Parties in Article 8.6 of the Plan is approved:

To the fullest extent permitted by Bankruptcy Code section 1125(e), the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Cases, except for acts or omissions as a result of actual fraud, willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released under the Plan.

11.     _Liquidating Trustee_.  The appointment of Jonathan Nash of Meadowlark Advisors, LLC as the Liquidating Trustee, pursuant to the terms of the Plan and the Plan Supplement, including the Liquidating Trust Agreement, is approved in all respects effective as of the date of execution of the Liquidating Trust Agreement.  The Liquidating Trustee is authorized to carry out all rights and duties as set forth in the Plan and Liquidating Trust Agreement.

12.     _Vesting of Liquidating Trust Assets_.  On the Effective Date the Liquidating Trust Assets, as well as the rights, Privilege Rights, privileges (including but not limited to the attorney-client privilege), and powers of the Debtors and their Estates applicable to the Liquidating Trust Assets, shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens and Encumbrances, including, without limitation, all setoff and recoupment rights, for the benefit of

the Liquidating Trust Beneficiaries.  For the avoidance of doubt, (a) in no event shall the term "Liquidating Trust Assets" be deemed to include any released Claims against any Released Parties and (b) the Liquidating Trust shall not have the right to assert any released claims against any Released Parties.  Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in such Liquidating Trust Assets, and the Debtors shall have no further interest in or with respect to such Liquidating Trust Assets.  The transfers of the Liquidating Trust Assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of Texas.

13.     <u>GUC Liquidating Trustee</u>.   The appointment of David Gonzalez of Caliber Advisors, LLC as the GUC Liquidating Trustee, pursuant to the terms of the Plan and the GUC Liquidating Trust Agreement included in the Plan Supplement, is approved in all respects effective as of the date of execution of the GUC Liquidating Trust Agreement.  The GUC Liquidating Trustee is authorized to carry out all rights and duties as set forth in the Plan and the GUC Liquidating Trust Agreement.

14.     <u>Vesting of GUC Liquidating Trust Assets</u>.   On the Effective Date the GUC Liquidating Trust Assets, as well as the rights, Privilege Rights, privileges (including but not limited to the attorney-client privilege), and powers of the Debtors and their Estates applicable to the GUC Liquidating Trust Assets, shall automatically vest in the Liquidating Trust, free and clear of all Claims, Liens and Encumbrances, including, without limitation, all rights of setoff and recoupment, for the benefit of the GUC Liquidating Trust Beneficiaries.  For the avoidance of doubt, (a) in no event shall the term "GUC Liquidating Trust Assets" be deemed to include any released Claims against any Released Parties and (b) the GUC Liquidating Trust shall not have the right to assert any released claims against any Released Parties.  Upon the transfer of the GUC

Liquidating Trust Assets to the GUC Liquidating Trust, the GUC Liquidating Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in such GUC Liquidating Trust Assets, and the Debtors shall have no further interest in or with respect to such GUC Liquidating Trust Assets.  The transfers of the GUC Liquidating Trust Assets to the GUC Liquidating Trust are legal and valid and consistent with the laws of the State of Texas.

15.     <u>Dissolution of the Committee</u>.   On the Effective Date, the Committee shall be deemed dissolved with respect to the Debtors, the retention and employment of the Committee's Professionals shall be deemed terminated with respect to the Debtors, and the current and former Committee Members, professionals, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to this Chapter 11 Case, except for purposes of filing and/or objecting to final fee applications filed in these Chapter 11 Cases and to the extent necessary to prosecute any appeals or other matters with respect to which they have been granted standing.   This Debtors shall not be responsible for paying any fees or expenses incurred by Committee Members or Committee professionals and advisors after the Effective Date of this Plan.

16.     <u>Executory Contracts and Unexpired Leases</u>.  Entry of this Confirmation Order shall constitute approval of rejections of Contracts and Leases provided for under the Plan pursuant to section 365 of the Bankruptcy Code.   Any motions to assume or reject Contracts and Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date, the entry of which shall result in such assumptions or rejections becoming effective without the need for any further action that may otherwise be required under applicable non-bankruptcy law.  Notwithstanding the foregoing, the D&O Policies are not rejected contracts.

17.    <u>Implementation of Other Necessary Documents and Agreements</u>.  The Debtors,
Liquidating Trustee, or GUC Liquidating Trustee, as applicable, are authorized, without further
notice, or action, order or approval of the Bankruptcy Court or any other Person, to execute and
deliver all agreements, documents, instruments and certificates relating to such documents and
agreements necessary for implementation of the Plan and to perform their obligations thereunder,
including, without limitation, to pay all fees, costs and expenses thereunder in accordance with the
Plan.  The terms and conditions of such documents and agreements are reaffirmed or approved, as
applicable, and shall, upon completion of documentation and execution, be valid, binding, and
enforceable.

18.    <u>No Action Required</u>.  Under section 1142(b) of the Bankruptcy Code and applicable
non-bankruptcy law, no action of the directors, managers, or members of the Debtors is required
to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or
effectuate, as the case may be, the Plan and any contract, instrument, or other document to be
executed, delivered, adopted, or amended in connection with the implementation of the Plan.

19.    <u>Enforceability of Plan Documents</u>.  Pursuant to Sections 1123(a) and 1142(a) of the
Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Liquidating Trust
Agreement, the GUC Liquidating Trust Agreement, and all documents arising under or related to
the Plan shall be enforceable notwithstanding any otherwise applicable non-bankruptcy law, and
the Debtors, the Liquidating Trustee, and the GUC Liquidating Trustee are entitled to enforce the
terms of this Confirmation Order.

20.    <u>Released Parties</u>. The parties being released under the Plan are, collectively and in
each case in their capacity as such:  (a) the Debtors; (b) Beckman Coulter, Inc., Blue Signal, LLC,
Hegwood Group LP, and Insight Enterprises, Inc., but solely as to their actions taken as members

of the Committee; (c) the DIP Lenders; (d) the Bond Trustee; (e) Settling Bondholders, and

provided the Directing Bondholders or their affiliates are Settling Bondholders, each of RPM

Capital Management, LLC, as Bondholder Representative, Michele M. Newland, Delphi Capital

Management, Safety National Casualty Corporation, Philadelphia Indemnity Insurance Company,

VanEck High Yield Muni ETF and Van Eck Associates Corporation; (f) AMI; (g) Batsu; (h) James

Campbell; (i) Jonathan Nash, (j) Cooper Crouse, (k) Heidi Bragg, (l) Eugene Davis, (m) Peter

Caparis, (n) Kim Caraway, (o) Emily Fletcher, and (p) with respect to each of the foregoing entities

in clauses (a) through (g), such entities' Related Parties, including, without limitation, (1)

McDermott Will & Emery LLP; (2) Meadowlark Advisors, LLC; (3) SC&H Group; (4) Dickinson

Wright PLLC; (5) Caliber Advisors, LLC; (6) Lippes Mathias LLP, and (7) Stretto, Inc.  For the

avoidance of doubt, except with respect to releases in favor of, or otherwise applicable to, the

Debtor Professionals and the Directors and Officers listed above, nothing contained in this Plan

releases any Related Party, insider, or Affiliate of the Debtors, the Committee, or its members.  For

the further avoidance of doubt, Ovation Healthcare shall not be a Released Party or be released

from any claims or Causes of Action that the Debtors and their Estates have against Ovation

Healthcare.

21.     <u>Releasing Parties</u>. The parties giving releases under the Plan are, collectively, and

in each case in its capacity as such: (a) each Debtor; (b) each party-in-interest that does not elect

to opt out of the release by checking the box on its timely submitted Ballot or Non-Voting Release

Opt-Out Form, as applicable; (c) each Holder of a Claim or Interest who either (1) votes to accept

the Plan and does not elect to opt out of the Third-Party Release, (2) abstains from voting on the

Plan and does not elect to opt out of the Third-Party Release, or (3) votes to reject the Plan and

does not elect to opt out of the Third-Party Release; (d) each Holder of Claims or Interests that is

deemed to reject or presumed to accept the Plan but does not elect to opt out of the Third-Party

Release; and (e) with respect to each of the Entities in the foregoing clauses (a) through (d), each

such Entity's current and former Related Parties; provided that if any Holder of a Claim or Interest

does not elect to opt out of the Third-Party Release in any of its capacities, such Holder and each

of its Related Parties that is also a Holder of a Claim or Interest shall be deemed to have not opted

out of the Third-Party Release in all capacities.

22.    <u>Reservation of Causes of Action</u>.  Notwithstanding anything to the contrary in the

Plan, all claims and Causes of Action of the DIP Lenders and Bondholders against Ovation

Healthcare and Directors and Officers that are not released under the Plan are preserved and

nothing in the Plan releases or satisfies such claims or Causes of Action.

23.    <u>Indemnification Funds</u>.  Indemnification Funds recovered by the Liquidating Trust,

if any, will be shared on a *pari passu* basis between the Liquidating Trust and GUC Liquidating

Trust until the Liquidating Trust has recovered $300,000.

24.    <u>United States Right of Setoff and Recoupment</u>.  Nothing in this Order or the Plan

Document shall impair any setoff or recoupment rights of the United States. The United States

shall retain the right to recoup any overpayment arising out of the Debtors' Medicare Provider

Agreement.

25.    <u>State of Texas Plan Treatment</u>.  Nothing in the Plan, Confirmation Order or related

documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit

as defined in 11 U.S.C. § 101(27) of the state of Texas ("<u>Governmental Unit</u>") that is not a "claim"

as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or

after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory

statutes or regulations that any entity would be subject to as the owner or operator of property after

Confirmation; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in the Plan, Confirmation Order or related documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Order or the Plan Document shall impair any setoff or recoupment rights of the State of Texas. The State of Texas shall retain the right to recoup any overpayment arising out of the Debtor's Medicare Provider Agreement. The State of Texas and its agencies opt out of any and all releases provided in this Order or the Plan Document.

26.    <u>Talley Riggins Dispute</u>. Talley Riggins asserts that it is entitled to an Allowed Secured Claim for removable improvements pursuant to Texas Property Code §53.123 and/or Tex. Const., Art. XVI § 37 (the "<u>Talley Riggins Dispute</u>"), and the Debtors dispute this assertion. Notwithstanding anything to the contrary in the Plan, the Class 10A Other Secured (Talley Riggins) Claim is Disputed, and the Liquidating Trustee shall reserve $179,447.00 in the Disputed Confirmation Reserve pending an agreement of the parties resolving the Talley Riggins Dispute or a final order of the Court resolving same. The Debtors and Talley Riggins shall file a scheduling order to adjudicate the Talley Riggins Dispute within thirty (30) days of entry of this Order.

27.    <u>Polk Mechanical Claim</u>: The objection to the Other Secured Claim (Polk Mechanical) is sustained and the Claim held by Polk Mechanical is disallowed as duplicative and expunged in its entirety.

28.    <u>Cardinal Health Claim</u>: The objection to the Other Secured Claim (Cardinal Health) is sustained and the Claim held by Cardinal Health is reclassified in its entirety as a General Unsecured Claim.

29.     <u>Non-Estate Causes of Action</u>:  The Non-Estate Causes of Action of the Settling Bondholders, Permitted Non-Voting Bondholders, AMI, and Batsu shall be transferred to the Liquidating Trust without the need for any further action.

30.     <u>Pre-Confirmation Fees</u>:  The Debtors shall pay, on or within a reasonable time after the Effective Date of the Plan, all quarterly fees accrued and owing under section 1930 of Title 28 during the pendency of the Chapter 11 Cases.

31.     <u>Post-Confirmation Fees and Reports</u>:  All Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date.  Payment of Statutory Fees by the Debtors prior to the Effective Date shall be included in calculations of the maximum quarterly fee pursuant to 28 U.S.C. § 1930(a)(6) for the quarter in which the Effective Date occurs.  Any Statutory Fees that may be owed by the Debtors after the Effective Date shall be paid by the Liquidating Trust and the GUC Liquidating Trust pursuant to the distributions made by each respective trust in the aggregate on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed or by a trust that has been terminated.  The Liquidating Trust and GUC Liquidating Trust, as applicable, shall each provide the United States Trustee with post-confirmation quarterly reports, beginning with the second quarter of 2024, that shall include all their respective disbursements for that quarter.  For the avoidance of doubt, transfer of the Liquidating Trust Assets to the Liquidating Trust and the GUC Liquidating Trust Assets to the GUC Liquidating Trust shall not be a disbursement for purposes of assessing Statutory Fees.  Following the Effective Date and until the Chapter 11 Cases are closed, not less than quarterly, the Liquidating Trustee and/or the GUC Liquidating Trustee shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee regarding the liquidation or other administration of property under each respective

trustee's control pursuant to the Plan, distributions made by each respective trustee, as applicable, and other matters required to be included in such report. Statutory Fees will be assessed from disbursements from the Liquidating Trustee and the GUC Liquidating Trustee in the aggregate. The Liquidating Trust and GUC Liquidating Trust shall each be responsible for Statutory Fees on disbursements from their respective trusts and, if there have been no disbursements for a quarter, for one-half (1/2) of the Statutory Fee for such a quarter where there have been no disbursements. For the avoidance of doubt, if one of the trusts has been terminated, the remaining trust shall be solely responsible for payment of a quarterly minimum Statutory Fee. The Liquidating Trustee may close Case No. 23-80001 and administer any and all matters in Case No. 23-80000 as set forth in Article 5.33 of the Plan.

32.    <u>Notice of Confirmation, Effective Date, and Supplemental Administrative Expense Claims Bar Date</u>. The Debtors shall cause to be served a notice of the entry of this Confirmation Order, the Effective Date, and the Supplemental Administrative Expense Claims Bar Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Confirmation Notice</u>"), upon (a) all parties listed in the creditor matrix maintained by the Voting Agent, (b) all taxing authorities, and (c) such additional persons and entities as deemed appropriate by the Debtors, no later than five business days after the Confirmation Date.

33.    <u>No Stay of Confirmation Order</u>. Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

### END OF ORDER ###

Approved for Entry by:

Marcus A. Helt
TX Bar No. 24052187
Jack G. Haake
TX Bar No. 24127704
Grayson Williams
TX Bar No. 24124561
MCDERMOTT WILL & EMERY LLP

2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Tel:    (214) 295-8000
Fax:    (972) 232-3098
Email:  mhelt@mwe.com
        jhaake@mwe.com
        gwilliams@mwe.com


Natalie Rowles (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017-3852
Tel:    (212) 547-5400
Fax:    (212) 547-5444
Email: nrowles@mwe.com

**COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION**

# EXHIBIT A

## SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF SUNLAND MEDICAL FOUNDATION AND 4750 GHW BUSH LAND HOLDINGS LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNLAND MEDICAL FOUNDATION, *et al.*,[1] | ) | Case No. 23-80000 (MVL) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF
SUNLAND MEDICAL FOUNDATION AND
4750 GHW BUSH LAND HOLDINGS LLC**

Marcus A. Helt
TX Bar No. 24052187
Jack G. Haake
TX Bar No. 24127704
Grayson Williams
TX Bar No. 24124561
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Tel:    (214) 295-8000
Fax:    (972) 232-3098
Email:  mhelt@mwe.com
        jhaake@mwe.com
        gwilliams@mwe.com

Natalie Rowles (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017-3852
Tel:    (212) 547-5400
Fax:    (212) 547-5444
Email: nrowles@mwe.com

COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Sunland Medical Foundation (7757) and 4750 GHW Bush Land Holdings LLC (1614).  The location of Sunland Medical's corporate headquarters and the Debtors' service address is 4750 President George Bush Highway, Sachse, TX 75048.

## TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION .........................................1

    **1.1**    **Definitions.** ........................................................................................................1
    **1.2**    **Rules of Interpretation.** ..................................................................................23
    **1.3**    **Computation of Time.** .....................................................................................23
    **1.4**    **Deemed Consolidation.** ...................................................................................23

ARTICLE 2 PAYMENT OF CLAIMS AND FEES NOT REQUIRED TO BE CLASSIFIED...24

    **2.1**    **Claims and Fees Not Classified.** ....................................................................24
    **2.2**    **Administrative Expense Claims.** ....................................................................24
    **2.3**    **Professional Fee Claims.** ................................................................................25
    **2.4**    **Priority Tax Claims.** ......................................................................................26
    **2.5**    **Statutory Fees.** ...............................................................................................26

ARTICLE 3 CLASSIFICATION OF CLAIMS AND INTERESTS .........................................26

    **3.1**    **Summary.** ........................................................................................................26
    **3.2**    **Identification of Classes.** ................................................................................27
    **3.3**    **Elimination of Classes for Voting Purposes.** ................................................28

ARTICLE 4 TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ...........................28

    **4.1**    **Class 1:  Other Priority Claims.** ....................................................................28
    **4.2**    **Class 2:  Secured Tax Claims.** .......................................................................28
    **4.3**    **Class 3:  DIP Financing Claims.** ...................................................................29
    **4.4**    **Class 4:  Sandton Secured Claims.** ...............................................................29
    **4.5**    **Class 5:  Trustee Advance Notes Secured Claims.** .......................................29
    **4.6**    **Class 6:  Bond Trustee Expense Claims.** ......................................................30
    **4.7**    **Class 7:  AMI Secured Claims.** .....................................................................30
    **4.8**    **Class 8:  Bondholder Secured Claims.** ..........................................................30
    **4.9**    **Class 9:  Medicare and Medicaid Secured Claims.** ......................................31
    **4.10**   **Class 10:  Other Secured Claims.** ..................................................................31
    **4.11**   **Class 10A:  Other Secured Claims (Talley Riggins).** ...................................32
    **4.12**   **Class 10B:  Other Secured Claims (Polk Mechanical)** ................................32
    **4.13**   **Class 10C:  Other Secured Claims (Cardinal Health).** .................................33
    **4.14**   **Class 10D:  Other Secured Claims (Humana).** ..............................................33
    **4.15**   **Class 10E:  Other Secured Claims (PFC).** ....................................................33
    **4.16**   **Class 11: General Unsecured Claims.** ...........................................................34
    **4.17**   **Class 12: Batsu Claims.** .................................................................................35
    **4.18**   **Class 13:  Intercompany Claims.** ..................................................................35
    **4.19**   **Class 14: Interests.** ........................................................................................35

ARTICLE 5 MEANS OF IMPLEMENTATION OF THE PLAN ............................................35

    **5.1**    **Plan Funding Mechanism.** ............................................................................35
    **5.2**    **Formation of the Liquidating Trust.** ............................................................36

i

| 5.3 | Liquidating Trust Assets. | 36 |
| 5.4 | Establishment of Liquidating Trust Accounts and Reserves. | 37 |
| 5.5 | Powers and Duties of the Liquidating Trustee. | 37 |
| 5.6 | Selection and Appointment of Liquidating Trustee. | 40 |
| 5.7 | Indemnification of Liquidating Trustee. | 41 |
| 5.8 | Issuance of Liquidating Trust Interests. | 42 |
| 5.9 | Liquidating Trustee Reporting. | 42 |
| 5.10 | Fees and Expenses of the Liquidating Trustee. | 42 |
| 5.11 | Resignation, Removal, or Discharge of Liquidating Trustee. | 42 |
| 5.12 | Reliance on Documents. | 43 |
| 5.13 | Liquidating Trustee's Bond. | 43 |
| 5.14 | Grantor Trust. | 43 |
| 5.15 | Plan Distributions. | 44 |
| 5.16 | General Disposition of Assets. | 45 |
| 5.17 | Formation of the GUC Liquidating Trust. | 45 |
| 5.18 | GUC Liquidating Trust Assets. | 45 |
| 5.19 | Establishment of GUC Liquidating Trust Accounts and Reserves. | 46 |
| 5.20 | Powers and Duties of the GUC Liquidating Trustee. | 47 |
| 5.21 | Selection and Appointment of GUC Liquidating Trustee. | 48 |
| 5.22 | Indemnification of GUC Liquidating Trustee. | 49 |
| 5.23 | Issuance of GUC Liquidating Trust Interests. | 50 |
| 5.24 | GUC Liquidating Trustee Reporting. | 50 |
| 5.25 | Fees and Expenses of the GUC Liquidating Trustee. | 50 |
| 5.26 | Resignation, Removal, or Discharge of GUC Liquidating Trustee. | 51 |
| 5.27 | Reliance on Documents. | 51 |
| 5.28 | GUC Liquidating Trustee's Bond. | 51 |
| 5.29 | Grantor Trust. | 51 |
| 5.30 | Plan Distributions. | 52 |
| 5.31 | Corporate Action. | 53 |
| 5.32 | Liquidation and Dissolution of Debtors. | 53 |
| 5.33 | Closing of the Chapter 11 Cases. | 53 |
| 5.34 | Preservation and Abandonment of Records. | 54 |
| 5.35 | Administrative Expense Claim Bar Date. | 54 |
| 5.36 | Execution of Documents to Effectuate Plan. | 54 |
| 5.37 | Disallowance of Claims Without Further Order of the Bankruptcy Court. | 54 |
| 5.38 | Post-Effective Date Reports and Statutory Fees. | 55 |
| 5.39 | Cancellation of Notes, Instruments, Certificates, and Other Documents. | 55 |
| 5.40 | Insurance Preservation. | 56 |
| 5.41 | Claims Paid by Third Parties. | 57 |
| 5.42 | Special Issues Regarding Insured Claims. | 57 |

ii

**5.43**     **Preservation of Causes of Action.** ...............................................58
**5.44**     **Section 1146 Exemption from Certain Taxes and Fees.** .....................58
**5.45**     **Settlement Pursuant to Bankruptcy Rule 9019.** ......................................59
**5.46**     **Return of Deposits.** ...............................................................63

ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .63

**6.1**     **General Provisions.** ...............................................................63
**6.2**     **Rejection Damages Bar Date.** ..................................................64
**6.3**     **Effect of Post-Confirmation Rejection.** ......................................64

ARTICLE 7 CONDITIONS PRECEDENT; CONFIRMATION AND EFFECTIVE DATE ......64

**7.1**     **Conditions Precedent to Plan Confirmation.** ..............................64
**7.2**     **Conditions Precedent to the Effective Date.** ..............................65
**7.3**     **Waiver of Conditions Precedent.** ............................................65

ARTICLE 8 INJUNCTION; RELEASE; EXCULPATION ...............................................65

**8.1**     **General Injunctions.** ...............................................................65
**8.2**     **Injunctions Against Interference with Consummation or
Implementation of Plan.** .........................................................65
**8.3**     **Plan Injunction.** ...............................................................66
**8.4**     **All Distributions Received in Full and Final Satisfaction.** ...........67
**8.5**     **No Modification of *Res Judicata* Effect.** .................................67
**8.6**     **Exculpation for Debtors, Committee, and Estate
Professionals.** .......................................................................67
**8.7**     **Releases by the Debtors and Their Estates.** .............................68
**8.8**     **Releases by Holders of Claims (Third-Party Release)** .................68
**8.9**     **Term of Injunction or Stays.** ..................................................69

ARTICLE 9 PROVISIONS GOVERNING DISTRIBUTIONS ........................................70

**9.1**     **Payment in U.S. Dollars.** .....................................................70
**9.2**     **Distributions Only on Business Days.** ......................................70
**9.3**     **Unclaimed Distributions.** .....................................................70
**9.4**     **Timing of Distributions Generally.** .........................................70
**9.5**     **Timing of Distributions on Disputed Claims
Subsequently Allowed.** ...........................................................70
**9.6**     **No Payment or Distribution on Disputed Claims.** ......................70
**9.7**     **Disputed Distribution.** .........................................................71
**9.8**     **Transmittal of Payments and Notices.** ....................................71
**9.9**     **Record Date for Distributions.** ..............................................71
**9.10**    **Claims Administration Responsibility.** ..................................71
**9.11**    **Disputed Claims.** ...............................................................72
**9.12**    **Resolution of Disputed Claims.** ............................................73
**9.13**    **No Payments of Fractional Cents or Distributions of Less
Than Fifty Dollars.** ...............................................................74
**9.14**    **Setoff and Recoupment.** .......................................................74

iii

**9.15**    **Estimation of Claims.** .................................................................74

**9.16**    **No Recourse.** .................................................................................75

**9.17**    **Automatic Disallowance and Expungement of Certain Claims.** ...........................................................................................75

**9.18**    **Tax Withholding and Reporting Requirements.** .....................75

**9.19**    **No Distribution in Excess of Allowed Amount of Claim.** .......76

ARTICLE 10 PLAN INTERPRETATION, CONFIRMATION AND VOTING ........................76

**10.1**    **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired.** ...........................................76

**10.2**    **Withdrawal and Modification of Plan.** ......................................76

**10.3**    **Voting of Claims.** .........................................................................76

**10.4**    **Acceptance by Impaired Class.** ..................................................76

**10.5**    **Presumed Acceptances of Plan.** .................................................76

**10.6**    **Presumed Rejections of Plan.** ....................................................77

**10.7**    **Cramdown.** ...................................................................................77

ARTICLE 11 RETENTION OF JURISDICTION BY BANKRUPTCY COURT .....................77

ARTICLE 12 MISCELLANEOUS PROVISIONS ................................................................78

**12.1**    **Headings.** .......................................................................................78

**12.2**    **No Attorneys' Fees.** .....................................................................78

**12.3**    **Dissolution of Committee.** ..........................................................78

**12.4**    **Additional Documents.** ...............................................................78

**12.5**    **Governing Law.** ............................................................................79

**12.6**    **Notices.** ..........................................................................................79

**12.7**    **No Discharge.** ...............................................................................79

**12.8**    **Claims In Dollars.** .......................................................................80

**12.9**    **Term of Injunctions or Stays.** ....................................................80

**12.10**   **Entire Agreement.** .......................................................................80

**12.11**   **Severability.** ..................................................................................80

**12.12**   **No Waiver or Estoppel.** ..............................................................80

**12.13**   **Conflicts.** .......................................................................................80

**12.14**   **No Admissions.** ............................................................................81

**12.15**   **Post-Effective Date Notice.** ........................................................81

**12.16**   **Deemed Acts.** ...............................................................................81

**12.17**   **Reservation of Rights.** .................................................................81

**12.18**   **Binding Effect.** .............................................................................81

iv

## INTRODUCTION

Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC, as debtors and debtors-in-possession in these Chapter 11 Cases (defined below), respectfully propose the following Chapter 11 Plan pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I of the Plan.

The Plan contemplates a liquidation of the Debtors' assets and the resolution of all outstanding Claims against the Debtors. It also includes settlements between the Debtors, the DIP Lenders, AMI, the Bond Trustee, and the Committee to resolve various disputes between these parties that will facilitate a Distribution to Holders of General Unsecured Claims, as more fully described in the Plan. The Debtors have run a sale process for the sale of substantially all their assets. The Plan will distribute proceeds from the sale and create a Liquidating Trust to pursue certain causes of action, wind down the Debtors' Estates, and make Distributions to Holders of Allowed Claims pursuant to the terms of the Plan, Liquidating Trust Agreement, and GUC Liquidating Trust Agreement. The Plan will also create a GUC Liquidating Trust for the purposes of administering the General Unsecured Claim Settlement Payment, reconciling General Unsecured Claims, and making Distributions to Holders of Allowed General Unsecured Claims

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, the sale process, and a summary and analysis of the Plan and other related matters, including Distributions to be made under the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Only Holders of certain Claims specified in Section 3.2 are entitled to vote on the Plan.

**ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS ARE URGED TO CAREFULLY READ THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE 8 BECAUSE SUCH PROVISIONS AFFECT NOT ONLY SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST THE DEBTOR, BUT ALSO SUCH HOLDERS' RIGHTS AND CLAIMS AGAINST CERTAIN NON-DEBTOR PERSONS IDENTIFIED IN SUCH ARTICLE. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, AND THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## SUMMARY OF THE PLAN

1. **Summary Only**. The following is a brief summary of the Plan's general terms and does not form a part of the Plan. This summary is qualified in its entirety by reference to the provisions of the Plan. Capitalized terms used in this summary are defined in the Plan.

2. **Plan Summary**. The Plan's goal is to distribute proceeds from the Bankruptcy Court-approved sale of substantially all the Debtors' Assets. The Plan will also create a Liquidating Trust and appoint a Liquidating Trustee to pursue certain Causes of Action and wind down the Debtors' Estates and make Distributions to Holders of Allowed Claims pursuant to the terms of this Plan. Finally, the Plan will create a GUC Liquidating Trust and appoint a GUC Liquidating Trustee to reconcile General Unsecured Claims and make Distributions to Holders of Allowed General Unsecured Claims from the GUC Liquidating Trust Assets, which consist of the General Unsecured Claim Settlement Payment.

3. **Treatment of Administrative Expense Claims**. Except to the extent that the Debtors (or the Liquidating Trustee) and the Holder of an Allowed Administrative Expense Claim agree to less favorable treatment, a Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim, which shall be subject to Article 2.3 and a DIP Financing Claim, which shall receive treatment in Class 3) shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim (a) as soon as practicable following the later of the Effective Date and the date upon which the Court enters a Final Order Allowing any such Administrative Expense Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as agreed by the Holder of any such Administrative Expense Claim. If any Disputed Administrative Expense Claim exists on the Effective Date, then the Liquidating Trustee shall hold and maintain Cash in the Disputed Confirmation Reserve in an amount equal to all outstanding Disputed Administrative Expense Claims until such dispute is resolved consensually or by Final Order. **Holders of Administrative Expense Claims that are required to, but do not, file and serve a request for payment of such Administrative Expense Claims by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.**

4. **Treatment of Priority Tax Claims**. Unless otherwise agreed to by the parties, each Holder of an Allowed Priority Tax Claim will receive Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim either (a) in full on the Effective Date, or (b) in regular installment payments over a period ending not later than five (5) years after the Petition Date, which treatment is not less favorable than that provided to the General Unsecured Creditors, in accordance with Bankruptcy Code section 1129(a)(9)(C); *provided, however*, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid by the Liquidating Trustee in the ordinary course of business in accordance with the terms thereof. If any Disputed Priority Tax Claim exists on the Distribution Date, then the Liquidating Trustee shall hold and maintain Cash in the Disputed Confirmation Reserve in an amount equal to all outstanding

Disputed Priority Tax Claims until such dispute is resolved consensually or by Final Order.

5.    **Treatment of Statutory Claims**. All Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date.  Payment of Statutory Fees by the Debtors prior to the Effective Date shall be included in calculations of the maximum quarterly fee pursuant to 28 U.S.C. § 1930(a)(6) for the quarter in which the Effective Date occurs.  Any Statutory Fees that may be owed by the Debtors after the Effective Date shall be paid by the Liquidating Trust and the GUC Liquidating Trust pursuant to the distributions made by each respective trust in the aggregate on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed or by a trust that has been terminated.  If there have been no disbursements by both the Liquidating Trust and the GUC Liquidating Trust for a quarter, each of the Liquidating Trust and the GUC Liquidating Trust shall pay one-half (1/2) of the Statutory Fee for such a quarter where there have been no disbursements. The Liquidating Trust and GUC Liquidating Trust, as applicable, shall each provide the United States Trustee with post-confirmation quarterly reports that shall include all their respective disbursements for that quarter.  For the avoidance of doubt, transfer of the Liquidating Trust Assets to the Liquidating Trust and the GUC Liquidating Trust Assets to the GUC Liquidating Trust shall not be a disbursement for purposes of assessing Statutory Fees.

6.    **Treatment of Classified Claims**.  A brief summary of the treatment of the classified Classes of Claims is set forth below:[2]

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired: Not entitled to vote; presumed to have accepted the Plan | Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed Other Priority Claim, at the sole option of the Debtors or the Liquidating Trustee, each Holder of an Allowed Priority Claim shall receive: (a) Cash in an amount equal to the | $22,397.14  100% |

---

[2] This summary is for information purposes.  In the event of any discrepancy between this summary and Article 4 of the Plan, Article 4 of the Plan shall control.

DM_US 204987622-2.121080.0012

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | amount of such Allowed Priority Claim on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, thirty (30) days following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable, or (b) such other treatment so as to render such Holder's Allowed Priority Claim Unimpaired. | |
| 2 | Secured Tax Claims | Unimpaired: Not entitled to vote; presumed to have accepted the Plan | Except to the extent that the Holder of an Allowed Class 2 Secured Tax Claim agrees to less favorable treatment of its Allowed Class 2 Secured Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Class 2 Secured Claim, each such Holder shall receive, at the Liquidating Trustee's option, as applicable: (a) payment in accordance with § 1129 of the Bankruptcy Code or (b) surrender of the Collateral that secured | $237.68<br><br>100% |

3

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|--------------------------------------------|
| | | | such Allowed Class 2 Secured Claim prior to the Effective Date. If necessary, the amount, validity, extent, value, and priority of the Allowed 2 Claim under §§ 505, 506, and 511 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of an Allowed Class 2 Claim shall be treated as a Class 11 General Unsecured Claim. | |
| 3 | DIP Financing Claims | Impaired: Entitled to Vote | In full and final satisfaction of the DIP Financing Claims, solely as it relates to the Debtors and their Estates, the DIP Lenders will receive: (a) $14,000,000 from the proceeds of the Sale Transaction, (b) the remaining proceeds from the Sale Transaction up to the remaining outstanding $21,250,000 after (1) payment of the Sandton Secured Claims pursuant to the terms of the Plan, (2) payment of the Trustee Advance Notes Secured Claims, (3) payment of the Bond | $35,250,000<br><br>Unknown |

4

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | Trustee Expense Claims, and (4) payment of the Initial Liquidating Trust Funding Amount; and (c) each Holder of a DIP Financing Claim will receive its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed DIP Financing Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement. For the avoidance of doubt, as part of the Sandton Distribution, the Debtors will pay $1,138,244.83 of proceeds from the Sale Transaction to Sandton on behalf of the DIP Lenders pursuant to the Sandton Intercreditor Agreement and DIP Orders. | |
| 4 | Sandton Secured Claims | Impaired: Entitled to Vote | Sandton will have an Allowed Class 4 Sandton Secured Claim in the amount of $8,138,244.83. In full and final satisfaction of the Sandton Secured Claims, the Sandton Distribution will be approved on a final basis with Sandton receiving $7,000,000 from the | $8,138,244.83 100% |

5

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | Debtors' Estates on account of the Sandton Secured Claims and $1,138,244.83 from the DIP Lenders on account of its Sandton Secured Claims pursuant to the Sandton Intercreditor Agreement and DIP Orders. | |
| 5 | Trustee Advance Notes Secured Claims | Impaired: Entitled to Vote | In full and final satisfaction of the Bond Trustee Advance Notes Claims, Holders of Bond Trustee Advance Notes Claims will receive payment in an amount up to $10,000,000. Upon payment of the Bond Trustee Advance Notes Claims, all obligations of the Bond Trustee to Principal Street High Income Municipal Fund related to the Trustee Advance Notes, including but not limited to those obligations set forth in that certain Trustee Advance Promissory Note Funding and Purchase Agreement, dated as of April 21, 2023, which agreement was amended and restated pursuant to an Amended and Restated Trustee Advance Promissory Note Funding and Purchase Agreement dated | $10,000,000  98.7% |

6

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | August 15, 2023, shall be extinguished and deemed satisfied in full. The Trustee Advance Notes, the Trustee Advance Promissory Note Funding and Purchase Agreement dated as of April 21, 2023, and the Restated Trustee Advance Promissory Note Funding and Purchase Agreement dated August 15, 2023 shall each be deemed cancelled, released, surrendered, extinguished and discharged and of no force or effect, without any need for further action or approval of the Bankruptcy Court, the Debtors, any Holder of any Claim or Interest, or any other Person or Entity. | |
| 6 | Bond Trustee Expense Claims | Impaired: Entitled to Vote | In full and final satisfaction of the Bond Trustee Expense Claims, Holders of Bond Trustee Expense Claims will receive (a) payment in an amount up to $265,000 from the proceeds of the Sale Transaction; and (b) relief from the automatic stay pursuant to Section 362(a) of the | $477,000 Unknown |

7

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | Bankruptcy Code and the Plan Injunction to allow the Bond Trustee to administer and apply the Bond Trustee Held Funds pursuant to the terms of the 2020 Trust Indenture. | |
| 7 | AMI Secured Claims | Impaired: Entitled to Vote | The AMI Secured Claims will be allowed in the amount of $4,935,311.38 plus attorneys' fees. In full and final satisfaction of the AMI Secured Claims, each Holder of an AMI Secured Claim shall receive payment and consideration pursuant to the AMI Settlement | $4,935,311.38<br><br>Unknown |
| 8 | Bondholder Claims | Impaired: Entitled to Vote | In full and final satisfaction, settlement, and release of the Bondholder Claims, solely as it relates to the Debtors and their Estates:<br><br>(a) Each Settling Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Bondholder | $55,716,578<br><br>Unknown |

8

DM_US 204987622-2.121080.0012

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
|  |  |  | Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement and in exchange for such Settling Bondholder's contribution of its Non-Estate Causes of Action, and (3) each Settling Bondholder will be a Released Party. |  |
|  |  |  | (b) If Class 8 is an accepting Class of Claims as part of Confirmation of the Plan, each Permitted Non-Voting Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Bondholder Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement and in exchange for the transfer of such Permitted Non-Voting Bondholder's Non-Estate Causes of |  |

9

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | Action to the Liquidating Trust by operation of the Plan, or otherwise; *provided, however*, that if Class 8 is not an accepting Class for purposes of Confirmation of the Plan no Permitted Non-Voting Bondholder shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims and Class 8 Settling Bondholder Claims are paid in full or satisfied.<br><br>(c) Each Non-Settling Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Bondholder Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement; *provided, however*, that no Non-Settling Bondholder shall receive a | |

10

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
|  |  |  | Distribution from the Liquidating Trust unless and until all of the following Claims are paid in full or satisfied: (i) Class 3 DIP Financing Claims, (ii) Class 8 Settling Bondholder Claims, and, (iii) the Permitted Non-Voting Bondholder Claims if Class 8 is an accepting Class of Claims as part of Confirmation of the Plan. |  |
| 9 | Medicare and Medicaid Secured Claims | Unimpaired: Not entitled to vote; presumed to have accepted the Plan | In full and final satisfaction of the Medicare and Medicaid Secured Claims, each Holder of a Medicare and Medicaid Secured Claim shall receive the ability to recoup from outstanding Medicare and Medicaid Accounts Receivable, as applicable, up to the amount of their Secured Claims. Any Deficiency Claim or other Unsecured Claim of a Holder of a Class 9 Claim shall be treated as a Class 11 General Unsecured Claim. | $728,158.49

Unknown |
| 10 | Other Secured Claims | See sub-classes | Holders of Class 10 Claims shall be designated as Class 10A, Class 10B, Class 10C, etc. Treatment of | See sub-classes for estimated Claim amounts |

11

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | known Holders of Class 10 sub-classes is set forth in each sub-class. For Holders of Class 10 Claims that are not set forth herein, except to the extent previously paid or the Holder of an Allowed Other Secured Claim and the Debtors or Liquidating Trustee agree to less favorable treatment for such Holder, each Holder of an Allowed Other Secured Claim, at the option of the Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim shall receive either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the | |

12

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that the Holder of such Allowed Other Secured Claim will not receive more than the value of the Collateral securing such Claim. At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of a Holder of a Class 10 Claim shall be treated as a Class 11 General | |

13

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | Unsecured Claim. | |
| 10A | Other Secured Claims (Talley Riggins) | Impaired: Not Entitled to Vote Because of Objection | Talley Riggins's interests in Collateral are junior to the Bond Trustee Trustee's interest in such Collateral, accordingly, pursuant to section 506 of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim and will receive treatment in Class 11 as a General Unsecured Claim. The Plan is an objection to Talley Riggins's Claim as a Secured Claim. | $179,447.00  0% |
| 10B | Other Secured Claims (Polk Mechanical) | Impaired: Not Entitled to Vote Because of Objection | Polk Mechanical's Claim is duplicative of and incorporated in Talley Riggins's Claim. Additionally, Polk Mechanical's interest in Collateral is junior to the Bond Trustee Trustee's interest in such Collateral, accordingly, pursuant to section 506 of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim. The Plan is an objection to Polk Mechanical's Claim. | $46,722.50  0% |
| 10C | Other Secured Claims (Cardinal Health) | Impaired: Not Entitled to Vote Because of Objection | Cardinal Health's interest in Collateral is junior to the Bond Trustee, accordingly, pursuant to section 506 | $55,157.09  0% |

14

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim and will receive treatment in Class 11 as a General Unsecured Claim. The Plan is an objection to Cardinal Health's Claim as a Secured Claim. | |
| 10D | Other Secured Claims (Humana) | Impaired: Entitled to Vote | The Debtors are still investigating whether Humana has a secured interest in any Collateral. To the extent Humana holds a properly perfected first-priority security interest in Collateral it will receive, at the option of the Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim, either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured | $12,851.64

Unknown |

15

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that Humana will not receive more than the value of the Collateral securing such Claim. At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of Humana's Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim | |

16

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | of Humana shall be treated as a Class 11 General Unsecured Claim. | |
| 10E | Other Secured Claims (PFC) | Impaired: Entitled to Vote | The Debtors are still investigating whether PFC has a secured interest in any Collateral. To the extent PFC holds a properly perfected first-priority security interest in Collateral it will receive, at the option of the Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim, either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest | $15,152.41

Unknown |

17

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that PFC will not receive more than the value of the Collateral securing such Claim. At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of PFC's Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date. Any Deficiency Claim or other Unsecured Claim of PFC shall be treated as a Class 11 General Unsecured Claim. | |
| 11 | General Unsecured | Impaired: Entitled to | In full and final satisfaction, settlement, | $2,800,000 - $4,000,000 |

18

DM_US 204987622-2.121080.0012

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | Claims | Vote | and release of any and all General Unsecured Claims:

(a)    Each Holder of an Allowed General Unsecured Claim in Class 11 who (i) votes to accept this Plan, or (ii) does not vote, shall receive (1) its Pro Rata share of the GUC Liquidating Trust Interests representing the right of each Holder of an Allowed GUC Settlement Claim to receive Distributions from the GUC Liquidating Trust in accordance with the Plan and the GUC Liquidating Trust Agreement, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement. However, no Holder of an Allowed General Unsecured Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP | 5% - 17% |

DM_US 204987622-2.121080.0012

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| | | | Financing Claims, Class 8 Bondholder Claims, and Class 12 Batsu Claims are paid in full or satisfied. Each Holder of an Allowed General Unsecured Claim in Class 11 who votes to accept this Plan will also receive a release of any Preference Claim that the Debtors and their Estates may possess. If Class 11 is an accepting Class of Claims as part of Confirmation of the Plan, each Holder of an Allowed General Unsecured Claim who does not vote shall also receive a release of any Preference Claim that the Debtors and their Estates may possess.<br><br>(b)      Each Holder of an Allowed General Unsecured Claim in Class 11 who votes to reject the Plan will receive its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders | |

20

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
| | | | Settlement. However, no Holder of an Allowed General Unsecured Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims, Class 8 Bondholder Claims, and Class 12 Batsu Claims are paid in full or satisfied. For the avoidance of doubt, any Preference Claim of any Holder of an Allowed General Unsecured Claim who votes to reject the Plan will not be released and will be a Liquidating Trust Asset. If Class 11 is an accepting Class of Claims as part of Confirmation of the Plan, each Holder of an Allowed General Unsecured Claim in Class 11 who votes to reject the Plan will receive its Pro Rata share of the GUC Liquidating Trust Interests representing the right of each Holder of an Allowed GUC Settlement Claim to receive Distributions from the GUC Liquidating Trust in accordance with the Plan and the GUC | |

21

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|-------|-------------|--------|-----------|-------------------------------------------|
|       |             |        | Liquidating Trust Agreement. |                                 |
| 12 | Batsu Claims | Impaired: Entitled to Vote | Each Holder of a Batsu Claim shall receive in full and final satisfaction of such Batsu Claims its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Batsu Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement. However, no Holder of an Allowed Batsu Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims and Class 8 Bondholder Claims are paid in full or satisfied. | $10,000,000<br><br>Unknown |
| 13 | Intercompany Claims | Impaired: Not entitled to vote; Deemed to reject Plan | Holders of Intercompany Claims shall not receive any Distributions on account of such Intercompany Claims and all such Intercompany Claims shall be extinguished. | $500,000<br><br>0% |

22

| Class | Designation | Status | Treatment | Estimated Claim Pool / Projected Recovery |
|---|---|---|---|---|
| 14 | Interests | Impaired: Not entitled to vote; Deemed to reject Plan | Holders of Allowed Interests shall not receive any recovery from the Debtors under the Plan. | $0<br><br>0% |

23

# ARTICLE 1

## DEFINITIONS AND RULES OF INTERPRETATION

### 1.1    Definitions.

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1. "2020 Bonds" means the 2020 Senior Bonds and 2020 Subordinate Bonds.

2. "2020 Senior Bonds" means the $57,615,000 of Tax-Exempt Series 2020A-1 bonds and $7,455,000 of Taxable Series 2020A-2 bonds issued pursuant to the 2020 Trust Indenture.

3. "2020 Subordinate Bonds" means the $2,700,000 Subordinate Taxable Series 2020B bonds.

4. "2020 Trust Indenture" means the Trust Indenture dated as of January 1, 2020, (as amended and supplemented from time to time) by and between the Public Finance Authority and the Bond Trustee pursuant to which the 2020 Bonds were issued.

5. "2022 AMI Amendment" has the meaning ascribed to it in Article 5.45(a) of the Plan.

6. "2023 AMI Amendment" has the meaning ascribed to it in Article 5.45(a) of the Plan.

7. "2023 AMI Note" has the meaning ascribed to it in Article 5.45(a) of the Plan.

8. "Accounts Receivable" means the balance of money due to the Debtors for goods or services delivered or used but not yet paid for by customers or third-party payors.

9. "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 Cases entitled to priority pursuant to sections 364(c)(1), 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) professional compensation and reimbursement awarded or allowed pursuant to sections 330(a) or 331 of the Bankruptcy Code; (c) any administrative expense described in section 503(b)(9) of the Bankruptcy Code; (d) any and all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the U.S. Code; and (e) Restructuring Expenses.  For the avoidance of doubt, DIP Financing Claims shall receive treatment in Class 3 of the Plan and are not Administrative Expense Claims.

1. "Administrative Expense Claim Bar Date" means the date established by any order of the Court setting a bar date by which requests for payment of Administrative Expense Claims must be filed, subject to any exceptions specifically set forth therein or as extended by the Bankruptcy Court including the *Order (I) Setting Bar Date for Filing Proofs of Administrative Expense Claims, (II) Approving the Form and Manner of Filing Proofs of*

*Administrative Claims, (III) Approving Notice of the Administrative Claims Bar Date, and (IV) Granting Related Relief* filed at Docket No. 417 that established April 15, 2024, as an Administrative Expense Claim Bar Date.

2.      "<u>Affiliate</u>" has the meaning assigned to such term in Bankruptcy Code section 101(2).

3.      "<u>Allowed</u>" means, with respect to a Claim against or Interest in the Debtors, (a) proof of which was originally filed within the applicable period of limitation fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3) and any Final Order, (b) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in an amount and not Disputed or contingent, as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, a Final Order, or the Claims Objection Bar Date, but only to the extent applicable, or as to which an objection has been interposed and such Claim or Interest has been allowed in whole or in part by a Final Order, or (c) a Claim or Interest that is allowed by Final Order; *provided, however*, that (1) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by Order of the Bankruptcy Court, (2) "Allowed Claim" does not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (3) "Allowed Claim" does not include any Claim subject to disallowance under Bankruptcy Code section 502(d).

4.      "<u>Allowed Debtor Professional Fee Claim</u>" means a Debtor Professional Fee Claim allowed pursuant to an Order of the Bankruptcy Court.

5.      "<u>AMI</u>" means Avoue Marchand Investments, Inc.

6.      "<u>AMI Credit Facility</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

7.      "<u>AMI Deficiency Claim</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

8.      "<u>AMI Disputes</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

9.      "<u>AMI Intercreditor Agreement</u>" means that certain Intercreditor and Subordination Agreement dated as of July 26, 2022, by and among the Bond Trustee, Issuer, and AMI.

10.     "<u>AMI Loan Agreement</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

11.     "<u>AMI Obligations</u>" has the meaning set forth in Article 5.45(a) of the Plan.

12.     "<u>AMI Prepetition Collateral</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

13.     "<u>AMI Second Amendment</u>" has the meaning ascribed to it in Article 5.45(a) of the Plan.

14.     "<u>AMI Secured Claims</u>" means the Secured Claims that AMI asserts in certain of Sunland Medical's accounts receivable.

15.     "<u>AMI Settlement</u>" means the settlement agreement among the Debtors, AMI, and the Bond Trustee on behalf of the Bondholders as set forth in Article 5.32(a) of the Plan.

16.     "<u>Assets</u>" means all property of the Estate, including, without limitation, all property and other interests identified in Bankruptcy Code section 541(a) wherever located and whether acquired prior to or after the Petition Date, including, but not limited to, Cash, furniture, fixtures, equipment, Causes of Action, together with the proceeds and products, replacements, and accessions thereof.

17.     "<u>Avoidance Action</u>" means any Cause of Action to avoid or recover a transfer of property of the Estate or an interest of the Debtor in property, including, without limitation, actions arising under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a), and any other applicable federal, state, or common law.

18.     "<u>Ballot</u>" means the form distributed to the Holder of an Impaired Claim that is entitled to vote on which it is to be indicated whether such Holder accepts or rejects the Plan.

19.     "<u>Bankruptcy Code</u>" means title 11 of the United States Code.

20.     "<u>Bankruptcy Court</u>" or "<u>Court</u>" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

21.     "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules, each as applicable to the Chapter 11 Cases and as amended from time to time.

22.     "<u>Bar Dates</u>" means the General Bar Date, the Governmental Bar Date, the Rejection Damages Bar Date, the Claim Bar Date, the Administrative Expense Claim Bar Date, and the Supplemental Expense Claim Bar Date, as applicable.

23.     "<u>Batsu</u>" means Batsu Enterprises LLC.

24.     "<u>Batsu Claims</u>" means the Claims that Batsu asserts against the Debtors, including the Batsu Subordinated Promissory Note.

25.     "<u>Batsu Subordinated Promissory Note</u>" means the Unsecured Subordinated Promissory Note in the amount of $10 million by and between Sunland Medical Foundation and Batsu dated August 15, 2023.

26.     "<u>Bondholders</u>" means the holders of the 2020 Bonds.

27.     "<u>Bondholder Claims</u>" means the Bondholder Secured Claims and Bondholder Unsecured Claims.  For the avoidance of doubt, the Bondholder Unsecured Claims shall not be General Unsecured Claims.

28.     "<u>Bondholder Deficiency Claim</u>" means the difference between the Bondholder Secured Claims and the amount received, if any, by the Holders of Bondholder Secured Claims on account of their Collateral.

3

29.   "<u>Bondholder Secured Claims</u>" means the Secured Claims of Bondholders on account of the 2020 Senior Bonds on account of the Bond Trustee Liens.

30.   "<u>Bondholder Unsecured Claims</u>" means the Unsecured Claims of Bondholders, including Claims arising from the 2020 Subordinate Bonds and from any Deficiency Claims. For the avoidance of doubt, Bondholder Unsecured Claims shall not be General Unsecured Claims.

31.   "<u>Bond Trustee</u>" means UMB Bank, N.A. as Trustee for the Bondholders.

32.   "<u>Bond Trustee Expense Claims</u>" means those expense claims incurred by the Bond Trustee that would be entitled to a charging lien and priority of payment under the 2020 Trust Indenture.

33.   "<u>Bond Trustee Held Funds</u>" means all funds held by the Bond Trustee under the 2020 Trust Indenture, including but not limited to a Debt Service Reserve Fund, which total approximately $131,000, and approximately $81,000 paid to the Bond Trustee as adequate protection pursuant to the DIP Orders during these Chapter 11 Cases.

34.   "<u>Bond Trustee Liens</u>" means those security interests and liens on substantially all the real and personal property of the Debtors.

35.   "<u>Business Day</u>" means any day other than a Saturday, Sunday, or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

36.   "<u>Cardinal Health</u>" means Cardinal Health 200, LLC.

37.   "<u>Cardinal Health Account Credit</u>" means the account credits in the Debtors' Cardinal Health account totaling $12,303.08.

38.   "<u>Cash</u>" means legal tender of the United States of America.

39.   "<u>Causes of Action</u>" means any and all claims, actions, causes of action, choses in action, rights, demands, Liens, suits, liabilities, encumbrances, lawsuits, adverse consequences, debts, damages, dues, sums of money, obligations, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, guaranties, contracts, controversies, agreements, promises, variances, trespasses, powers, judgments, privileges, licenses, franchises, remedies, rights of setoff, rights of recoupment, third-party claims, subrogation claims, defenses, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtor and/or the Estate), each of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, secured or unsecured, disputed or undisputed, and whether held or assertable in a personal or representative capacity, based in law or equity, including under the Bankruptcy Code or under any other federal or state statute or common law, whether in contract or tort or any other theory of law, whether direct, indirect, derivative, or otherwise, whether arising before, on, or after the Petition Date, and whether asserted or

4

unasserted as of the Effective Date, including, without limitation, (a) the right to object to, challenge or otherwise contest any claims, whether or not any such claim is the subject of a Proof of Claim; (b) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (c) any claim pursuant to § 362; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in § 558; (e) all claims, causes of action (avoidance or otherwise), objections, rights, and remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, §§ 502, 510, 542 through 545 and 547 through 553 or 558 thereof, or similar or equivalent claims, causes of action, objections, rights, and remedies arising under state law, including all Avoidance Actions, irrespective of whether or not the targets of such causes of action have been identified by name, or any transfers subject to avoidance have been listed, in the Debtors' Schedules, the Disclosure Statement, this Plan, or any other document filed in the Chapter 11 Cases; (f) claims under any insurance policies applicable to the Debtors, including the D&O Insurance Policy; (g) all claims, causes of action, and other rights (including rights to challenge any asserted Lien) of any kind or nature against any party asserting a claim in this Chapter 11 Case, unless expressly and in writing released or waived during the Chapter 11 Case, including under this Plan; (h) all legal and equitable defenses against any Claim or Cause of Action asserted against the Debtors; (i) all claims and/or Causes of Action of any kind or nature arising under state or federal law arising under a theory of negligence, professional negligence, and/or malpractice against the Debtors' and/or their affiliate's, non-debtor affiliate's, subsidiaries', and related parties' auditors and consultants; (j) all claims and/or Causes of Action of any kind or nature arising under state law based fraudulent conveyance theories; and (k) all claims and/or Causes of Action constituting, for, based upon, or relating to a breach of fiduciary duty, a tort, a contract, federal or state preference or fraudulent transfer laws, or any federal or state statutory rights or requirements, whether based in law or equity, against any of the current and former directors, officers, managers, and members of the Debtors and/or their affiliates, subsidiaries, non-debtor affiliates, and related parties. The foregoing definition shall be construed in accordance with its broadest possible meaning, and any doubts or ambiguities shall be resolved in favor of inclusivity. **Except as otherwise expressly provided in the Plan, any and all Causes of Action are preserved under the Plan**.

40. "Chapter 11 Cases" means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code on the Petition Date, and which is pending before the Bankruptcy Court under the jointly administered case number 23-80000.

41. "Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code, against a Debtor, whether or not asserted, whether or not the facts or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim.

42. "Claims Agent" means Stretto, Inc., the employment and retention of which was authorized by the Bankruptcy Court to, among other things, receive, maintain, docket, and otherwise administer the proofs of Claim filed in the Chapter 11 Case pursuant to the *Order*

5

*Authorizing the Employment and Retention of Stretto, Inc. as Claims, Noticing, and Solicitation Agent Effective as of the Petition Date* [Docket No. 40].

43.   "<u>Claims Objection Bar Date</u>" means the first Business Day that is not less than 180 days after the Effective Date.  The time period for filing objections to Claims shall automatically renew for successive periods of one hundred eighty (180) days each until the earlier of (a) the date upon which all Claims have been Allowed or Disallowed or (b) the date fixed by the Bankruptcy Court upon motion of the Liquidating Trustee, or a Holder of a Claim.

44.   "<u>Claims Register</u>" means the register of Claims that has been maintained by the Claims Agent.

45.   "<u>Class</u>" means a category of Claims or Interests described in Article 3 and under Bankruptcy Code section 1122(a).

46.   "<u>Clerk</u>" means the Clerk of the Bankruptcy Court.

47.   "<u>CMS</u>" means the Centers for Medicare & Medicaid Services.

48.   "<u>Collateral</u>" means any property or interest in property of the Estates subject to an unavoidable Lien to secure the payment or performance of a Claim.

49.   "<u>Commercial Payor Accounts</u>" means any private insurer, managed care plan, health benefit plan, health maintenance organization, preferred provider organization, employer-sponsored health plan or any other Person or entity that maintains a similar payor program.

50.   "<u>Confirmation</u>" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

51.   "<u>Confirmation Date</u>" means the date on which the Clerk enters the Confirmation Order on the docket.

52.   "<u>Confirmation Order</u>" means the Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129, as the Plan may be amended by its terms and consistent with applicable law, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

53.   "<u>Consummation</u>" means the occurrence of the Effective Date.

54.   "<u>Contracts and Leases</u>" means executory contracts or unexpired leases, as applicable, between the Debtors and any other Person or Entity that existed as of the Petition Date.

55.   "<u>Covered Released Matters</u>" has the meaning ascribed to it in Article 8.8 of the Plan.

56.   "<u>Creditor</u>" means any Person holding a Claim against the Debtors or, pursuant to Bankruptcy Code section 102(2), against property of the Debtors, that arose or is deemed

6

to have arisen on or prior to the Petition Date, including, without limitation, a Claim against the Debtors of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i).

57.   "<u>Columbia Medical Center</u>" means Columbia Medical Center of Plano Subsidiary, L.P.

58.   "<u>Committee</u>" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to Bankruptcy Code section 1102 on September 8, 2023, to represent the interests of General Unsecured Creditors in the Chapter 11 Cases.

59.   "<u>D&O Claims</u>" means all Causes of Action against the current and former members, managers, and/or officers of the Debtor that are Preserved Claims, as the term may be modified or enhanced under the terms of the Plan Supplement.

60.   "<u>D&O Policies</u>" means all insurance policies issued at any time to or on behalf of the Debtor for directors', managers', and officers' liability existing or maintained by or on behalf of the Debtors (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

61.   "<u>Debtors</u>" means Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC., as debtors and debtors-in-possession in the Chapter 11 Cases.

62.   "<u>Debtor Professional Fee Escrow Account</u>" means that certain escrow account maintained for the benefit of the Debtor Professionals.

63.   "<u>Debtor Professional Fee Escrow Amount</u>" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that each Debtor Professional estimates it has incurred or will incur in rendering services to the Debtors through the Effective Date of the Plan.

64.   "<u>Debtor Professionals</u>" means McDermott Will & Emery LLP, Meadowlark Advisors, LLC, SC&H Group, McGuire Craddock & Strother, P.C., Eide Bailly LLP, and Stretto, Inc.

65.   "<u>Debtor Release</u>" means the collective releases by the Debtors under Article 8.7 of the Plan.

66.   "<u>Deficiency Claim</u>" means, with respect to any Claims asserted as a Secured Claim, a Claim in an amount equal to the difference between the total Allowed amount of the Claim and the value of any Collateral securing such Claim (i.e., the total Allowed Claim amount minus the Allowed Secured Claim amount), as determined consistent with section 506(a) of the Bankruptcy Code or otherwise agreed to by the Holder of the Claim.

67.   "<u>DIP Collateral</u>" means the Collateral securing the DIP Facility, as set forth in the DIP Financing Documents and the DIP Orders.

68.   "<u>DIP Credit Agreement</u>" means that certain *Secured Super Priority Debtor in Possession Promissory Note Funding and Purchase Agreement* entered into by Sunland Medical

Foundation and the DIP Secured Parties, dated as of October 6, 2023 (as amended, modified, supplemented, extended, restated, or replaced from time to time).

69. "DIP Facility" means that certain debtor-in-possession financing pursuant to the DIP Financing Documents approved by the Bankruptcy Court through the DIP Orders.

70. "DIP Financing Claim" means the Claim in the amount of $35,250,000 and for any accrued and outstanding amounts due and owing by the Debtor under the DIP Financing Documents and the DIP Orders.

71. "DIP Financing Documents" means the documents evidencing the DIP Facility, including, but not limited to, the DIP Credit Agreement, all security agreements, notes, mortgages, deeds of trust, Uniform Commercial Code financing statements, certificates, reports, or other documents and instruments either or both executed and/or delivered with or to the DIP Lenders in connection with or related to the DIP Credit Agreement and the DIP Orders.

72. "DIP Lenders Settlement" has the meaning set forth in Article 5.45(b) of the Plan.

73. "DIP Lenders" means Principal Street Partners LLC, Principal Street High Income Municipal Fund, and abrdn Short Duration High Yield Fund, a series of abrdn Funds.

74. "DIP Obligations" means the Post-Petition Obligations, as defined in the DIP Orders.

75. "DIP Orders" means the Interim DIP Order and the Final DIP Order.

76. "DIP Secured Parties" means the DIP Lenders.

77. "Directing Bondholders" means RPM Capital Management, LLC, as Bondholder Representative, VanEck High Yield Muni ETF and Van Eck Associates Corporation, Delphi Capital Management, Safety National Casualty Corporation, and Philadelphia Indemnity Insurance Company.

78. "Directors" means the current and former directors of the Debtors.

79. "Disallowed" means, when referring to a Claim (including a Scheduled Claim) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

80. "Disclosure Statement" means the disclosure statement for the Plan and all exhibits annexed thereto or otherwise filed in connection therewith, approved by the Bankruptcy Court under Bankruptcy Code section 1125.

81. "Disclosure Statement Order" means the Final Order approving the Disclosure Statement under Bankruptcy Code section 1125.

82. "Disputed" means, with respect to a Claim against or Interest in the Debtor:

(a)    to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed;

(b)    if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (1) the proof of claim amount exceeds the amount indicated in the Schedules, or (2) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Bar Date, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or this Plan;

(c)    if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Claim Objection Bar Date, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or this Plan; or

(d)    as to which an objection has been filed on or before the Claim Objection Bar Date; *provided*, that a Claim that is Allowed and is fixed in amount and priority pursuant to this Plan or by Final Order on or before the Effective Date shall not be a Disputed Claim.

83.    "Disputed Confirmation Reserve" means the segregated account established under Article 5.4(b) of the Plan.

84.    "Distribution" means any distribution made under the Plan.

85.    "Distribution Date" means any date on which a Distribution is made or to be made to Holders of Allowed Claims under the Plan.

86.    "DTC" means Depository Trust and Clearing Corporation.

87.    "Effective Date" means a Business Day, selected by the Debtors, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Debtors, and on which no stay of the Confirmation Order shall be pending.

88.    "Effective Date Cash" means all Cash held by or on behalf of the Debtors as of the Effective Date of the Plan.

89.    "Encumbrances" means, collectively, any and all security interests, Liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

90.    "Entity" has the meaning assigned to such term in Bankruptcy Code section 101(15).

9

91.    "ERS" means the extended repayment schedule approved by the Court on September 28, 2023, in the Order entered at Docket No. 195.  For the avoidance of doubt, the ERS was terminated upon the closing of the Sale Transaction.

92.    "ERS Settlement Payment" means payments to CMS pursuant to the ERS.

93.    "Estates" means the estates or applicable estate of the Debtors created under Bankruptcy Code section 541.

94.    "Excess Debtor Professional Fee Escrow Amount" means amounts, if any, remaining in the Debtor Professional Fee Escrow Account after all Allowed Debtor Professional Fee Claims are paid in full.

95.    "Excluded Party" means any Entity that (a) elects to opt out of the Third-Party Release, if permitted to opt out; (b) files with the Bankruptcy Court an objection to the Plan, including the Third-Party Release or the Debtor Release, that is not consensually resolved before Confirmation or overruled as part of Confirmation; or (c) is designated as an Excluded Party pursuant to the Plan Supplement.

96.    "Exculpated Parties" means, collectively, and in each case in their capacity as such and, in each case, to the maximum extent permitted by law: (a) the Debtors; (b) each independent director of the Debtors; and (c) Beckman Coulter, Inc., Blue Signal, LLC, Hegwood Group LP, and Insight Enterprises, Inc., but solely as to their actions taken as members of the Committee.  For the further avoidance of doubt, Ovation Healthcare shall not be an Exculpated Party or be released from any claims or Causes of Action that the Debtors and their Estates have against Ovation Healthcare.

97.    "Federal Accounts Receivable" mean any Accounts Receivable payable by a Federal agency, including all Medicare, Medicaid, and Veterans Administration accounts.

98.    "Fee Application Deadline" means the Business Day next following the date that is sixty (60) days after the occurrence of the Effective Date.

99.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

100.    "Final DIP Order" means the *Final Order (I) Authorizing Postpetition Financing, (II) Authorizing the Use of Cash Collateral and Granting Adequate Protection, (IIII) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 194].

101.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction that: (a) is conclusive of all matters; (b) has not been reversed, stayed, or revoked; and (c) is effective.  An order or judgment shall be deemed a Final Order, notwithstanding the possibility that a motion may be filed relating to such order or judgment pursuant to Bankruptcy Code § 502(j), Bankruptcy Rule 3008, Bankruptcy Rules 9023 and 9024, Federal Rule of Civil Procedure 59 and 60, or any analogous statute or rule.

10

102.    "<u>General Bar Date</u>" means November 27, 2023, the date established by the Bankruptcy Court as the deadline by which Creditors were required to file proofs of Claim against the Estates, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for such specific Creditor, such different date set by the Bankruptcy Court.

103.    "<u>General Unsecured Claim</u>" means any Unsecured Claim against any Debtor that is not an Administrative Expense Claim, Professional Fee Claim, Other Priority Claim, Secured Tax Claim, DIP Financing Claim, Sandton Secured Claim, Bond Trustee Advance Notes Secured Claim, AMI Secured Claim, Bondholder Claim, Medicare and Medicaid Secured Claim, Other Secured Claim, Batsu Claim, Intercompany, Claim, or Interest.  For the avoidance of doubt, Claims held by Batsu and Deficiency Claims, if any, of the DIP Lenders, Bondholders, or AMI Secured Claims shall not be General Unsecured Claims.

104.    "<u>General Unsecured Claim Settlement Payment</u>" means (a) a one-time, lump-sum payment of $250,000 that will be paid on the Effective Date and will be carved out from the DIP Lenders' Collateral, and (b) up to $300,000 of the Indemnification Funds if and when they are returned to the Debtors' Estates.

105.    "<u>Government Payor</u>" means CMS, any state Medicaid program and any other federal or state Governmental Authority which presently or in the future maintains a Government Payor Program.

106.    "<u>Government Payor Program</u>" means any plan or program that provides health care benefits, through insurance or otherwise, which is funded directly, in whole or in part, by a Government Payor, including Medicare, Medicaid, and TRICARE.

107.    "<u>Governmental Bar Date</u>" means February 26, 2024, the date prescribed by Bankruptcy Rule 3002 and set by the Bankruptcy Court as the deadline for Governmental Units to file proofs of Claim against the Estates.

108.    "<u>Governmental Unit</u>" has the meaning assigned to such term in Bankruptcy Code section 101(27).

109.    "<u>GUC Liquidating Trust</u>" means the trust described in Article 5 of the Plan to be established under Texas trust law that shall effectuate the terms of the Plan for the purpose of making Distributions to holders of Allowed General Unsecured Claims from the GUC Liquidating Trust Assets.

110.    "<u>GUC Liquidating Trustee</u>" means David Gonzales, and any successor thereto.

111.    "<u>GUC Liquidating Trust Agreement</u>" means the trust agreement entered into by the GUC Liquidating Trustee as of the Effective Date, substantially in form and substance as that filed as part of the Plan Supplement, as it may be amended from time to time in accordance with its terms.

112.    "<u>GUC Liquidating Trust Assets</u>" means the General Unsecured Claim Settlement Payment.

11

113.    "<u>GUC Liquidating Trust Beneficiaries</u>" means all individuals and entities entitled to a Plan Distribution from the GUC Liquidating Trust.

114.    "<u>GUC Liquidating Trust Disputed Claim Reserve</u>" means the segregated reserve established under Article 5.19(b) of the Plan.

115.    "<u>GUC Liquidating Trust Expenses</u>" means all reasonable fees and expenses of the GUC Liquidating Trust, the GUC Liquidating Trustee, and any Professionals retained by the GUC Liquidating Trustee or GUC Liquidating Trust after the Effective Date associated with the implementation and administration of the GUC Liquidating Trust and this Plan.

116.    "<u>GUC Liquidating Trust Indemnified Parties</u>" has the meaning set forth in Article 5.22 of the Plan.

117.    "<u>GUC Liquidating Trust Interests</u>" means the uncertificated beneficial interests in the GUC Liquidating Trust that may (a) be granted to each Holder of an Allowed Class 11 General Unsecured Claim, and (b) entitle such Holder to receive Distributions from the GUC Liquidating Trust pursuant to the terms of this Plan and the GUC Liquidating Trust Agreement.

118.    "<u>GUC Liquidating Trust Reserve</u>" means the GUC Liquidating Trust Disputed Claim Reserve.

119.    "<u>GUC Tax Items</u>" has the meaning set forth in Article 5.29 of the Plan.

120.    "<u>Holder</u>" means an Entity or Person holding a Claim or Interest.

121.    "<u>Humana</u>" means Humana Inc. and its affiliates.

122.    "<u>Impaired</u>" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

123.    "<u>Indemnification Funds</u>" means the $550,000 withheld from the proceeds of the Sale Transaction as an indemnification fund related to TSA pursuant to that certain Escrow Agreement by and among Sunland Medical Foundation, Columbia Medical Center, and JP Morgan Chase.  Any remaining Indemnification Funds returned to the Debtors and their Estates pursuant to the TSA will be administered pursuant to this Plan.

124.    "<u>Initial Liquidating Trust Funding Amount</u>" means not less than $1,600,000 to be funded from the Effective Date Cash.

125.    "<u>Initial Liquidating Trust Distribution</u>" has the meaning set forth in Article 5.45(b) of the Plan.

126.    "<u>Insurance Policies</u>" means all insurance policies of the Debtors, including any D&O Policy.

DM_US 204987622-2.121080.0012

127.  "<u>Insured Claims</u>" means General Unsecured Claims arising prior to the Confirmation date involving personal injury, medical malpractice, or wrongful death (including slip-and-fall and medical malpractice Claims) that are covered by the terms of the Debtors' various insurance policies (including the Insurance Policies), or any other General Unsecured Claim against the Debtors for which the Debtors are entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance (including the Insurance Policies) under which the Debtors are insured or beneficiaries of the coverage provided under the applicable policy.  All Insured Claims are Disputed Claims.  Some of the Insured Claims are fully insured, and no deductible amount would be payable by the Debtors under the terms of the applicable Insurance Policy.  As to other Insured Claims, the Debtors may owe deductible amounts.  For the avoidance of doubt, the Debtors shall not be responsible for any deductible or self-insured retention obligations, and all Claims for such deductibles and self-insured retention obligations shall be treated as Class 11 General Unsecured Claims to the extent Allowed.  Further, no insurance carrier shall, or shall be entitled to, deny coverage under any insurance policy (including any Insurance Policy) based upon (a) any failure by the Debtors to pay any deductible or self-insured retention in full or (b) the treatment of any claim for a deductible or self-insured retention obligation as a Class 11 General Unsecured Claim.  *See* Article 5.42 of the Plan for further information about issues relating to Insured Claims.

128.  "<u>Interests</u>" means any ownership interest in any of the Debtors, including but not limited to, membership interests or other entitlement to participate in the organizational affairs of a nonprofit entity organized under the laws of the State of Texas or the State of New Mexico or equity interests in any for profit corporation, partnership or limited liability company organized under the laws of any jurisdiction, including common stock, preferred stock, stock options and restricted stock awards.

129.  "<u>Interim DIP Order</u>" means the *Amended Interim Order (I) Authorizing Postpetition Financing, (II) Authorizing the Use of Cash Collateral and Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling the Final Hearing and Approving the Form and Method of Notice Thereof, and (V) Granting Related Relief* [Docket No. 61].

130.  "<u>IRS</u>" means the Internal Revenue Service of the United States of America.

131.  "<u>Issuer</u>" means the Public Finance Authority.

132.  "<u>Lien</u>" means "lien," as defined in section 101(37) of the Bankruptcy Code.

133.  "<u>Liquidating Trust</u>" means the trust established under Article 5.2 of the Plan and the Liquidating Trust Agreement.

134.  "<u>Liquidating Trustee</u>" means Jonathan Nash, and any successor thereto.

135.  "<u>Liquidating Trust Agreement</u>" means the agreement by and between the Debtors and the Liquidating Trustee that, among other things, establishes the Liquidating Trust, describes the powers, duties, and responsibilities of the Liquidating Trustee, and discloses the

13

Liquidating Trustee's proposed compensation structure.    The Liquidating Trustee
Agreement will be provided in the Plan Supplement.

136.    "Liquidating Trust Assets" means (a) the Causes of Action, including the Litigation
Claims, except any Causes of Action against the Released Parties; (c) the proceeds of the
Sale Transaction; (d) the Initial Liquidating Trust Funding Amount; (d) the Accounts
Receivable; and (e) any Assets of the Estates not otherwise distributed or administered
under the Plan, including Assets held by another; and (f) any proceeds or product of the
foregoing.

137.    "Liquidating Trust Beneficiaries" means all individuals and Entities entitled to a Plan
Distribution from the Liquidating Trust.

138.    "Liquidating Trust Expense Fund" means a reserve established under Article 5.4(b) of the
Plan.

139.    "Liquidating Trust Expenses" means all reasonable fees and expenses of the Liquidating
Trust, the Liquidating Trustee, and any Professionals retained by the Liquidating Trustee
or Liquidating Trust after the Effective Date associated with the implementation and
administration of the Liquidating Trust and this Plan.

140.    "Liquidating Trust Interests" means the uncertificated beneficial interests in the
Liquidating Trust that may: (a) be granted to each Holder of a Class 3 DIP Financing Claim,
Class 8 Bondholder Claim, Class 11 General Unsecured Claim, and Class 12 Batsu Claim;
and (b) entitle such Holder to receive Distributions from the Liquidating Trust pursuant to
the terms of the terms of this Plan, including the DIP Lenders Settlement and in accordance
with Article 5 of this Plan and the Liquidating Trust Agreement.

141.    "Liquidating Trust Reserves" means the Disputed Confirmation Reserve and the
Liquidating Trust Expense Fund.

142.    "Litigation Claims" shall include (a) any claims against Ovation Healthcare; (b) any other
commercial tort claims and (c) any other causes of action (including avoidance actions
under chapter 5 of the Bankruptcy Code) that are asserted in actions resolved by final
judgment or settlement by the Liquidating Trustee; *provided however* that Litigation
Claims shall not include any claims or causes of action against Released Parties (which,
for the avoidance of doubt, shall include any of the Debtors' directors and officers that
served in such role at any time between the Petition Date and the Effective Date).

143.    "Local Rules" means the Local Rules of the United States Bankruptcy Court for the
Northern District of Texas, as amended from time to time.

144.    "Medicare and Medicaid Accounts Receivable" means accounts receivable due and owing
to the Debtors from or on account of Medicare health plans or Medicaid health plans.

14

145.  "<u>Medicare and Medicaid Secured Claims</u>" means those Claims held by Texas HHS and CMS that are Claims secured by or entitled to recoupment of Medicare and Medicaid Accounts Receivable due and owing to the Debtors.

146.  "<u>Non-Estate Causes of Action</u>" means those Causes of Action which are held by the Bondholders arising from any matter involving the Debtors arising after the issuance of the 2020 Bonds against: (a) all current and former Directors, Officers, members, shareholders, or employees of the Debtors, including William Persefield; (b) all Persons or Entities that conducted transactions with any of the Debtors, including, without limitation, investment bankers and lenders, including Ovation Health and Medica Development, LLC; and (c) all Persons or Entities that provided professional services to the Debtors.  To the extent that any Non-Estate Causes of Action cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Non-Estate Causes of Action shall be deemed to have been retained by the grantor, as applicable, and the Liquidating Trustee shall be deemed to have been designated as a representative of the grantor to enforce and pursue such Non-Estate Causes of Action on behalf of such grantor. In addition, to the extent the Bond Trustee has the right to pursue Non-Estate Causes of Action as remedial actions pursuant to the Bond Indenture, including Sections 1003 and 1007 thereof, the Bond Trustee shall cooperate with the Liquidating Trust to transfer such claims on behalf of Settling Bondholders and Permitted Non-Voting Bondholders as authorized by the Plan.  For the avoidance of doubt, the Non-Estate Causes of Action do not include claims and Causes of Action related to the issuance of the 2020 Bonds, including, but not limited to, those claims and Causes of Action against the underwriter of the 2020 Bonds.

147.  "<u>Non-Settling Bondholders</u>" means those Bondholders, who are not the Permitted Non-Voting Bondholders, who do not (a) vote in favor of the Plan thereby accepting the DIP Lenders Settlement, or (b) complete the Ballot and elect to assign and contribute such Holder's Non-Estate Causes of Action to the Liquidating Trustee pursuant to the terms of the Plan.

148.  "<u>Non-Voting Release Opt-Out Form</u>" means the opt-out form that will be provided to parties that are not entitled to vote.

149.  "<u>Officers</u>" means all current and former officers of the Debtor.

150.  "<u>Order</u>" means an order of the Bankruptcy Court.

151.  "<u>Other Priority Claim</u>" means a Claim, other than an Administrative Expense Claim, Professional Fee Claim, DIP Financing Claim, Other Secured Claim, or Priority Tax Claim, that is accorded priority in right of payment under Bankruptcy Code sections 507(a)(1), (2) (3), (4), (5), (6), (7), or (9).

152.  "<u>Other Secured Claim</u>" means, other than DIP Financing Claims, any Claim that is secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy

15

Court, or subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a).

153. "Ovation Healthcare" means QHR Health, LLC d/b/a Ovation Healthcare.

154. "Payor" means the entity that pays for services rendered by a healthcare provider.

155. "Payor Contracts" means contracts between a Payor and Sunland Medical pursuant to which Sunland Medical furnished services to enrollees of a Payor in accordance with such Payor's health care coverage or health benefits plan.

156. "Permissible Investments" means (a) investments in (1) short-term direct obligations of, or obligations guaranteed by, the United States of America, (2) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (3) an open-ended management investment company, registered under the Investment Company Act of 1940 that is regulated as a "money market fund" pursuant to Rule 2a-7 under the Investment Company Act of 1940, provided that the fund: (i) invests exclusively in United States Treasury bills and United States Treasury Notes owned directly or through repurchase agreements; (ii) has received the highest money market fund rating from a nationally recognized statistical rating organization, such as Standard & Poor's or Moody's; (iii) has agreed to redeem funds shares in cash, with payment being made no later than the business day following a redemption request by a shareholder, except in the event of an unscheduled closing of the Federal Reserve Banks or the New York Stock Exchange; and (iv) has adopted a policy that it will notify its shareholders 60 days prior to any change in its policy (A) to invest exclusively in Treasury Securities as described in (a) above or (B) to redeem fund shares in cash no later than the business day following a redemption request by the shareholder, with limited exceptions for unscheduled closings of Federal Reserve Banks or the New York Stock Exchange; or (b) deposits in demand deposits at any bank or trust company, *provided*, *however*, that the scope of any of the foregoing shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the guidelines of the IRS, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

157. "Permitted Non-Voting Bondholders" mean those Bondholders who (a) do not cast a ballot in connection with the Plan, and (b) hold less than 5% of the 2020 Bonds. The Non-Estate Causes of Action of such Permitted Non-Voting Bondholders shall be transferred and assigned to the Liquidating Trust. To the extent that any Non-Estate Causes of Action cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Non-Estate Causes of Action shall be deemed to have been retained by the grantor, as applicable, and the Liquidating Trustee shall be deemed to have been designated as a representative of the grantor to enforce and pursue such Non-Estate Causes of Action on behalf of such grantor.

16

In addition, to the extent the Bond Trustee has the right to pursue Non-Estate Causes of Action as remedial actions pursuant to the Bond Indenture, including Sections 1003 and 1007 thereof, the Bond Trustee shall cooperate with the Liquidating Trust to transfer such claims on behalf of Settling Bondholders and Permitted Non-Voting Bondholders as authorized by the Plan. If Class 8 is an accepting Class of Claims for purposes of Confirmation of the Plan, Permitted Non-Voting Bondholders will receive elevated treatment provided in Article 4.8(b) of the Plan notwithstanding each such Permitted Non-Voting Bondholder's failure to (a) vote in favor of the Plan, or (b) complete the Ballot and elect to assign and contribute such Holder's Non-Estate Causes of Action to the Liquidating Trustee. A Permitted Non-Voting Bondholder who fails to vote on the Plan will be deemed to have consented to the transfer and assignment of its Non-Estate Causes of Action to the Liquidating Trust.

158. "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, receiver, trustee, unincorporated organization or Governmental Unit or subdivision thereof or other Entity.

159. "Petition Date" means August 29, 2023, the date on which the Debtors filed their voluntary petition for relief under chapter 11 of the Bankruptcy Code.

160. "PFC" means Professional Finance Company, Inc.

161. "Plan" means this *First Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC*, and any exhibits annexed hereto or otherwise filed in connection with the Plan, and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized and permitted amendment or modification.

162. "Plan Consolidation" means except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Liquidating Trust Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no Distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated filed against the consolidated Debtors and shall be treated as one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors. Such substantive consolidation shall not (other than for purposes relating to this Plan) affect the legal and corporate structures of the Debtors. Moreover, such substantive consolidation shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the

17

ability of the Debtors or the Liquidating Trustee, as applicable, to seek to have any Claim or Interest subordinated in accordance with any contractual rights or equitable principles. Nevertheless, the substantive consolidation of the Debtors' estates does not effectuate a merger or consolidation of any of the Debtors as entities into any other Debtor entity. Each Debtor shall remain a separate juridical entity otherwise until it is dissolved.

163. "Plan Documents" means the Plan, the Disclosure Statement, and the Plan Supplement, in each instance inclusive of all exhibits and schedules thereto.

164. "Plan Settlements" means those settlements as may be incorporated in the Plan as set forth in Article 5.45 of the Plan.

165. "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, draft forms of which shall be filed at least 7 days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, including: (a) the Schedule of Retained Causes of Action; (b) the Liquidating Trust Agreement; (c) the compensation of the Liquidating Trustee; (d) the GUC Liquidating Trust Agreement; and (e) the compensation of the GUC Liquidating Trustee; *provided* that, through the Effective Date, the Plan Supplement, and the exhibits thereto may be amended or modified at any time prior to the Effective Date.

166. "Polk Mechanical" means Polk Mechanical, LLC.

167. "Preference Claims" means claims to avoid and recover any payments pursuant to Bankruptcy Code section 547.

168. "Priority Tax Claim" means a Claim or a portion of a Claim of a Governmental Unit against any Debtor that is entitled to priority in payment under Bankruptcy Code sections 502(i) and 507(a)(8).

169. "Privilege Rights" means, collectively, any attorney-client privilege, attorney work-product protection, or any other similar privilege or protection from disclosure belonging to or operating in favor of the Debtors and their Estates.

170. "Professional" means the attorneys, accountants, financial advisors, and other professionals whose retention in the Chapter 11 Cases has been approved by the Bankruptcy Court pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code. For the avoidance of doubt, the Debtor Professionals are Professionals.

171. "Professional Fee Claims" means any Claim of a Professional for compensation, indemnification, or reimbursement of costs and expenses incurred on or before the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1103(a), plus any fees and expenses related to the final fee application of such Professional.

172. "Protected Parties" means, the Debtors, the Liquidating Trustee, the GUC Liquidating Trustee, the Exculpated Parties, the Released Parties, and the Debtor Professionals;

18

*provided, however*, the Debtors' Officers and Directors shall not be Protected Parties to the extent Claims or Causes of Action are asserted against the D&O Liability Insurance Policies.

173. "Pro Rata" means the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class.

174. "Record Date" has the meaning assigned to such term in Article 9.9 of this Plan.

175. "Rejection Damages Bar Date" means the earlier of (a) the date by which a non-Debtor counterparty to a Contract or Lease is required to file a Claim arising from the rejection of a Contract or Lease pursuant to an Order of the Bankruptcy Court, or (b) the date that is thirty (30) days following the Effective Date.

176. "Rejection Damages Claim" means a General Unsecured Claim arising from the rejection of a Contract or Lease under Bankruptcy Code section 365.

177. "Related Parties" means current officers, directors, and managers, funds, Affiliates, employees, partners, managers, investment advisors, agents, representatives, principals, consultants, attorneys, professional advisors, successors and assigns (each in their capacity as such).

178. "Released Parties" means collectively and in each case in their capacity as such: (a) the Debtors; (b) Beckman Coulter, Inc., Blue Signal, LLC, Hegwood Group LP, and Insight Enterprises, Inc., but solely as to their actions taken as members of the Committee; (c) the DIP Lenders; (d) the Bond Trustee; (e) Settling Bondholders, and provided the Directing Bondholders or their affiliates are Settling Bondholders, each of RPM Capital Management, LLC, RPM Capital Management, LLC, as Bondholder Representative, Michele M. Newland, Delphi Capital Management, Safety National Casualty Corporation, Philadelphia Indemnity Insurance Company, VanEck High Yield Muni ETF and Van Eck Associates Corporation; (f) AMI; (g) Batsu; (h) James Campbell; (i) Jonathan Nash, (j) Cooper Crouse, (k) Heidi Bragg, (l) Eugene Davis, (m) Peter Caparis, (n) Kim Caraway, (o) Emily Fletcher, and (p) with respect to each of the foregoing entities in clauses (a) through (g), such entities' Related Parties, including, without limitation, (1) McDermott Will & Emery LLP; (2) Meadowlark Advisors, LLC; (3) SC&H Group; (4) Dickinson Wright PLLC; (5) Caliber Advisors, LLC; (6) Lippes Mathias LLP, and (7) Stretto, Inc. For the avoidance of doubt, except with respect to releases in favor of, or otherwise applicable to, the Debtor Professionals and the Directors and Officers listed above, nothing contained in this Plan releases any Related Party, insider, or Affiliate of the Debtors, the Committee, or its members. For the further avoidance of doubt, Ovation Healthcare shall not be a Released Party or be released from any claims or Causes of Action that the Debtors and their Estates have against Ovation Healthcare.

179. "Releasing Parties" means collectively, and in each case in its capacity as such: (a) each Debtor; (b) each party-in-interest that does not elect to opt out of the release by checking the box on its timely submitted Ballot or Non-Voting Release Opt-Out Form, as applicable;

19

(c) each Holder of a Claim or Interest who either (1) votes to accept the Plan and does not elect to opt out of the Third-Party Release, (2) abstains from voting on the Plan and does not elect to opt out of the Third-Party Release, or (3) votes to reject the Plan and does not elect to opt out of the Third-Party Release; (d) each Holder of Claims or Interests that is deemed to reject or presumed to accept the Plan but does not elect to opt out of the Third-Party Release; and (e) with respect to each of the Entities in the foregoing clauses (a) through (d), each such Entity's current and former Related Parties; *provided* that if any Holder of a Claim or Interest does not elect to opt out of the Third-Party Release in any of its capacities, such Holder and each of its Related Parties that is also a Holder of a Claim or Interest shall be deemed to have not opted out of the Third-Party Release in all capacities.

180.    "<u>Retained Causes of Action</u>" means all Causes of Action that are not released or waived.

181.    "<u>Sale Proceeds</u>" means the proceeds from the Sale Transaction.

182.    "<u>Sale Transaction</u>" means the sale pursuant to the *Order (A) Approving Sale of Debtors' Assets, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 320].

183.    "<u>Sandton</u>" means Sandton Capital Solutions Master Fund V, L.P.

184.    "<u>Sandton Intercreditor Agreement</u>" means the *Subordination and Intercreditor Agreement dated as of December 13, 2022, among Sandton Capital Solutions Master Fund V, LP and UMB Bank, N.A. as Trustee as Subordinated Lender relating to Trinity Regional Hospital Sachse*.

185.    "<u>Sandton Secured Claim</u>" means the Claim of Sandton that is secured by the net proceeds received from the Court-approved sale of the Debtors' interests in the real property located at 4750 President George Bush Highway, Sachse, TX 75048.

186.    "<u>Sandton Distribution</u>" means the distribution from the proceeds of the Sale Transaction in the amount of $8,138,244.83 on account of the Sandton Secured Claim, of which $1,138,244.83 will be paid by the Debtors on behalf of the DIP Lenders pursuant to the Sandton Intercreditor Agreement and the DIP Orders.

187.    "<u>Schedules</u>" means the schedules of assets and liabilities, schedules of executory contracts and unexpired leases, statements of financial affairs, and other schedules and statements filed by the Debtor pursuant to Bankruptcy Rule 1007, and any amendments thereto.

188.    "<u>Scheduled Claim</u>" means a Claim that is listed in the Debtors' Schedules.

189.    "<u>Schedule of Retain Causes of Action</u>" means the schedule of Retained Causes of Action, pursuant to the Plan which will be attached to the Plan Supplement, which may be amended, modified, or supplemented from time to time.

DM_US 204987622-2.121080.0012

190. "Secured Claim" means a Claim secured by a Lien, as that term is defined in Bankruptcy Code section 101(37), including, but not limited to, a judicial lien as that term is defined in Bankruptcy Code section 101(36), against any property of the Estates, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to Bankruptcy Code section 506(a) and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in any Debtor's interest in such property. Nothing herein revives or preserves any Lien on property sold free and clear of interests in such property in the Sale Transaction.

191. "Secured Creditor" means the Holder of a Secured Claim.

192. "Self-Pay Accounts Receivable" means Accounts Receivable that patients, or the patients' guarantors, are obligated to pay directly to Sunland Medical.

193. "Settling Bondholders": means those Bondholders who (a) vote in favor of the Plan thereby accepting the DIP Lenders Settlement, and (b) complete the Ballot and elect to assign and contribute such Holder's Non-Estate Causes of Action to the Liquidating Trustee pursuant to the terms of the Plan.

194. "Stamp or Similar Tax" means any stamp tax, recording tax, conveyance fee, intangible or similar tax, mortgage tax, personal or real property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes or fees imposed or assessed by any Governmental Unit.

195. "Statutory Fees" means all fees for which the Debtors are obligated pursuant to 28 U.S.C. § 1930(a)(6), together with interest, if any, pursuant to 31 U.S.C. § 3717.

196. "Supplemental Administrative Expense Claim Bar Date" means, except as provided for (a) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (b) US Trustee Fees, requests for payment of Administrative Expense Claims that arise after any Administrative Expense Claim Bar Date set by the Court must be filed on or before thirty (30) days after the Effective Date or such later date as may be established by order of the Bankruptcy Court. Holders of Administrative Expense Claims who are required to file a request for payment of such Claims and who do not file such requests by the Supplemental Administrative Expense Claim Bar Date shall be forever barred from asserting such Claims against the Debtors or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Expense Claim. For the avoidance of doubt, any Administrative Expense Claim that arose on or before an Administrative Expense Claim Bar Date previously established by the Court shall be controlled by such prior order and nothing herein revives such Administrative Expense Claim.

197. "Sunland Medical" means Sunland Medical Foundation.

198. "Talley Riggins" means Talley Riggins Construction Group, LLC.

DM_US 204987622-2.121080.0012

199.    "Tax Items" has the meanings set forth in Article 5.14 of the Plan.

200.    "Texas HHS" means the Texas Health and Human Services Commission.

201.    "Third-Party Release" means the releases set forth at Article 8.8 of the Plan

202.    "Trustee Advance Notes" means that certain Trustee Advance Promissory Note in the original principal amount of Eight Million and 00/100 Dollars ($8,000,000.00) dated as of April 21, 2023, and that certain Trustee Advance Promissory Note in the original principal amount of Two Million and 00/100 Dollars ($2,000,000.00) dated as of August 15, 2023, each of which are governed by that certain Trustee Advance Promissory Note Funding and Purchase Agreement, dated as of April 21, 2023, which agreement was amended and restated pursuant to an Amended and Restated Trustee Advance Promissory Note Funding and Purchase Agreement dated August 15, 2023, by and among Sunland Medical, the Bond Trustee, and Principal Street High Income Municipal Fund.

203.    "Trustee Advance Notes Secured Claims" means those Claims on account of the Trustee Advance Notes that are secured pursuant to the Bond Trustee Liens.

204.    "TSA" means that certain Amended and Restated Transition Services Agreement between the Debtors and Columbia Medical Center dated February 15, 2024.

205.    "U.S. Trustee" means the United States Trustee for Region 6.

206.    "Unclaimed Distribution" means any Distribution that remains unclaimed after ninety (90) days following any Distribution Date, including, without limitation, (a) checks (and the funds represented thereby) that have been returned as undeliverable without a proper forwarding address, (b) funds representing checks that have not been paid, and (c) checks (and the funds represented thereby) that were not mailed or delivered because of the absence of a valid address.

207.    "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of Bankruptcy Code section 1124, including through payment in full in Cash.

208.    "Unsecured Claim" means any Claim that is not secured by an offset or "lien," as that term is defined in Bankruptcy Code section 101(37), including, but not limited to, a "judicial lien," as that term is defined in Bankruptcy Code section 101(36), against any property of the Estate, but only to the extent of the "value," as determined by the Bankruptcy Court pursuant to Bankruptcy Code section 506(a) and Bankruptcy Rule 3012, or as otherwise agreed to, of such Creditor's interest in the Debtors' interest in such property.

209.    "Voting Agent" means Stretto, Inc., which has been retained by the Debtors to perform certain solicitation and other administrative services.

210.    "Voting Deadline" means April 16, 2024, at 5:00 p.m., prevailing Central time.

22

### 1.2 **Rules of Interpretation**.

Unless otherwise specified in this Plan or a Final Order of the Bankruptcy Court: (a) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (b) each pronoun stated in the masculine, feminine, or neutral gender shall include, in the appropriate context, the masculine, feminine, and the neutral gender; (c) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (d) all references to articles or Articles are references to the Articles of this Plan; (e) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (f) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (g) unless stated otherwise, all docket numbers used in the Plan shall refer to the docket in Case No. 23-80000 (MVL); (h) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, modified, or supplemented; (i) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (j) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (k) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; (l) subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (m) any capitalized term used but not otherwise defined in this Plan, which is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (n) all references in the Plan to Cash, monetary figures, "dollars," or "$" refer to the currency of the United States of America, unless otherwise expressly provided; and (o) at the discretion of the Debtors, amounts asserted in any currency other than U.S. dollars may be deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in Thee Wall Street Journal, National Edition, on the Petition Date.

### 1.3 **Computation of Time**.

Unless otherwise specifically stated in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed by the Plan or the related solicitation materials.  If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next Business Day.

### 1.4 **Deemed Consolidation**.

Unless and to the extent previously approved by prior order of the Bankruptcy Court, at the Confirmation Hearing, the Court will consider approval under the Plan of the Plan Consolidation, and the Confirmation Order shall so provide.  For the avoidance of doubt, nothing in this deemed consolidation shall affect the Debtors' rights of recovery or causes of action.

DM_US 204987622-2.121080.0012

(a)    <u>Effect of Consolidation</u>.

Solely for the purposes specified in the Plan (including voting, Confirmation, and Distributions), and subject to Article 1.4(b), (i) all Assets and liabilities of the consolidated Debtors shall be consolidated and treated as though they were merged, (ii) all guarantees of any consolidated Debtor of the obligations of any other consolidated Debtor shall be eliminated so that any Claim against any consolidated Debtor, any guarantee thereof executed by any other consolidated Debtor and any joint or several liability of any of the consolidated Debtors shall be one obligation of the consolidated Debtors, and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any of the consolidated Debtors shall be deemed filed against the consolidated Debtors collectively and shall be one Claim against and, if and to the extent allowed, shall become one obligation of the consolidated Debtors.

(b)    <u>Limitations of Consolidation</u>.

The Plan Consolidation effected pursuant to this section shall not affect: (i) the legal or organizational structure of the consolidated Debtors, (ii) pre- or post-Petition Date Liens or security interests, or (iii) defenses to any Cause of Action.

## ARTICLE 2

## PAYMENT OF CLAIMS AND FEES NOT REQUIRED TO BE CLASSIFIED

### 2.1    <u>Claims and Fees Not Classified</u>.

No Classes are designated for Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, or Statutory Fees.

### 2.2    <u>Administrative Expense Claims</u>.

Except to the extent that the Debtors (or the Liquidating Trustee) and the Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, a Holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim, which shall be subject to Article 2.3 of the Plan and a DIP Financing Claim, which shall receive treatment in Class 3 of the Plan) shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim (a) as soon as practicable following the later of the Effective Date and the date upon which the Court enters a Final Order Allowing any such Administrative Expense Claim, (b) as otherwise provided in the Bankruptcy Code or approved by the Bankruptcy Court, or (c) as agreed by the Holder of any such Administrative Expense Claim. If any Disputed Administrative Expense Claim exists on the Effective Date, then the Liquidating Trustee shall hold and maintain Cash in the Disputed Confirmation Reserve in an amount equal to all outstanding Disputed Administrative Expense Claims until such dispute is resolved consensually or by Final Order.

Except as otherwise provided in this Article 2.2, requests for payment of Administrative Expense Claims arising after April 15, 2024, must be filed with the Bankruptcy Court and served on the Debtors or Liquidating Trustee, as applicable, no later than the Supplemental Administrative

Expense Claim Bar Date.  **Holders of Administrative Expense Claims that are required to, but do not, file and serve a request for payment of such Administrative Expense Claims by the Supplemental Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, their Estates, or their property and such Administrative Expense Claims shall be deemed discharged as of the Effective Date.**  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim previously Allowed by Final Order of the Bankruptcy Court.

### 2.3 <u>Professional Fee Claims</u>.

(a) <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All requests for payment, including requests under Bankruptcy Code section 503(b), of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Fee Application Deadline, which is the Business Day next following the date that is sixty (60) days after the occurrence of the Effective Date.  Any Professional that fails to file and serve such requests on or before the Fee Application Deadline shall be forever barred from asserting any such right to payment against the Debtors or the Estates.

The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  All pre-Effective Date Allowed Professional Fees Claims shall be paid promptly by the Debtors to the applicable Professional.  Following the Effective Date of the Plan, the Liquidating Trustee shall pay any and all Allowed Debtor Professional Fee Claims from the Debtor Professional Fee Escrow Account promptly after such Professional Fee Claims are Allowed.

(b) <u>Debtor Professional Fee Escrow Account</u>.

Prior to or on the Effective Date, the Debtors shall fund the Debtor Professional Fee Escrow Account with Cash equal to the Debtor Professional Fee Amount.  Upon the Effective Date of the Plan, the Liquidating Trust shall maintain the Debtor Professional Fee Escrow Account in accordance with the terms of the Plan.  The Debtors or the Liquidating Trustee, as applicable, shall maintain the Debtor Professional Fee Account in trust solely for the Debtor Professionals.  Such funds shall not be considered property of the Debtors, the Estates, or the Liquidating Trust, and shall not constitute Liquidating Trust Assets; *provided, however,* that when all such Allowed Debtor Professional Fee Claims have been paid in full, any Excess Debtor Professional Fee Escrow Amounts shall immediately vest in the Liquidating Trust without any further action or Order of the Bankruptcy Court.  For the avoidance of doubt, only Debtor Professional Fee Claims of Debtor Professionals may be paid from the Debtor Professional Fee Escrow Account.

(c) <u>Debtor Professional Fee Amount</u>.

The Debtor Professionals shall reasonably estimate their unpaid Debtor Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five business days before the Effective Date; *provided, however,* that such estimate shall not be deemed

25

to limit the amount of the fees and expenses that are the subject of each Debtor Professional's final request for payment in the Chapter 11 Cases. If a Debtor Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Debtor Professional.

### 2.4     **Priority Tax Claims**.

Unless otherwise agreed to by the parties, each Holder of an Allowed Priority Tax Claim will receive Cash of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim, in the Liquidating Trustee's sole discretion, either (a) in full on the Effective Date, or (b) in regular installment payments over a period ending not later than five (5) years after the Petition Date, which treatment is not less favorable than that provided to the General Unsecured Creditors, in accordance with Bankruptcy Code section 1129(a)(9)(C); *provided, however*, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid by the Liquidating Trustee in the ordinary course of business in accordance with the terms thereof. If any Disputed Priority Tax Claim exists on the Distribution Date, then the Liquidating Trustee shall hold and maintain Cash in the Disputed Confirmation Reserve in an amount equal to all outstanding Disputed Priority Tax Claims until such dispute is resolved consensually or by Final Order.

### 2.5     **Statutory Fees**.

All Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date. Payment of Statutory Fees by the Debtors prior to the Effective Date shall be included in calculations of the maximum quarterly fee pursuant to 28 U.S.C. § 1930(a)(6) for the quarter in which the Effective Date occurs. Any Statutory Fees that may be owed by the Debtors after the Effective Date shall be paid by the Liquidating Trust and the GUC Liquidating Trust pursuant to the distributions made by each respective trust in the aggregate on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed or by a trust that has been terminated. The Liquidating Trust and GUC Liquidating Trust, as applicable, shall each provide the United States Trustee with post-confirmation quarterly reports that shall include all their respective disbursements for that quarter. For the avoidance of doubt, transfer of the Liquidating Trust Assets to the Liquidating Trust and the GUC Liquidating Trust Assets to the GUC Liquidating Trust shall not be a disbursement for purposes of assessing Statutory Fees.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1     **Summary**.

Pursuant to Bankruptcy Code section 1122, a Claim or Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (a) the Claim or Interest qualifies within the description of that Class; (b) the Claim or Interest is an Allowed Claim or Allowed Interest (or temporarily allowed Claim or Interest for voting purposes) in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Class or Classes;

26

and (c) the Claim or Interest has not been paid, released, or otherwise compromised before the Effective Date. A Claim or Interest which is not an Allowed Claim or Allowed Interest, including a Disputed Claim, is not in any Class, and, notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or Allowed Interest. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims (excluding the DIP Financing Claims), Professional Fee Claims, Priority Tax Claims, and Statutory Fees are not classified under the Plan and are excluded from the following Classes.

**3.2    Identification of Classes**.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with Bankruptcy Code section 1126, or (c) deemed to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 3 | DIP Financing Claims | Impaired | Yes |
| Class 4 | Sandton Secured Claims | Impaired | Yes |
| Class 5 | Bond Trustee Advance Notes Secured Claims | Impaired | Yes |
| Class 6 | Bond Trustee Expense Claims | Impaired | Yes |
| Class 7 | AMI Secured Claims | Impaired | Yes |
| Class 8 | Bondholder Secured Claims | Impaired | Yes |
| Class 9 | Medicare and Medicaid Secured Claims | Unimpaired | No (deemed to accept) |
| Class 10A | Other Secured Claims (Talley Riggins) | Impaired | No (objection to claim) |
| Class 10B | Other Secured Claims (Polk Mechanical) | Impaired | No (objection to claim) |
| Class 10C | Other Secured Claims (Cardinal Health) | Impaired | No (objection to claim) |
| Class 10D | Other Secured Claims (Humana) | Impaired | Yes |
| Class 10E | Other Secured Claims (PFC) | Impaired | Yes |
| Class 11 | General Unsecured Claims | Impaired | Yes |
| Class 12 | Batsu Claims | Impaired | Yes |
| Class 13 | Intercompany Claims | Impaired | No (deemed to reject) |
| Class 14 | Interests | Impaired | No (deemed to reject) |

27

### 3.3    Elimination of Classes for Voting Purposes.

Any Class of Claims or Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Interest, or a Claim or Interest temporarily allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

## ARTICLE 4

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by Holders of Allowed Claims and Interests under the Plan shall be in full settlement, and release of such Allowed Claims and Interests.

### 4.1    Class 1:  Other Priority Claims.

Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, and release of such Allowed Other Priority Claim, at the sole option of the Debtors or the Liquidating Trustee, each Holder of an Allowed Priority Claim shall receive: (a) Cash in an amount equal to the amount of such Allowed Priority Claim on the later of (1) the Effective Date, and (2) for Claims in Class 1 that were Disputed Claims and thereafter became Allowed Priority Claims, thirty (30) days following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable, or (b) such other treatment so as to render such Holder's Allowed Priority Claim Unimpaired.

Class 1 is Unimpaired.  Holders of Other Priority Claims in Class 1 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are not entitled to vote to accept or reject the Plan.

### 4.2    Class 2:  Secured Tax Claims.

Except to the extent that the Holder of an Allowed Class 2 Secured Tax Claim agrees to less favorable treatment of its Allowed Class 2 Secured Claim, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Class 2 Secured Claim, each such Holder shall receive, at the Liquidating Trustee's option, as applicable: (a) payment in accordance with § 1129 of the Bankruptcy Code or (b) surrender of the Collateral that secured such Allowed Class 2 Secured Claim prior to the Effective Date.  If necessary, the amount, validity, extent, value, and priority of the Allowed Class 2 Claim under §§ 505, 506, and 511 of the Bankruptcy Code will be determined by the Bankruptcy Court after the Effective Date.  Any Deficiency Claim or other Unsecured Claim of a Holder of Class 2 Claim shall be treated as a Class 11 General Unsecured Claim.

Class 2 is Unimpaired. Holders of Secured Tax Claims in Class 2 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are not entitled to vote to accept or reject the Plan.

### 4.3    Class 3: DIP Financing Claims.

In full and final satisfaction of the DIP Financing Claims, solely as it relates to the Debtors and their Estates, the DIP Lenders will receive: (a) $14,000,000 from the proceeds of the Sale Transaction, (b) the remaining proceeds from the Sale Transaction up to the remaining outstanding $21,250,000 after (1) payment of the Sandton Secured Claims pursuant to the terms of the Plan, (2) payment of the Trustee Advance Notes Secured Claims, (3) payment of the Bond Trustee Expense Claims, and (4) payment of the Initial Liquidating Trust Funding Amount; and (c) each Holder of a DIP Financing Claim will receive its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed DIP Financing Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement. For the avoidance of doubt, as part of the Sandton Distribution, the Debtors will pay $1,138,244.83 of proceeds from the Sale Transaction to Sandton on behalf of the DIP Lenders pursuant to the Sandton Intercreditor Agreement and DIP Orders.

Class 3 is Impaired. Holders of DIP Financing Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4    Class 4: Sandton Secured Claims.

Sandton will have an Allowed Class 4 Sandton Secured Claim in the amount of $8,138,244.83. In full and final satisfaction of the Sandton Secured Claims, the Sandton Distribution will be approved on a final basis with Sandton receiving $7,000,000 from the Debtors' Estates on account of the Sandton Secured Claims and $1,138,244.83 from the DIP Lenders on account of its Sandton Secured Claims pursuant to the Sandton Intercreditor Agreement and DIP Orders.

Class 4 is Impaired. Holders of Sandton Secured Claims in Class 4 are entitled to vote to accept or reject the Plan.

### 4.5    Class 5: Trustee Advance Notes Secured Claims.

In full and final satisfaction of the Bond Trustee Advance Notes Claims, Holders of Bond Trustee Advance Notes Claims will receive payment in an amount up to $10,000,000. Upon payment of the Bond Trustee Advance Notes Claims, all obligations of the Bond Trustee to Principal Street High Income Municipal Fund related to the Trustee Advance Notes, including but not limited to those obligations set forth in that certain Trustee Advance Promissory Note Funding and Purchase Agreement, dated as of April 21, 2023, which agreement was amended and restated pursuant to an Amended and Restated Trustee Advance Promissory Note Funding and Purchase Agreement dated August 15, 2023, shall be extinguished and deemed satisfied in full. The Trustee Advance Notes, the Trustee Advance Promissory Note Funding and Purchase Agreement dated as of April 21, 2023, and the Restated Trustee Advance Promissory Note Funding and Purchase Agreement dated August 15, 2023 shall each be deemed cancelled, released, surrendered, extinguished and

29

discharged and of no force or effect, without any need for further action or approval of the Bankruptcy Court, the Debtors, any Holder of any Claim or Interest, or any other Person or Entity.

Class 5 is Impaired.  Holders of Trustee Advance Notes Secured Claims in Class 5 are entitled to vote to accept or reject the Plan.

### 4.6     Class 6:  Bond Trustee Expense Claims.

In full and final satisfaction of the Bond Trustee Expense ClaimsHolders of Bond Trustee Expense Claims will receive (a) payment in an amount up to $265,000 from the proceeds of the Sale Transaction; and (b) relief from the automatic stay pursuant to Section 362(a) of the Bankruptcy Code and the Plan Injunction to allow the Bond Trustee to administer and apply the Bond Trustee Held Funds pursuant to the terms of the 2020 Trust Indenture.

Class 6 is Impaired.  Holders of Bond Trustee Expense Claims in Class 6 are entitled to vote to accept or reject the Plan.

### 4.7     Class 7:  AMI Secured Claims.

In full and final satisfaction of the AMI Secured Claims, each Holder of an AMI Secured Claim shall receive payment and consideration pursuant to the AMI Settlement

Class 7 is Impaired.  Holders of AMI Secured Claims in Class 7 are entitled to vote to accept or reject the Plan.

### 4.8     Class 8:  Bondholder Secured Claims.

In full and final satisfaction, settlement, and release of the Bondholder Claims. solely as it relates to the Debtors and their Estates:

(a) Each Settling Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Bondholder Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement and in exchange for such Settling Bondholder's contribution of its Non-Estate Causes of Action, and (3) each Settling Bondholder will be a Released Party.

(b) If Class 8 is an accepting Class of Claims as part of Confirmation of the Plan, each Permitted Non-Voting Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Permitted Non-Voting Bondholder that is a Holder of an Allowed Bondholder Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement and in exchange for the transfer of such Permitted Non-Voting Bondholder's Non-Estate Causes of Action to the Liquidating Trust by operation of the Plan, or otherwise; *provided, however*, that if Class 8 is not an accepting Class for purposes

30

of Confirmation of the Plan no Permitted Non-Voting Bondholder shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims and  Class 8 Settling Bondholder Claims are paid in full or satisfied.

(c) Each Non-Settling Bondholder will receive on account of its Bondholder Claim (1) the Collateral, if any, securing such Allowed Bondholder Secured Claim, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Bondholder Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement; *provided, however*, that no Non-Settling Bondholder shall receive a Distribution from the Liquidating Trust unless and until all of the following Claims are paid in full or satisfied: (i) Class 3 DIP Financing Claims, (ii) Class 8 Settling Bondholder Claims, and, (iii) the Permitted Non-Voting Bondholder Claims if Class 8 is an accepting Class of Claims as part of Confirmation.

All Distributions on account of Class 8 Claims shall be paid to the Bond Trustee and applied pursuant to the 2020 Trust Indenture.  Nothing in this Plan shall alter or amend the relative priority of the 2020 Senior Bonds and the 2020 Subordinate Bonds, except to the extent Distributions to Permitted Non-Voting Bondholders and Non-Settling Bondholders are altered by Sections 4.8(b) and 4.8(c) hereof.

The Liquidating Trustee may, in his sole discretion and with the consent of the DIP Lenders, elect to provide similar treatment to Permitted Non-Voting Bondholders and Non-Settling Bondholders as that received by Settling Bondholders.

Class 8 is Impaired.  Holders of Bondholder Secured Claims in Class 8 are entitled to vote to accept or reject the Plan.

**4.9     Class 9:  Medicare and Medicaid Secured Claims**.

In full and final satisfaction of the Medicare and Medicaid Secured Claims, each Holder of a Medicare and Medicaid Secured Claim shall receive the ability to recoup from outstanding Medicare and Medicaid Accounts Receivable, as applicable, up to the amount of their Secured Claims.  Any Deficiency Claim or other Unsecured Claim of a Holder of Class 9 Claim shall be treated as a Class 11 General Unsecured Claim.

Class 9 is Unimpaired.  Holders of Medicare and Medicaid Secured Claims in Class 9 are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and are not entitled to vote to accept or reject the Plan.

**4.10    Class 10:  Other Secured Claims**.

Holders of Class 10 Claims shall be designated as Class 10A, Class 10B, Class 10C, etc. Treatment of known Holders of Class 10 sub-classes is set forth in each sub-class.  For Holders of Class 10 Claims that are not set forth herein, except to the extent previously paid or the Holder of an Allowed Other Secured Claim and the Debtors or Liquidating Trustee agree to less favorable treatment for such Holder, each Holder of an Allowed Other Secured Claim, at the option of the

31

Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim shall receive either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that the Holder of such Allowed Other Secured Claim will not receive more than the value of the Collateral securing such Claim.  At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date.  Any Deficiency Claim or other Unsecured Claim of a Holder of a Class 10 Claim shall be treated as a Class 11 General Unsecured Claim.

Impairment and voting rights of known Other Secured Claims in Class 10 are set forth in each sub-class.  Unidentified Holders of Class 10 Claims are Unimpaired and are conclusively presumed to have accepted the Plan under Bankruptcy Code section 1126(f) and not entitled to vote to accept or reject the Plan.

### 4.11    Class 10A:  Other Secured Claims (Talley Riggins).

Talley Riggins's interests in Collateral are junior to the Bond Trustee's interest in such Collateral, accordingly, pursuant to section 506 of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim and will receive treatment in Class 11 as a General Unsecured Claim.  The Plan is an objection to Talley Riggins's Claim as a Secured Claim.

Class 10A is Impaired.  Holders of Other Secured Claims (Talley Riggins) in Class 10A are not entitled to vote to accept or reject the Plan because this Plan is an objection to the Class 10A Claim.

### 4.12    Class 10B:  Other Secured Claims (Polk Mechanical).

Polk Mechanical's Claim is duplicative of and incorporated in Talley Riggins's Claim. Additionally, Polk Mechanical's interest in Collateral is junior to the Bond Trustee's interest in such Collateral, accordingly, pursuant to section 506 of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim.  The Plan is an objection to Polk Mechanical's Claim.

Class 10B is Impaired.  Holders of Other Secured Claims (Polk Mechanical) in Class 10B are not entitled to vote to accept or reject the Plan because this Plan is an objection to the Class 10B Claim.

DM_US 204987622-2.121080.0012

**4.13     Class 10C:  Other Secured Claims (Cardinal Health)**.

Cardinal Health's interest in Collateral is junior to the Bond Trustee, accordingly, pursuant to section 506 of the Bankruptcy Code, it will not receive any Distribution on account of its Other Secured Claim and will receive treatment in Class 11 as a General Unsecured Claim.  The Plan is an objection to Cardinal Health's Claim as a Secured Claim.

Class 10C is Impaired.  Holders of Other Secured Claims (Cardinal Health) in Class 10C are entitled to vote to accept or reject the Plan.

**4.14     Class 10D:  Other Secured Claims (Humana)**.

The Debtors are still investigating whether Humana has a secured interest in any Collateral. To the extent Humana holds a properly perfected first-priority security interest in Collateral it will receive, at the option of the Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim, either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that Humana will not receive more than the value of the Collateral securing such Claim.  At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of Humana's Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date.  Any Deficiency Claim or other Unsecured Claim of Humana shall be treated as a Class 11 General Unsecured Claim.

Class 10D is Impaired.  Holders of Other Secured Claims (Humana) in Class 10D are entitled to vote to accept or reject the Plan.

**4.15     Class 10E:  Other Secured Claims (PFC)**.

The Debtors are still investigating whether PFC has a secured interest in any Collateral. To the extent PFC holds a properly perfected first-priority security interest in Collateral it will receive, at the option of the Debtors or Liquidating Trustee, in full and final satisfaction of its Other Secured Claim, either (a) Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable Collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) the Sale Proceeds from the liquidation of Collateral securing the Allowed Other Secured Claim after payment of (1) all fees incurred and (2) expenses reimbursed related to

33

the liquidation of such Collateral; or (d) such other treatment sufficient to render its Allowed Other Secured Claim Unimpaired or as may otherwise be provided in the Bankruptcy Code, provided that PFC will not receive more than the value of the Collateral securing such Claim.  At the option of the Liquidating Trustee, the amount, validity, extent, value, and priority of PFC's Other Secured Claims under section 506 of the Bankruptcy Code may be determined by the Bankruptcy Court after the Effective Date.  Any Deficiency Claim or other Unsecured Claim of PFC shall be treated as a Class 11 General Unsecured Claim.

Class 10E is Impaired.  Holders of Other Secured Claims (PFC) in Class 10E are entitled to vote to accept or reject the Plan.

**4.16    Class 11: General Unsecured Claims**.

In full and final satisfaction, settlement, and release of any and all General Unsecured Claims:

(a)    Each Holder of an Allowed General Unsecured Claim in Class 11 who (i) votes to accept this Plan, or (ii) does not vote, shall receive (1) its Pro Rata share of the GUC Liquidating Trust Interests representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the GUC Liquidating Trust in accordance with the Plan and the GUC Liquidating Trust Agreement, and (2) its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement.  However, no Holder of an Allowed General Unsecured Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims, Class 8 Bondholder Claims, and Class 12 Batsu Claims are paid in full or satisfied.  Each Holder of an Allowed General Unsecured Claim in Class 11 who votes to accept this Plan will also receive a release of any Preference Claim that the Debtors and their Estates may possess.  If Class 11 is an accepting Class of Claims as part of Confirmation of the Plan, each Holder of an Allowed General Unsecured Claim who does not vote shall also receive a release of any Preference Claim that the Debtors and their Estates may possess.

(b)    Each Holder of an Allowed General Unsecured Claim in Class 11 who votes to reject the Plan will receive its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed General Unsecured Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement.  However, no Holder of an Allowed General Unsecured Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims, Class 8 Bondholder Claims, and Class 12 Batsu Claims are paid in full or satisfied.  For the avoidance of doubt, any Preference Claim of any Holder of an Allowed General Unsecured Claim who votes to reject the Plan will not be released and will be a Liquidating Trust Asset.  If Class 11 is an accepting Class of Claims as part of Confirmation of the Plan, each Holder of an Allowed General Unsecured Claim in Class 11 who votes to reject the Plan will receive its Pro Rata share of the GUC Liquidating Trust Interests representing the right of each Holder of an Allowed GUC Settlement Claim to receive Distributions

34

from the GUC Liquidating Trust in accordance with the Plan and the GUC Liquidating Trust Agreement.

Class 11 is Impaired.  Holders of General Unsecured Claims in Class 11 are entitled to vote to accept or reject the Plan.

### 4.17   Class 12: Batsu Claims.

Each Holder of a Batsu Claim shall receive in full and final satisfaction of such Batsu Claims its Pro Rata share of Liquidating Trust Interests representing the right of each Holder of an Allowed Batsu Claim to receive Distributions from the Liquidating Trust in accordance with the Plan and pursuant to the DIP Lenders Settlement.  However, no Holder of an Allowed Batsu Claim shall receive a Distribution from the Liquidating Trust unless and until all Class 3 DIP Financing Claims and Class 8 Bondholder Claims are paid in full or satisfied.

Class 12 is Impaired.  Holders of Batsu Claims in Class 12 are entitled to vote to accept or reject the Plan.

### 4.18   Class 13:  Intercompany Claims.

Holders of Intercompany Claims shall not receive any Distributions on account of such Intercompany Claims and all such Intercompany Claims shall be extinguished.

Class 13 is Impaired.  Holders of Intercompany Claims are conclusively deemed to have rejected the Plan under Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

### 4.19   Class 14: Interests.

Holders of Allowed Interests shall not receive any recovery from the Debtors under the Plan.

Class 14 is Impaired.  Holders of Interests are conclusively deemed to have rejected the Plan under Bankruptcy Code section 1126(g) and are not entitled to vote to accept or reject the Plan.

# ARTICLE 5

## MEANS OF IMPLEMENTATION OF THE PLAN

### 5.1   Plan Funding Mechanism.

The Plan shall be funded from the Effective Date Cash and any other Assets of the Estates, except as otherwise expressly set forth in the Plan.

**5.2** **Formation of the Liquidating Trust**.

On the Effective Date, the Liquidating Trust shall be formed, established, and become effective pursuant to the Plan and in accordance with the Liquidating Trust Agreement, to receive the Liquidating Trust Assets, to liquidate the Liquidating Trust Assets, including the Litigation Claims, and to enable the Liquidating Trustee to distribute same to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be established for the sole purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. On the Effective Date, the Debtors shall transfer all the Liquidating Trust Assets to the Liquidating Trust free and clear of Liens, Encumbrances, Claims, and Interests, including, without limitation, all setoff and recoupment rights. On or before the Effective Date, the Liquidating Trust Agreement shall be executed and, upon the Effective Date, shall become effective without further action by any party.

The Liquidating Trust Interests shall not be certificated, unless otherwise provided in the Liquidating Trust Agreement. The issuance of any beneficial interests of the Liquidating Trust satisfies the requirements of Bankruptcy Code section 1145 and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

The terms of the Liquidating Trust Agreement shall control as to all matters applicable to the Liquidating Trust. To the extent there is any conflict between the Liquidating Trust Agreement and the Plan, the Plan shall govern.

**5.3** **Liquidating Trust Assets**.

On the Effective Date the Liquidating Trust Assets, as well as the rights, Privilege Rights, privileges (including but not limited to the attorney-client privilege), and powers of the Debtors and their Estates applicable to the Liquidating Trust Assets, shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens and Encumbrances, including, without limitation, all setoff and recoupment rights, for the benefit of the Liquidating Trust Beneficiaries. For the avoidance of doubt, (a) in no event shall the term "Liquidating Trust Assets" be deemed to include any released Claims against any Released Parties and (b) the Liquidating Trust shall not have the right to assert any released claims against any Released Parties. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in such Liquidating Trust Assets, and the Debtors shall have no further interest in or with respect to such Liquidating Trust Assets.

The Confirmation Order shall constitute a determination that the transfers of Liquidating Trust Assets to the Liquidating Trust are legal and valid and consistent with the laws of the State of Texas.

All parties shall execute any documents or other instruments necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust. The Liquidating Trust Assets shall be held in trust for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms of this Plan and the Liquidating Trust Agreement.

DM_US 204987622-2.121080.0012

The transfer of each of the Liquidating Trust Assets to the Liquidating Trust shall be treated for U.S. federal income tax purpose as a transfer of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Liquidating Trust Assets to the Liquidating Trust.

The interests of the Liquidating Trust Beneficiaries in the Liquidating Trust are not negotiable and shall not be transferable except after written notice to the Liquidating Trustee and only: (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Liquidating Trust Beneficiary); or (b) by operation of law.

### 5.4    Establishment of Liquidating Trust Accounts and Reserves.

(a)    <u>Liquidating Trust Accounts</u>.  The Liquidating Trustee shall deposit and maintain any and all funds in one or more segregated accounts for Distribution solely in accordance with the Plan and Liquidating Trust Agreement.

(b)    <u>Disputed Confirmation Reserve</u>.  On the Effective Date, or as soon thereafter as is practicable, the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan other than the General Unsecured Claims.  Any Distribution that is not made on the first Distribution Date or on any other date specified in the Plan or the Liquidating Trust Agreement, because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trust in reserve in accordance with the Plan or the Liquidating Trust Agreement, as applicable, and distributed on the next Distribution Date that occurs after such Claim is Allowed.  Notwithstanding anything in the Plan to the contrary, the first Distribution and any subsequent Distributions shall be determined by the Liquidating Trustee in his/her/its sole discretion.  Subject to Article 9 of the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.  The reserve amount of any such Claim that is unliquidated or contingent, shall be the greater of (i) $1 and (ii) such other amount as is reserved by Order of the Bankruptcy Court made upon motion of the Holder of such Claim.

(c)    <u>Liquidating Trust Expense Fund</u>.  On the Effective Date, or as soon thereafter as is practicable, the Liquidating Trustee shall establish the Liquidating Trust Expense Fund from the Initial Liquidating Trust Funding Amount.  The Liquidating Trust Expense Fund shall be used to pay the Liquidating Trust Expenses in accordance with the Liquidating Trust Agreement, including, without limitation, costs and expenses of (i) Professionals retained by the Liquidating Trustee, (ii) any liquidation or administration of the Liquidating Trust Assets, and (iii) the prosecution of Causes of Action, including Avoidance Actions, and objections to Claims.

### 5.5    Powers and Duties of the Liquidating Trustee.

Upon the Effective Date of the Plan, the Liquidating Trustee shall be appointed under Bankruptcy Code section 1123(b)(3)(B) and shall serve in such capacity and shall have comparable authority as a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or

37

liquidate the Debtors and their Estates, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidating Trust Assets and the Distributions to Liquidating Trust Beneficiaries under this Plan.  The Liquidating Trustee shall be the exclusive successor to and representative of the Estates or any corresponding provision of federal or state laws and shall succeed to all of the Debtors' and Estates' rights.

The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets, the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee, and all Distributions to Liquidating Trust Beneficiaries contemplated or effectuated under this Plan.  In addition, the Liquidating Trustee shall maintain any of the Debtors' organization or corporate record books, minute books, and tax records until the dissolution of the Liquidating Trust, at which time such records may be disposed of in the Liquidating Trustee's discretion.

The powers, rights, and responsibilities of the Liquidating Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Liquidating Trust Agreement and shall include, but not be limited to:

(a)    collecting and liquidating the Liquidating Trust Assets under the jurisdiction of the Bankruptcy Court;

(b)    asserting, prosecuting, objecting to, pursuing, compromising, and settling in accordance with the Liquidating Trustee's reasonable business judgment, all matters affecting the Estates, including, without limitation, Disputed Claims and/or other Causes of Action related thereto, including in connection with any counterclaim or crossclaim asserted against the Liquidating Trust, to the extent set forth in the Liquidating Trust Agreement and except as provided therein, without further Order of the Bankruptcy Court;

(c)    selling, leasing, licensing, abandoning, or otherwise disposing of all Liquidating Trust Assets subject to the terms of this Plan;

(d)    asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtors or their Estates, including, without limitation, setoff, recoupment, and any rights under Bankruptcy Code section 502(d);

(e)    acting on behalf of the Debtors in all adversary proceedings, Claims reconciliation, and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving the Assets of the Debtors that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived, relinquished, or transferred in the Plan;

(f)    taking such actions the Liquidating Trustee deems appropriate in his or her reasonable business judgment against any Person with respect to a Claim or Cause of Action and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws, to the extent set forth in the Liquidating Trust Agreement;

38

(g)      making Distributions to Holders of all Allowed Claims in accordance with the Plan and Liquidating Trust Agreement;

(h)      making payments to Professionals on account of Allowed Professional Fee Claims;

(i)      proceeding with and employing all discovery devices permitted under applicable law, including Bankruptcy Rule 2004, in order to investigate any Claims or Causes of Action;

(j)      employing, without further Order of the Bankruptcy Court, Professionals or other Persons to assist it in carrying out its duties hereunder and under the Liquidating Trust Agreement, and compensating and reimbursing the expenses of those Professionals and other Persons on the terms to be agreed to by the Liquidating Trustee and such Professionals and other Persons without further Order of the Bankruptcy Court, to the extent set forth in the Liquidating Trust Agreement;

(k)      in the sole discretion of the Liquidating Trustee, maintaining the Debtors' prepetition bank accounts, including any lockbox accounts, as necessary;

(l)      investing Cash and other Liquidating Trust Assets in Permissible Investments, withdrawing and making Distributions of Cash to Holders of Allowed Claims, and paying taxes and other obligations owed by the Debtor or incurred by the Liquidating Trustee from the Liquidating Trust Expense Fund in accordance with the Plan;

(m)      coordinating the turnover of property, if any, subject to rejected executory contracts, abandonment, or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, all the remaining Assets;

(n)      overseeing compliance with the Debtors' accounting, finance, and reporting obligations and the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

(o)      preparing financial statements and U.S. Trustee post-confirmation quarterly reports until such time such time as: (1) the Bankruptcy Court enters an Order (i) dismissing the Chapter 11 Cases, (ii) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a Final Decree closing the Chapter 11 Cases; or (2) the Liquidating Trustee terminates the Liquidating Trust;

(p)      paying all other expenses for winding down the affairs of the Debtors, and in the event of a dispute that cannot be resolved, resolving such dispute in the Bankruptcy Court, subject to the terms of the Plan;

(q)      executing and delivering all documents, and taking all actions, necessary to consummate the Plan, implement the Liquidating Trust Agreement, and wind down the Debtors' business;

DM_US 204987622-2.121080.0012

(r)    participating in any post-Effective Date motions to amend or modify this Plan or the Liquidating Trust Agreement, or appeals from the Confirmation Order;

(s)    continuing any motions, defenses, or appeals initiated by the Committee prior to the Effective Date;

(t)    administering the closure of the Chapter 11 Cases in consultation with the GUC Liquidating Trustee unless the GUC Liquidating Trust has already been terminated;

(u)    implementing and enforcing all provisions of the Plan;

(v)    asserting and waiving, as the Liquidating Trustee deems appropriate, any attorney-client privilege or similar privilege belonging to the Debtors prior to the Effective Date of the Plan; and

(w)    such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Liquidating Trust Agreement, Plan, other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan and Liquidating Trust Agreement.

Subject to Article 5.11 of the Plan, the authority of the Liquidating Trustee shall commence as of the Effective Date and shall remain and continue in full force and effect until all of the Liquidating Trust Assets have been liquidated in accordance with this Plan, the funds in the Liquidating Trust have been completely distributed in accordance with this Plan, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and either (a) the Order closing the Chapter 11 Cases is a Final Order, or (b) the Liquidating Trust has been terminated by the Liquidating Trustee.

**5.6**    **Selection and Appointment of Liquidating Trustee**.

On the Effective Date of the Plan, the Liquidating Trustee shall be deemed the Estates' exclusive representative in accordance with Bankruptcy Code section 1123 and shall have all powers, authority, and responsibilities specified in the Plan and the Plan Documents, including, without limitation, the powers of a trustee under Bankruptcy Code sections 704 and 1106. The Liquidating Trustee is the successor in interest to the Debtors and the Committee and will act for the benefit of Holders of Liquidating Trust Interests in a fiduciary capacity. The powers, rights, and duties of the Liquidating Trustee shall arise on the Effective Date.

As set forth in Article 5.5 of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee may, without notice and further order of the Bankruptcy Court, employ various Persons on behalf of the Liquidating Trust, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him in fulfilling his obligations under the Liquidating Trust Agreement and this Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, contingency fee arrangements. For the avoidance of doubt, the Liquidating Trustee may retain professionals who represented parties in interest in the Chapter 11 Cases. No Professional engaged by the Liquidating Trustee shall be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursed of actual

40

out-of-pocket expenses incurred.  All such compensation and reimbursement shall be paid from the Liquidating Trust with Liquidating Trust Assets.

In addition to reimbursement for actual out-of-pocket expenses incurred by the Liquidating Trustee, the Liquidating Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidating Trust on terms to be set forth in the Liquidating Trust Agreement, without notice and further order of the Bankruptcy Court.  All such compensation and reimbursement shall be paid from the Liquidating Trust Assets.

### 5.7    <u>Indemnification of Liquidating Trustee</u>.

As set forth in the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee, Persons retained by the Liquidating Trust (collectively, the "<u>Liquidating Trust Indemnified Parties</u>" and each a "<u>Liquidating Trust Indemnified Party</u>") shall be indemnified by the Liquidating Trust to the fullest extent permitted by applicable law, from and against any and all Claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Liquidating Trust Indemnified Party's good faith exercise of what such Liquidating Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Liquidating Trust Indemnified Party reasonably understands to be its duties conferred by the Liquidating Trust Agreement, this Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, this Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, gross negligence, or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Liquidating Trust Assets, on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) this Plan; (b) the Liquidating Trust Agreement; (c) the services to be rendered pursuant to this Plan or Liquidating Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the relevant Liquidating Trust Indemnified Person; or (e) proceedings by or on behalf of any Creditor or Debtor.

The Liquidating Trust shall, on demand, advance or pay promptly out of the Liquidating Trust Assets, on behalf of each Liquidating Trust Indemnified Party, reasonable and documented attorneys' fees and other expenses and disbursements to which such Liquidating Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; *provided*, *however*, that any Liquidating Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Liquidating Trust Indemnified Party is not entitled to indemnification hereunder due to the actual fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such Liquidating Trust Indemnified Party.  In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the Liquidating Trustee, at the Liquidating Trust's expense, subject to the foregoing terms and conditions.

DM_US 204987622-2.121080.0012

**5.8**     **Issuance of Liquidating Trust Interests**.

    (a)     <u>Liquidating Trust Interests</u>. On the Effective Date or as soon as practicable thereafter, the Debtors shall deliver to the Liquidating Trustee the Claim Register. The Liquidating Trustee will determine whether any Claims are Disputed Claims. Holders of Allowed Claims that are not Disputed Claims will receive Liquidating Trust Interests.

    (b)     <u>Adjustment of Liquidating Trust Interests</u>. The Liquidating Trustee shall maintain a register of the Holders of Liquidating Trust Interests and shall adjust the register from time to time as necessary to account for Claims that are Disputed Claims becoming Allowed, without further Order of the Bankruptcy Court.

**5.9**     **Liquidating Trustee Reporting**.

Until such time that the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases, the Liquidating Trustee and GUC Liquidating Trustee, as applicable, shall prepare and file with the Bankruptcy Court and serve upon the U.S. Trustee, such reports as are required under Article 5.38 of the Plan, including quarterly reports, beginning with the first full calendar quarter after the Effective Date, regarding the liquidation or other administration of the Liquidating Trust Assets and GUC Liquidating Trust Assets, as applicable, Distributions made by the Liquidating Trustee and/or GUC Liquidating Trustee, as applicable, and the status of the prosecution or settlement of any Claims and Causes of Action. The Liquidating Trustee and GUC Liquidating Trustee, as applicable, shall pay the Statutory Fees incurred on account of disbursements from the Liquidating Trust Assets and/or GUC Liquidating Trust Assets on an aggregate basis as provided in Articles 2.5 and 5.38 of the Plan.

**5.10**     **Fees and Expenses of the Liquidating Trustee**.

Except as otherwise ordered by the Bankruptcy Court or specifically provided for in the Plan, the amount of Liquidating Trust Expenses and any compensation and expense reimbursement claims (including, without limitation, reasonable fees and expenses of counsel) of the Liquidating Trustee arising out of the liquidation of the Liquidating Trust Assets, the making of Distributions under the Plan, and the performance of any other duties given to it shall be paid from the Liquidating Trust Expense Fund and in accordance with the Liquidating Trust Agreement and from the proceeds of the Liquidating Trust Assets to the extent that such compensation and expense reimbursement claims exceed the amounts in the Liquidating Trust Expense Fund; *provided, however*, that any fees or expenses (including legal) incurred by the Liquidating Trustee in connection with collecting or recovering any Liquidating Trust Assets will be netted against the proceeds collected therefrom.

**5.11**     **Resignation, Removal, or Discharge of Liquidating Trustee**.

If the Liquidating Trustee resigns or is removed, dissolves, or is incapacitated, the terms of the Liquidating Trust Agreement shall govern regarding the designation of a successor Liquidating Trustee, and following such designation, the successor Liquidating Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the same compensation of the predecessor Liquidating Trustee. No successor

DM_US 204987622-2.121080.0012

Liquidating Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all assets of the Liquidating Trust have been liquidated and (ii) all Distributions required to be made by the Liquidating Trustee under this Plan have been made, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date; *provided*, *however*, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for a finite period if (i) such extension is necessary to the purpose of the Liquidating Trust, (ii) an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes, and (iii) such extension is obtained within the six (6) month period prior to the Liquidating Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Liquidating Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action, shall be distributed to the Liquidating Trust Beneficiaries in accordance with the Liquidating Trust Agreement. Upon the dissolution of the Liquidating Trust, all remaining Causes of Action shall be deemed void and abandoned and no Liquidating Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

**5.12** **Reliance on Documents**. The Liquidating Trustee may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity, including, without limitation, claims lists and data provided to the Liquidating Trustee by the Claims Agent, the Debtors, or the Debtors' financial advisor, upon which the Liquidating Trustee shall base Distributions.

**5.13** **Liquidating Trustee's Bond**.

The Liquidating Trust shall not be required to obtain or maintain a bond following Effective Date of the Plan.

**5.14** **Grantor Trust**.

It is intended that the Liquidating Trust qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701(d). In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as "grantor" trust (*i.e.*, a pass-through entity) and it is intended that the Holders of Allowed DIP Financing Claims, Allowed Bondholder Claims, Allowed General Unsecured Claims, and Allowed Batsu Claims shall be treated as the grantors of such trust. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth in the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a Chapter 11 plan. The Liquidating Trust will be structured with the intention of complying with such general criteria, and, pursuant to the Plan, in conformity with Revenue Procedure 94-45. The Liquidating Trustee is hereby appointed in such instance pursuant to Bankruptcy Code section 1123(b)(3)(B) to handle all of the Liquidating Trust's tax matters, including, without limitation, the filing of all tax returns, and the handling of tax audits and proceedings, of the Liquidating Trust. Notwithstanding the foregoing, the Liquidating Trustee

43

may make an election under Treasury Regulation Section 1.468B-9(c)(2)(ii) to treat the Liquidating Trust (or any portion thereof) as a disputed ownership fund. The Liquidating Trustee shall be responsible for filing information on behalf of the Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund.

For federal income tax purposes, (a) all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, (b) the transfer of assets of the Debtor to the Liquidating Trust under this Plan shall be treated as a deemed transfer to the Liquidating Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust, (c) the Liquidating Trust Beneficiaries shall be deemed to be the grantors and owners of the Liquidating Trust and its assets, and (d) the Liquidating Trust shall be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the Liquidating Trust Beneficiaries. The Liquidating Trust shall file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the Liquidating Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Liquidating Trust Beneficiaries shall report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties shall use consistent valuations of the assets transferred to the Liquidating Trust for all federal income tax purposes. The assets shall be valued based on the Liquidating Trustee's good faith determination of their fair market value.

The Liquidating Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (a) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Disputed Confirmation Reserve as a "disputed ownership fund" within the meaning of that section, (b) allocate taxable income or loss to the Disputed Confirmation Reserve, with respect to any given taxable year (but only for the portion of the taxable year with respect to which  such Claims are Disputed Claims), and (c) Distribute assets from the Disputed Confirmation Reserve as, when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved. The Liquidating Trust Beneficiaries shall be bound by such election, if made by the Liquidating Trustee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

For federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfers of Assets to the Liquidating Trust in accordance with the terms of this Plan as a sale by the Debtors and/or their Estates of such Assets to the Liquidating Trust at a selling price equal to the fair market value of such Assets on the date of transfer. The Liquidating Trust shall be treated as the owner of all Assets that it holds.

### 5.15   Plan Distributions.

After the Effective Date, and subject to the establishment and funding of the Liquidating Trust with the Initial Liquidating Trust Funding Amount and the Disputed Confirmation Reserve under Article 5.4 of the Plan and as set forth in greater detail in Article 4 of the Plan, Distributions

shall be made by the Liquidating Trustee in accordance with the terms of the Plan, including Article 2, Article 4, and Article 9 thereof.

### 5.16    General Disposition of Assets.

Pursuant to Bankruptcy Code section 1123(a)(5) and subject to the terms of the Plan, as soon as is reasonably practicable after the Effective Date, the Liquidating Trustee shall sell or otherwise dispose of and liquidate, or otherwise convert to Cash, any non-Cash Assets in such manner as the Liquidating Trustee shall determine in his judgment.

### 5.17    Formation of the GUC Liquidating Trust.

On the Effective Date, the GUC Liquidating Trust shall be formed, established, and become effective pursuant to the Plan and in accordance with the GUC Liquidating Trust Agreement, which shall be executed on the Effective Date, to receive the GUC Liquidating Trust Assets, to liquidate the GUC Liquidating Trust Assets and to enable the GUC Liquidating Trustee to distribute same to the GUC Liquidating Trust Beneficiaries in accordance with the terms of the Plan and the GUC Liquidating Trust Agreement. The GUC Liquidating Trust shall be established for the sole purpose of liquidating and distributing the GUC Liquidating Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. On the Effective Date, the Debtors shall transfer all the GUC Liquidating Trust Assets to the GUC Liquidating Trust free and clear of Liens, Claims, and Interests, including, without limitation, all rights of setoff and recoupment, subject only to the Allowed General Unsecured Claims of the Holders of GUC Liquidating Trust Interests as set forth in the Plan and the expenses of the GUC Liquidating Trust as set forth herein and in the GUC Liquidating Trust Agreement. On or before the Effective Date, the GUC Liquidating Trust Agreement shall be executed and, upon the Effective Date, shall become effective without further action by any party.

The GUC Liquidating Trust Interests shall not be certificated, unless otherwise provided in the GUC Liquidating Trust Agreement. The issuance of any beneficial interests of the GUC Liquidating Trust satisfies the requirements of Bankruptcy Code section 1145 and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

The terms of the GUC Liquidating Trust Agreement shall control as to all matters applicable to the GUC Liquidating Trust. To the extent there is any conflict between the GUC Liquidating Trust Agreement and the Plan, the Plan shall govern.

### 5.18    GUC Liquidating Trust Assets.

On the Effective Date the GUC Liquidating Trust Assets, as well as the rights, Privilege Rights, privileges (including but not limited to the attorney-client privilege), and powers of the Debtors and their Estates applicable to the GUC Liquidating Trust Assets, shall automatically vest in the Liquidating Trust, free and clear of all Claims, Liens and Encumbrances, including, without limitation, all rights of setoff and recoupment, for the benefit of the GUC Liquidating Trust Beneficiaries. For the avoidance of doubt, (a) in no event shall the term "GUC Liquidating Trust

45

Assets" be deemed to include any released Claims against any Released Parties and (b) the GUC Liquidating Trust shall not have the right to assert any released claims against any Released Parties. Upon the transfer of the GUC Liquidating Trust Assets to the GUC Liquidating Trust, the GUC Liquidating Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in such GUC Liquidating Trust Assets, and the Debtors shall have no further interest in or with respect to such GUC Liquidating Trust Assets.

The Confirmation Order shall constitute a determination that the transfers of GUC Liquidating Trust Assets to the GUC Liquidating Trust are legal and valid and consistent with the laws of the State of Texas.

All parties shall execute any documents or other instruments necessary to cause title to the GUC Liquidating Trust Assets to be transferred to the GUC Liquidating Trust.  The GUC Liquidating Trust Assets shall be held in trust for the benefit of all GUC Liquidating Trust Beneficiaries pursuant to the terms of this Plan and the GUC Liquidating Trust Agreement.

The transfer of each of the GUC Liquidating Trust Assets to the GUC Liquidating Trust shall be treated for U.S. federal income tax purpose as a transfer of the GUC Liquidating Trust Assets to the GUC Liquidating Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such GUC Liquidating Trust Assets to the GUC Liquidating Trust.

The interests of the GUC Liquidating Trust Beneficiaries in the GUC Liquidating Trust are not negotiable and shall not be transferable except after written notice to the GUC Liquidating Trustee and only: (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual GUC Liquidating Trust Beneficiary); or (b) by operation of law.

**5.19** **Establishment of GUC Liquidating Trust Accounts and Reserves**.

(a)    <u>GUC Liquidating Trust Accounts</u>.  The GUC Liquidating Trustee shall deposit and maintain any and all funds in one or more segregated accounts for Distribution solely in accordance with the Plan and GUC Liquidating Trust Agreement.

(b)    <u>GUC Liquidating Trust Disputed Claim Reserve</u>.  On the Effective Date, or as soon thereafter as is practicable, the GUC Liquidating Trustee shall make the Distributions required to be made on account of Allowed General Unsecured Claims under the Plan.  Any Distribution that is not made on the first Distribution Date or on any other date specified in the Plan or the GUC Liquidating Trust Agreement, because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the GUC Liquidating Trust in reserve in accordance with the Plan or the GUC Liquidating Trust Agreement, as applicable, and distributed on the next Distribution Date that occurs after such Claim is Allowed.  Notwithstanding anything in the Plan to the contrary, the first Distribution and any subsequent Distributions shall be determined by the GUC Liquidating Trustee in his/her/its sole discretion.  Subject to Article 9 of the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.  The reserve amount of any such Claim that is unliquidated or contingent, shall

46

be the greater of (i) $1 and (ii) such other amount as is reserved by Order of the Bankruptcy Court made upon motion of the Holder of such Claim.

(c)     <u>GUC Liquidating Trust Expenses</u>.  Any fees or expenses (including legal) incurred by the GUC Liquidating Trustee in connection with collecting or recovering any Liquidating Trust Assets will be paid from the GUC Liquidating Trust Assets.

**5.20    <u>Powers and Duties of the GUC Liquidating Trustee</u>.**

Upon the Effective Date of the Plan, the GUC Liquidating Trustee shall be appointed under Bankruptcy Code section 1123(b)(3)(B) and shall serve in such capacity and shall have comparable authority as a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the GUC Liquidating Trust Assets, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the GUC Liquidating Trust Assets and the Distributions to GUC Liquidating Trust Beneficiaries under this Plan.

The GUC Liquidating Trustee shall maintain good and sufficient books and records of account relating to the GUC Liquidating Trust Assets, the management thereof, all transactions undertaken by the GUC Liquidating Trustee, all expenses incurred by or on behalf of the GUC Liquidating Trustee, and all Distributions to GUC Liquidating Trust Beneficiaries contemplated or effectuated under this Plan.

The powers, rights, and responsibilities of the GUC Liquidating Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the GUC Liquidating Trust Agreement and shall include, but not be limited to:

(a)     having the power and authority to Distribute the GUC Liquidating Trust Assets for the benefit of Holders of GUC Liquidating Trust Interests holding Allowed General Unsecured Claims in accordance with the Plan and GUC Liquidating Trust Agreement;

(b)     asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtors or their Estates as it relates to the GUC Liquidating Trust Assets, including, without limitation, setoff, recoupment, and any rights under Bankruptcy Code section 502(d);

(c)     taking such actions the GUC Liquidating Trustee deems appropriate in his or her reasonable business judgment against any Person with respect to the GUC Liquidating Trust Assets and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws, to the extent set forth in the GUC Liquidating Trust Agreement;

(d)     employing, without further Order of the Bankruptcy Court, Professionals or other Persons to assist it in carrying out its duties hereunder and under the GUC Liquidating Trust Agreement, and compensating and reimbursing the expenses of those Professionals and other Persons on the terms to be agreed to by the GUC Liquidating Trustee and such

47

Professionals and other Persons without further Order of the Bankruptcy Court, to the extent set forth in the GUC Liquidating Trust Agreement;

(e)     investing Cash and other GUC Liquidating Trust Assets in Permissible Investments, withdrawing and making Distributions of Cash to Holders of Allowed Claims, and paying taxes and other obligations owed by the Debtors or incurred by the GUC Liquidating Trustee from the GUC Liquidating Trust Assets in accordance with the Plan;

(f)     preparing financial statements and U.S. Trustee post-confirmation quarterly reports until such time such time as (1) the Bankruptcy Court enters an Order: (i) dismissing the Chapter 11 Cases, (ii) converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a Final Decree closing the Chapter 11 Cases; or (2) the GUC Liquidating Trustee terminates the GUC Liquidating Trust;

(g)     executing and delivering all documents, and taking all actions, necessary to Consummate the Plan and implement the GUC Liquidating Trust Agreement;

(h)     implementing and enforcing all provisions of the Plan as it relates to the GUC Liquidating Trust Assets;

(i)     asserting and waiving, as the GUC Liquidating Trustee deems appropriate, any attorney-client privilege or similar privilege belonging to the Debtors prior to the Effective Date of the Plan, but solely as it relates to GUC Liquidating Trust Assets; and

(j)     such other powers as may be vested in or assumed by the GUC Liquidating Trustee pursuant to the GUC Liquidating Trust Agreement, Plan, other Order of the Bankruptcy Court, or as may be needed or appropriate to carry out the provisions of the Plan and GUC Liquidating Trust Agreement.

Subject to Article 5.26 of the Plan, the authority of the Liquidating Trustee shall commence as of the Effective Date and shall remain and continue in full force and effect until all of the GUC Liquidating Trust Assets have been liquidated in accordance with this Plan, the funds in the GUC Liquidating Trust have been completely distributed in accordance with this Plan, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and either (a) the Order closing the Chapter 11 Cases is a Final Order, or (b) the GUC Liquidating Trust has been terminated by the GUC Liquidating Trustee.

### 5.21    <u>Selection and Appointment of GUC Liquidating Trustee</u>.

The GUC Liquidating Trustee will act for the benefit of Holders of GUC Liquidating Trust Interests in a fiduciary capacity and shall have comparable authority as a bankruptcy trustee of the Debtors, as the exclusive representative of the Estates under section 1123(a)(5)(B) of the Bankruptcy Code or any corresponding federal or state laws with respect to the GUC Liquidating Trust Assets and shall succeed to all of the Debtors' and the Estates' rights with respect thereto, subject to the provisions of the Plan and the GUC Liquidating Trust Agreement.  The powers, rights, and duties of the GUC Liquidating Trustee shall arise on the Effective Date.

48

As set forth in Article 5.20 of this Plan and the GUC Liquidating Trust Agreement, the GUC Liquidating Trustee may, without notice and further order of the Bankruptcy Court, employ various Persons on behalf of the GUC Liquidating Trust, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him/her in fulfilling his obligations under the GUC Liquidating Trust Agreement and this Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, contingency fee arrangements. For the avoidance of doubt, the GUC Liquidating Trustee may retain professionals who represented parties in interest in the Chapter 11 Cases. No Professional engaged by the GUC Liquidating Trustee shall be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursed of actual out-of-pocket expenses incurred. All such compensation and reimbursement shall be paid from the GUC Liquidating Trust with GUC Liquidating Trust Assets.

In addition to reimbursement for actual out-of-pocket expenses incurred by the GUC Liquidating Trustee, the GUC Liquidating Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the GUC Liquidating Trust on terms to be set forth in the GUC Liquidating Trust Agreement, without notice and further order of the Bankruptcy Court. All such compensation and reimbursement shall be paid from the GUC Liquidating Trust Assets.

### 5.22    Indemnification of GUC Liquidating Trustee.

As set forth in the GUC Liquidating Trust Agreement, from and after the Effective Date, the GUC Liquidating Trustee, Persons retained by the GUC Liquidating Trust (collectively, the "GUC Liquidating Trust Indemnified Parties" and each a "GUC Liquidating Trust Indemnified Party") shall be indemnified by the GUC Liquidating Trust to the fullest extent permitted by applicable law, from and against any and all Claims, debts, dues, accounts, actions, suits, Causes of Action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such GUC Liquidating Trust Indemnified Party's good faith exercise of what such GUC Liquidating Trust Indemnified Party reasonably understands to be its powers or the discharge of what such GUC Liquidating Trust Indemnified Party reasonably understands to be its duties conferred by the GUC Liquidating Trust Agreement, this Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, this Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own actual fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the GUC Liquidating Trust Assets, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) this Plan; (b) the GUC Liquidating Trust Agreement; (c) the services to be rendered pursuant to this Plan or GUC Liquidating Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the relevant GUC Liquidating Trust Indemnified Person; or (e) proceedings by or on behalf of any Creditor or Debtor.

The GUC Liquidating Trust shall, on demand, advance or pay promptly out of the GUC Liquidating Trust Assets, on behalf of each GUC Liquidating Trust Indemnified Party, reasonable

DM_US 204987622-2.121080.0012

and documented attorneys' fees and other expenses and disbursements to which such GUC Liquidating Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; *provided*, *however*, that any GUC Liquidating Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such GUC Liquidating Trust Indemnified Party is not entitled to indemnification hereunder due to the actual fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such GUC Liquidating Trust Indemnified Party. In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the GUC Liquidating Trustee, at the GUC Liquidating Trust's expense, subject to the foregoing terms and conditions.

### 5.23    Issuance of GUC Liquidating Trust Interests.

(a)    GUC Liquidating Trust Interests. On the Effective Date or as soon as practicable thereafter, the Debtors shall deliver to the GUC Liquidating Trustee the Claim Register. The GUC Liquidating Trustee will determine whether any General Unsecured Claims are Disputed Claims. Holders of Allowed General Unsecured Claims that are not Disputed Claims will receive GUC Liquidating Trust Interests.

(b)    Adjustment of GUC Liquidating Trust Interests. The GUC Liquidating Trustee shall maintain a register of the Holders of GUC Liquidating Trust Interests and shall adjust the register from time to time as General Unsecured Claims that are Disputed Claims become Allowed, without further Order of the Bankruptcy Court.

### 5.24    GUC Liquidating Trustee Reporting.

Until such time that the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases, the GUC Liquidating Trustee shall prepare and file with the Bankruptcy Court and serve upon the U.S. Trustee, such reports as are required under Article 5.38 of the Plan, including quarterly reports, beginning with the first full calendar quarter after the Effective Date, regarding the liquidation or other administration of the GUC Liquidating Trust Assets, disbursements made by the GUC Liquidating Trustee, and the status of the reconciliation of the General Unsecured Claims. The GUC Liquidating Trustee shall pay the Statutory Fees incurred on account of disbursements from the GUC Liquidating Trust Assets as provided in Articles 2.5 and 5.38 of the Plan.

### 5.25    Fees and Expenses of the GUC Liquidating Trustee.

Except as otherwise ordered by the Bankruptcy Court or specifically provided for in the Plan, the amount of GUC Liquidating Trust Expenses and any compensation and expense reimbursement Claims (including, without limitation, reasonable fees and expenses of counsel) of the GUC Liquidating Trustee arising out of the administration of the GUC Liquidating Trust Assets, the making of Distributions under the Plan, and the performance of any other duties given to it shall be paid from the proceeds of the GUC Liquidating Trust Assets and in accordance with the Liquidating Trust Agreement.

DM_US 204987622-2.121080.0012

**5.26**    <u>Resignation, Removal, or Discharge of GUC Liquidating Trustee</u>.

If the GUC Liquidating Trustee resigns or is removed, dissolves, or is incapacitated, the terms of the GUC Liquidating Trust Agreement shall govern regarding the designation of a successor GUC Liquidating Trustee, and following such designation, the successor GUC Liquidating Trustee, without further act, shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor, with the same compensation of the predecessor GUC Liquidating Trustee.  No successor GUC Liquidating Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

The GUC Liquidating Trustee and the GUC Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as all Distributions required to be made by the GUC Liquidating Trustee under this Plan have been made, but in no event shall the GUC Liquidating Trust be dissolved later than five (5) years from the Effective Date; *provided*, *however*, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the GUC Liquidating Trust for a finite period if (a) such extension is necessary to the purpose of the GUC Liquidating Trust, (b) an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the GUC Liquidating Trust as a liquidating trust for federal income tax purposes, and (c) such extension is obtained within the six (6) month period prior to the GUC Liquidating Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable.  Upon dissolution of the GUC Liquidating Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action, shall be distributed to the GUC Liquidating Trust Beneficiaries in accordance with the GUC Liquidating Trust Agreement.  Upon the dissolution of the GUC Liquidating Trust, all remaining Causes of Action shall be deemed void and abandoned and no GUC Liquidating Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

**5.27**    <u>Reliance on Documents</u>.  The GUC Liquidating Trustee may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper entity, including, without limitation, claims lists and data provided to the GUC Liquidating Trustee by the Claims Agent, the Debtors, or the Debtors' financial advisor, upon which the GUC Liquidating Trustee shall base Distributions.

**5.28**    <u>GUC Liquidating Trustee's Bond</u>.

The GUC Liquidating Trust shall not be required to obtain or maintain a bond following the Effective Date of the Plan.

**5.29**    <u>Grantor Trust</u>.

It is intended that the GUC Liquidating Trust qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701(d).  In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as "grantor" trust (*i.e.*, a pass-through entity) and it is intended that the Holders of Allowed General Unsecured Claims shall be treated as the grantors of such trust.  The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth in the general criteria for obtaining an IRS ruling as to the grantor trust status

51

of a liquidating trust under a Chapter 11 plan.  The GUC Liquidating Trust will be structured with the intention of complying with such general criteria, and, pursuant to the Plan, in conformity with Revenue Procedure 94-45.  The GUC Liquidating Trustee is hereby appointed in such instance pursuant to Bankruptcy Code section 1123(b)(3)(B) to handle all of the GUC Liquidating Trust's tax matters, including, without limitation, the filing of all tax returns, and the handling of tax audits and proceedings, of the GUC Liquidating Trust.  Notwithstanding the foregoing, the GUC Liquidating Trustee may make an election under Treasury Regulation Section 1.468B-9(c)(2)(ii) to treat the GUC Liquidating Trust (or any portion thereof) as a disputed ownership fund.  The GUC Liquidating Trustee shall be responsible for filing information on behalf of the GUC Liquidating Trust as grantor trust pursuant to Treasury Regulation Section 1.671-4(a) or as a disputed ownership fund.

For federal income tax purposes, (i) all parties (including, without limitation, the Debtors, the GUC Liquidating Trustee, and the GUC Liquidating Trust Beneficiaries) shall treat the GUC Liquidating Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, (ii) the transfer of assets of the Debtor to the GUC Liquidating Trust under this Plan shall be treated as a deemed transfer to the GUC Liquidating Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the assets by the GUC Liquidating Trust Beneficiaries to the GUC Liquidating Trust, (iii) the GUC Liquidating Trust Beneficiaries shall be deemed to be the grantors and owners of the GUC Liquidating Trust and its assets, and (iv) the GUC Liquidating Trust shall be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the GUC Liquidating Trust Beneficiaries.  The GUC Liquidating Trust shall file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the GUC Liquidating Trust's tax items of income, gain, loss deductions and credits ("GUC Tax Items").  The GUC Liquidating Trust Beneficiaries shall report such GUC Tax Items on their federal income tax returns and pay any resulting federal income tax liability.  All parties shall use consistent valuations of the assets transferred to the GUC Liquidating Trust for all federal income tax purposes.  The assets shall be valued based on the GUC Liquidating Trustee's good faith determination of their fair market value.

For federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the GUC Liquidating Trustee, and the GUC Liquidating Trust Beneficiaries) shall treat the transfers of assets to the Liquidating Trust in accordance with the terms of this Plan as a sale by the Debtors and/or their Estates of such assets to the Liquidating Trust at a selling price equal to the fair market value of such assets on the date of transfer.  The GUC Liquidating Trust shall be treated as the owner of all GUC Liquidating Trust Assets that it holds.

### 5.30    Plan Distributions.

After the Effective Date, and subject to the establishment and funding of the GUC Liquidating Trust as set forth in greater detail in Article 5.17 and 5.18 of the Plan, Distributions shall be made by the GUC Liquidating Trustee in accordance with the terms of the Plan, including Article 4, and Article 9 thereof.

**5.31    Corporate Action**.

The entry of the Confirmation Order shall constitute authorization for the Debtors, the Liquidating Trustee, and the GUC Liquidating Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, this Plan and the Plan Documents prior to, on or after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule or regulation, including without limitation, (a) the incurrence of all obligations contemplated by this Plan and the making of Plan Distributions, (b) the implementation of all settlements and compromises as set forth in or contemplated by this Plan and (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or describable to effectuate the transactions contemplated by the Plan Documents). As of the Effective Date of the Plan, all actions taken by the Liquidating Trustee and GUC Liquidating Trustee, as applicable, to Consummate and otherwise administer the provisions of the Plan shall be deemed to have been taken in the name of the Debtors shall be taken through the Liquidating Trustee or GUC Liquidating Trustee, as applicable, in accordance with the provisions of the Plan and the Liquidating Trust Agreement or GUC Liquidating Trustee, as applicable.

**5.32    Liquidation and Dissolution of Debtors**.

On the Effective Date, without the necessity for any other or further action to be taken by or on behalf of the Debtors, and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust and the transfer of the GUC Liquidating Trust Assets to the GUC Liquidating Trust in accordance with Article 5 of the Plan, the Directors and the Officers of the Debtors shall be deemed to have been removed and the Debtors shall be deemed dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets or GUC Liquidating Trust Assets after consultation with the GUC Liquidating Trustee; *provided, however*, that neither the Debtors nor any Released Party shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors. For the avoidance of doubt, pursuant to section 1142(b) of the Bankruptcy Code, after the Effective Date the Directors and Officers of the Debtors shall be authorized to file the Debtors' tax returns and take any other actions related to or required for the dissolution of the Debtors and shall provide reasonable cooperation and assistance as may be requested by the Liquidating Trustee.

**5.33    Closing of the Chapter 11 Cases**.

After the Estates have been fully administered, the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases pursuant to Bankruptcy Code section 350(a) and Bankruptcy Rule 3022. For the avoidance of doubt, upon the occurrence of the Effective Date, or thereafter, the Liquidating Trustee shall be permitted to close any or all of the Chapter 11 Cases of the Debtors. All contested matters, claims objections, adversary proceedings, motions existing prior to the Effective Date, and any such contested matters, claims objections, and motions relating to each of the Debtors, including (a) objections to Claims, may be administered in the discretion of the Liquidating Trustee, and heard in the Chapter 11 Case of Sunland Medical Foundation (Case No. 23-80000),

53

irrespective of whether such Claim(s) were filed against a Debtor whose Chapter 11 Case was closed, and (b) for administrative purposes only.

### 5.34    Preservation and Abandonment of Records.

The Debtors shall preserve for the benefit of the Liquidating Trustee and GUC Liquidating Trustee the Debtors' books and records and transfer the same to the Liquidating Trustee and a copy of the same to the GUC Liquidating Trustee as is relevant to the GUC Liquidating Trust on the Effective Date. After the Effective Date, the Liquidating Trustee shall preserve or abandon (with or without destruction) the Debtors' books and records as deemed appropriate by the Liquidating Trustee in the exercise of the Liquidating Trustee's reasonable business judgment and without further Order of the Bankruptcy Court. After the Effective Date, the GUC Liquidating Trustee shall preserve or abandon (with or without destruction) the copy of the Debtors' books and records as deemed appropriate by the GUC Liquidating Trustee in the exercise of the GUC Liquidating Trustee's reasonable business judgment and without further Order of the Bankruptcy Court.

### 5.35    Administrative Expense Claim Bar Date.

Requests for payment of Administrative Expense Claims (other than Professional Fee Claims) shall be filed on or before the Administrative Expense Claim Bar Date, which is the date that is on or before thirty (30) days after the Effective Date

No payment or Distributions will be made on account of any Administrative Expense Claim until such Claim becomes an Allowed Claim. Any Person asserting an Administrative Expense Claim subject to the Administrative Expense Claim Bar Date or Supplemental Expense Claim Bar Date, as applicable, that fails to file and serve an application or motion seeking approval of the Administrative Expense Claim on or before the Administrative Expense Claim Bar Date or Supplemental Expense Claim Bar Date, as applicable, shall be forever barred from asserting any such right to payment as against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Assets, the GUC Liquidating Trustee, or the GUC Liquidating Trust Assets.

### 5.36    Execution of Documents to Effectuate Plan.

From and after the Effective Date, the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, shall have the exclusive power and authority to execute any instrument or document to effectuate the provisions of the Plan. Entry of the Confirmation Order shall authorize the Debtors, the Liquidating Trustee, and the GUC Liquidating Trustee to take, or cause to be taken, all actions necessary or appropriate to consummate and implement the provisions of the Plan.

### 5.37    Disallowance of Claims Without Further Order of the Bankruptcy Court.

As of the Effective Date, any Scheduled Claim designated as Disputed, contingent, or unliquidated in amount and for which a proof of Claim has not been filed by the Creditor by the applicable Bar Date shall be deemed Disallowed and expunged without further Order of the Bankruptcy Court. All Scheduled Claims that correspond to a proof of Claim filed by a particular

54

Creditor by the applicable Bar Date shall be deemed to have been superseded by such later filed proof of Claim without further Order of the Bankruptcy Court, and the Scheduled Claim, regardless of priority, shall be expunged from the Claims register; *provided, however*, that such proofs of Claim shall be subject to objection in accordance with Article 9.10 of the Plan.

### 5.38    Post-Effective Date Reports and Statutory Fees.

Following the Effective Date and until the Chapter 11 Cases are closed, not less than quarterly, the Liquidating Trustee and/or the GUC Liquidating Trustee shall be responsible for the filing of all post-Effective Date reports required during such periods with the U.S. Trustee regarding the liquidation or other administration of property under each respective trustee's control pursuant to the Plan, distributions made by each respective trustee, as applicable, and other matters required to be included in such report. Statutory Fees will be assessed from disbursements from the Liquidating Trustee and the GUC Liquidating Trustee in the aggregate. The Liquidating Trust and GUC Liquidating Trust shall each be responsible for Statutory Fees on disbursements from their respective trusts and, if there have been no disbursements for a quarter, for one-half (1/2) of the Statutory Fee for such a quarter where there have been no disbursements. For the avoidance of doubt, if one of the trusts has been terminated, the remaining trust shall be solely responsible for payment of a quarterly minimum Statutory Fee. The Liquidating Trustee may close Case No. 23-80001 and administer any and all matters in Case No. 23-80000 as set forth in Article 5.33 of the Plan.

### 5.39    Cancellation of Notes, Instruments, Certificates, and Other Documents.

Except as otherwise provided in the Plan, on the Effective Date: (a) the 2020 Bonds and 2020 Trust Indenture, and any other credit agreement, collateral agreement, indenture, certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors or giving rise to any Claim or Interest (except such agreements, certificates, notes, or other instruments or documents evidencing any indebtedness or obligation of, or ownership interest in, the Debtors that are entered into or issued pursuant to the Plan) shall be deemed cancelled, released, surrendered, extinguished and discharged and of no force or effect, without any need for further action or approval of the Bankruptcy Court, the Debtors, any Holder of any Claim or Interest, or any other Person or Entity, and no party (including the Debtors, Liquidating Trustee, or GUC Liquidating Trust) shall have any continuing obligations or duties thereunder or in any way related thereto, which shall be deemed satisfied in full, canceled, released, discharged, and of no further force or effect; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors (except such agreements, certificates, notes, or other instruments or documents evidencing any indebtedness or obligation of, or ownership interest in, the Debtors that are specifically entered into or issued pursuant to the Plan) shall be deemed satisfied in full, released, and discharged, without any need for further action or approval of the Bankruptcy Court, the Debtors, any Holder of any Claim or Interest or any other Person or Entity.

55

Notwithstanding such cancellation and discharge, the 2020 Trust Indenture and 2020 Bonds shall continue in effect solely to the extent necessary (a) to allow the Holders of Claims to receive Distributions under the Plan; (b) to allow the Debtors, the Liquidating Trustee, the DIP Lenders, and the Bond Trustee to make or receive Distributions under and in accordance with the terms of the Plan and to take other actions pursuant to the terms of the Plan on account of Claims; (c) to allow the Bond Trustee to exercise its rights, claims, causes of action, and interests under the 2020 Bonds, respectively, against any Holder of 2020 Bonds, respectively, to the extent consistent with the Plan, including to exercise charging liens; (d) to allow the Bond Trustee to enforce any obligations owed to it under the Plan; (e) to permit the Bond Trustee to set one or more record dates and distribution dates with respect to the distribution of funds to beneficial holders of the Bonds; (f) to permit the Bond Trustee to appear in the cases with respect to matters relevant to the Bonds; (g) to otherwise continue to govern relationships of the Bond Trustee and holders of the Bonds; (h) to take any other actions expressly contemplated by the Plan; (i) to permit the Bond Trustee to perform any functions that are necessary in connection with the foregoing clauses (a) through (h); and (j) to allow the Bond Trustee to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to such documents in furtherance of the foregoing; *provided* that nothing in this Article 5.39 of the Plan shall affect the discharge of Claims pursuant to the Plan or the effectiveness of the Third-Party Release.

Except for the foregoing, upon Consummation of the Plan, the Bond Trustee shall be relieved of all further duties and responsibilities related to the foregoing documents; *provided* that any provisions of such documents that by their terms survive their termination shall survive in accordance with their terms.

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim shall deliver to the Debtors or Liquidating Trustee, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, lis pendens, or similar interests or documents and take all other steps reasonably requested by the Debtors, or the Liquidating Trustee that are necessary to cancel or extinguish Liens securing such Holder's Other Secured Claim.

### 5.40   <u>Insurance Preservation</u>.

Nothing in the Plan, the Confirmation Order, the Liquidating Trust Agreement, or the GUC Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.  All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies.

56

**5.41    Claims Paid by Third Parties**.

Subject to the terms of Article 5.42 of the Plan below regarding Insured Claims, Claims paid and/or payable by third parties, irrespective of classification, shall be treated as follows:

(a)    <u>Claims Paid by Third Parties</u>.  A Claim shall be reduced in full, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not one of the Debtors.  To the extent a Holder of a Claim receives a Distribution under the Plan on account of such Claim and receives payment from a party that is not one of the Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim.

(b)    <u>Claims Payable by Third Parties</u>.  No Distribution under the Plan shall be made on account of an Allowed Claim that is payable by a party that is not one of the Debtors, including pursuant to any insurance policy under which the Debtors are covered parties or beneficiaries (including the Insurance Policies), until the Holder of such Allowed Claim has exhausted all remedies with respect to such third party or insurance policy.  To the extent that one or more of the Debtors' insurers or another third party agrees to satisfy in full or in part an Allowed Claim, then immediately upon such agreement, the applicable portion of such Claim may be Disallowed and expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**5.42    Special Issues Regarding Insured Claims**.

Under the terms of the Debtors' various insurance policies, the Debtors may owe deductible amounts on account of insured Claims, including, without limitation, for personal injury and medical malpractice.  After the Effective Date of the Plan (unless an order modifying the automatic stay has been entered at an earlier date), Holders of Insured Claims shall be enjoined by the injunction established by the Confirmation Order from commencing or continuing any enforcement action to collect such Claims against the Estates.

Consistent with the foregoing, Distributions under the Plan to each Holder of an Allowed Claim that is payable from an Insurance Policy shall be recoverable only from the available Insurance Policy and Debtors shall be discharged to the extent of any such excess.  Further, the Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under its policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors (other than for non-payment of a deductible), the existence, primacy and/or scope of available coverage under any alleged applicable policy.  The Plan shall not operate as a waiver of any other Claims that the Debtors' insurers have asserted or may assert in any Proof of Claim or the Debtors' rights and defenses to such proofs of Claim.

57

**5.43**    **Preservation of Causes of Action**.

Except as provided in the Plan, all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors held on behalf of the Estates or of the Debtors in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law against any Person and have not been released or sold on or prior to the Effective Date are preserved for the Liquidating Trust and GUC Liquidating Trust, as applicable.  On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trust shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses against any Person and with respect to any rights of the Debtors or the Estates that arose before or after the Petition Date.  The Liquidating Trust  and GUC Liquidating Trust, as applicable, retains, reserves, and shall be entitled to assert and pursue all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights (and all Privilege Rights with respect thereto) of the Debtors and the Estates not expressly released under the Plan that may be asserted after the Effective Date.  The Debtors, the Liquidating Trustee, and the GUC Liquidating Trustee, as applicable, may abandon, settle, or release any or all such claims, rights or Causes of Action, including actions specifically enumerated in the Schedule of Retained Causes of Action, as it deems appropriate without further order of the Bankruptcy Court.  In pursuing any claim, right, or Cause of Action, the Liquidating Trustee, as the representative of the Estates, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code.  Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. Notwithstanding the foregoing, the Debtors shall not retain any Claims or Causes of Action released pursuant to Article 8 of the Plan against the Released Parties except that such Claims or Causes of Action may be asserted as a defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code.  The Liquidating Trustee may pursue such Retained Causes of Action, as appropriate, in its discretion.

**No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors, Liquidating Trustee, or GUC Liquidating Trustee, as applicable, will not pursue any and all available Retained Causes of Action against them**. Unless any Cause of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

**5.44**    **Section 1146 Exemption from Certain Taxes and Fees**.

Pursuant to and to the extent set forth in Bankruptcy Code section 1146(a), any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan shall not be subject to any Stamp or Similar

58

Tax or governmental assessment in the United States or by any other Governmental Unit, and the relevant federal, state or local (domestic or foreign) governmental officials or agents shall forgo the collection of any such Stamp or Similar Tax or governmental assessment and accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to all actions, agreements and documents necessary to evidence and implement the provisions of transactions contemplated by and the Distributions to be made under the Plan.

### 5.45    **Settlement Pursuant to Bankruptcy Rule 9019**.

Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, the Plan incorporates a compromise and settlement of various potential Claims and Causes of Action. The settlement of those potential Claims and Causes of Action is a cornerstone of the Plan and necessary to achieve a beneficial and efficient resolution of the Chapter 11 Cases for all parties-in-interest. The Plan shall be deemed to constitute a motion pursuant to Bankruptcy Rule 9019, seeking approval of a settlement, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such motion, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements encompassed in the Plan are within the range of reasonableness, in the best interests of the Debtors, their Estates, Creditors, and other parties-in-interest, and fair and equitable. The terms of the Plan Settlements are described below:

(a)    AMI Settlement.

Pursuant to the Loan and Security Agreement dated as of July 26, 2022, (as amended or supplemented from time to time, the "AMI Loan Agreement") by and between AMI and Sunland Medical, AMI extended a revolving line of credit facility (the "AMI Credit Facility"). Pursuant to the AMI Credit Facility, Sunland Medical received advances as established under the AMI Loan Agreement. Pursuant to that certain Amendment to Loan and Security Agreement and Loan Documents dated September 19, 2022, (the "2022 AMI Amendment") AMI agreed to make loans to Sunland Medical in an aggregate principal amount of up to $5,000,000 with Sunland Medical able to borrow a maximum aggregate principal balance of up to $7,000,000 on the condition that the borrowing base and other conditions precedent were satisfied at the time of any advance in excess of $5,000,000. Pursuant to that certain Second Amendment to Loan and Security Agreement and Loan Documents dated August 15, 2023, (the "2023 AMI Amendment") and Second Amended and Restated Promissory Note dated August 15, 2023, (the "2023 AMI Note"), AMI agreed to, among other things, Sunland Medical providing a wire transfer of seventy-five percent (75%) of the prior calendar week's eligible accounts receivable to AMI, with Sunland Medical transferring the remaining twenty-five percent (25%) to its operating accounts. As of the Petition Date, the aggregate principal amount outstanding under the AMI Loan Agreement was approximately $5,000,000, plus accrued interest and other fees due and owing under the AMI Loan Agreement (the "AMI Obligations"). Through the DIP Orders, the Debtors agreed to continue escrowing seventy-five percent (75%) of pre-petition accounts receivable and to provide post-petition liens on accounts receivable as more fully set forth in the Final DIP Order. AMI asserts that the AMI Loan Agreement is secured by, among other things, all of Sunland Medical's accounts receivable and related assets (the "AMI Prepetition Collateral"), all as more fully set forth

59

in the AMI Loan Agreement. AMI is also party to the AMI Intercreditor Agreement. Pursuant to the AMI Intercreditor Agreement, the Bond Trustee and Issuer subordinated their liens, security interests, and other right, title and interest in and to certain collateral, as described in the AMI Intercreditor Agreement, to the rights of AMI. Moreover, pursuant to the DIP Orders, the DIP Lenders agreed to subject the DIP Facility to the AMI Intercreditor Agreement.

The Debtors and Committee assert that the AMI Second Amendment was entered into during the ninety days preceding the Petition Date and may be avoidable as a preference and the Committee has informally raised various disputes and potential claims against AMI related parties (collectively, the "AMI Disputes"). After good-faith, arms-length negotiations, to avoid the expense, inconvenience, delay, and uncertainty of prosecuting the AMI Disputes and to avoid protracted (and continued) litigation and the concomitant costs and erosion of net recovery to Holders of Claims, the Debtors (after consultation with and agreement of the Committee) propose a resolution between the Debtor, DIP Lenders, Committee, AMI, and the Bond Trustee (the "AMI Settlement") pursuant to the following terms:

- **Collections**: All Accounts Receivable that have not been collected by the Plan Effective Date will be collected by a party agreed to by AMI and the Debtors or the Liquidating Trustee, as applicable.

- **Division of Post-Petition Collections Received by the Effective Date**: AMI and the Liquidating Trust will each receive fifty percent (50%) of all post-petition collections received by the Effective Date, including collections from all federal (including capital pass-through payments), commercial payor, and self-pay accounts, net of any ERS Settlement Payments, setoffs, recoupments, or administrative-expenses asserted by a governmental entity for overpayments or otherwise related to the Accounts Receivable collections.

- **Self-Pay Accounts Receivable**: Post-Effective Date collections on Self-Pay Accounts identified as of the Effective Date on an exhibit that will be included in a Plan Supplement, net of all direct collection costs associated with self-pay collection efforts, will be 100% paid to AMI. AMI approval will be required for direct expenditures related to collection of Self-Pay Accounts.

- **Federal Accounts Receivable**: AMI and the Liquidating Trust will each receive 50% of collections, net of all direct collection costs associated with collection efforts, on Governmental Payor Accounts Receivable including all Medicare, Medicaid, and Veterans Administration accounts. For the avoidance of doubt, this includes capital pass-through payments received by the Debtors. Further, for the avoidance of doubt, any ERS Settlement Payments, setoffs, recoupments, or administrative expenses asserted by a governmental entity for overpayments or otherwise related to Accounts Receivable collections will be considered direct collection costs.

- **Commercial Accounts**: AMI and the Liquidating Trust will each receive 50% of collections, net of all direct collection costs associated with collection efforts on Commercial Payor Accounts.

DM_US 204987622-2.121080.0012

- **Liquidating Trust Expenses**: AMI and the Debtors understand that the Liquidating Trust will have certain administrative expenses, including, but not limited to, Liquidating Trust overhead costs such as preparing and filing annual tax filings and preparing and filing Medicare reports. AMI will fund 50% of the Liquidating Trust's budgeted commercial and federal collection expenses during the life of the collection efforts and AMI will fund 100% of the Liquidating Trusts budgeted self-pay collection expenses during the life of the collection efforts with such amounts netted from proceeds that otherwise would be distributed to AMI. Once collection efforts cease, the obligation for AMI to fund ongoing Liquidating Trust expenses will cease. Collection expenses to be charged AMI will not include general overhead for the Liquidating Trust.

- **Allowed Claim**: The AMI Secured Claims will be allowed in the amount of $4,935,311.38 plus attorneys' fees.

- **Deficiency Claim**. AMI will be granted a Deficiency Claim that is estimated to be around $2,500,000 (the "AMI Deficiency Claim"). AMI will provide notice of its total Deficiency Claim with supporting documentation of such Deficiency Claim to the DIP Lenders and Bond Trustee for a reasonable opportunity to review and object to such Deficiency Claim upon request and prior to any Distribution to be made on account of the AMI Deficiency Claim.

- **AMI Bankruptcy Legal Fees**. Reasonable attorney's fees of AMI on account of bankruptcy services will be entitled to treatment as an Administrative Claim up to the total amount of $60,000. Legal counsel to AMI will be required to provide the Liquidating Trustee documentation allowing the Liquidating Trustee to determine that such services were reasonable.

- **DIP Lenders Settlement Distributions**. AMI will receive Distributions pursuant to the DIP Lenders Settlement as set forth in Article 5.45(b).

- **AMI and Batsu Causes of Action**. AMI and Batsu will convey all their third-party Causes of Action to the Debtors or the Liquidating Trust, as applicable.

- **Plan Support**: AMI, Batsu, and their related parties agree to vote in favor of the Debtors' Plan.

- **Releases**: The Debtors, the Committee, AMI, and the Bond Trustee on behalf of the Bondholders will grant each other mutual releases, including related parties and directors and officers.

- **Related Party Releases**: The Debtors will provide a release to JCI Development.

The Debtors believe that the terms of the AMI Settlement are fair and equitable and in the best interests of the Estates. As a result, the AMI Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

(b)    DIP Lenders Settlement.

61

The DIP Lenders are entitled to a super-priority administrative claim in the amount of $35,250,000 (the "DIP Financing Claim") on account of debtor-in-possession financing that they provided to the Debtors as authorized by the Court pursuant to the DIP Orders. The Debtors have advised the DIP Lenders that they are unable to satisfy in full the $35,250,000 claim. The DIP Lenders are willing to compromise their DIP Financing Claim (the "DIP Lenders Settlement") pursuant to the following terms:

- **Initial Payment**. The Liquidating Trustee will pay the DIP Lenders $14,000,000 and payment as set forth in Class 3 of the Plan from the proceeds of the Sale Transaction.

- **Trust Advance Claims**. In full and final satisfaction of the Trustee Advance Notes Claims, the Liquidating Trustee will pay Holders of Trustee Advance Notes from the proceeds of the Sale Transaction in an amount up to $10,000,000.

- **Bondholders Direct Claim Contribution**. Settling Bondholders will contribute their Non-Estate Causes of Action to the Liquidating Trust.

- **Initial Liquidating Trust Distribution**. A one-time, lump sum payment of $250,000 (the "Initial Liquidating Trust Distribution") will be distributed to the DIP Lenders on the Effective Date. The Initial Liquidating Trust Distribution, and up to $300,000 of the Indemnification Funds if and when they are returned to the Debtors' Estates, will be contributed by the DIP Lenders to the Liquidating Trust to create the General Unsecured Claim Settlement Payment.

- **Division of Liquidating Trust Distributions**: Distributions from the proceeds of the Liquidating Trust after the Initial Liquidating Trust Distribution will be distributed as follows:

  o The DIP Lenders will receive one hundred percent (100%) of all Liquidating Trust distributions until $1,600,000 of the Initial Liquidating Trust Funding Amount is repaid in full to the DIP Lenders.

  o Proceeds from the Liquidating Trust between $1,600,001 and $5,000,000 will be distributed (i) fifty-eight and eight tenths' percent (58.8%) to the DIP Lenders, (ii) thirty-nine and two tenths' percent (39.2%) to the Settling Bondholders and Permitted Non-Voting Bondholders as set forth in the Plan, and (iii) two percent (2%) to AMI on account of their respective Allowed Claims or AMI Deficiency Claim.

  o Proceeds from the Liquidating Trust between $5,000,001 and $12,500,000 will be distributed (i) fifty-nine percent (59%) to the Settling Bondholders and Permitted Non-Voting Bondholders as set forth in the Plan, (ii) thirty-nine percent (39%) to the DIP Lenders, and (iii) two percent (2%) to AMI on account of their respective Allowed Claims or AMI Deficiency Claim.

  o Proceeds from the Liquidating Trust that exceed $12,500,001 will be distributed (i) seventy-nine and five tenths' percent (79.5%) to the Settling Bondholders and

DM_US 204987622-2.121080.0012

Permitted Non-Voting Bondholders as set forth in the Plan, (ii) nineteen and five tenths' percent (19.5%) to the DIP Lenders, and (iii) one percent (1%) to AMI on account of their respective Allowed Claims or AMI Deficiency Claim.

o   Holders of Allowed Bondholder Claims that are Non-Settling Bondholders will receive proceeds from the Liquidating Trust pursuant to the terms of the Plan after the Holders of Allowed Bondholder Claims that are Settling Bondholders and Permitted Non-Voting Bondholders are satisfied and paid in full.

o   The Liquidating Trustee may, in his sole discretion and with the consent of the DIP Lenders, elect to provide similar treatment to Permitted Non-Voting Bondholders and Non-Settling Bondholders as that received by Settling Bondholders, in which case Non-Settling Bondholders may be treated as Permitted Non-Voting Bondholders.

o   Holders of Allowed Batsu Claims will receive proceeds from the Liquidating Trust after the Class 3 Allowed DIP Financing Claims and Class 8 Allowed Bondholder Claims are satisfied and paid in full.

o   Holders of Allowed General Unsecured Claims will receive proceeds from the Liquidating Trust after the Class 3 Allowed DIP Financing Claims, Allowed Bondholder Claims, and Allowed Batsu Claims are satisfied and paid in full.

o   No Claimant will receive more than their Allowed Claim.

The Debtors believe that the terms of the DIP Lenders Settlement are fair and equitable and in the best interests of the Estates.  As a result, the DIP Lenders Settlement should be approved by the Bankruptcy Court in the Confirmation Order pursuant to Bankruptcy Rule 9019(b).

**5.46**   **Return of Deposits**.

Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Entity at any time, to the extent not returned to the Debtors prior to, or as soon as reasonably practicable following, the Effective Date, shall be returned to the Liquidating Trustee as set forth in agreements between the Debtors and the Entities holding such security deposits or under applicable law, without deduction or offset of any kind, except for such deductions or offsets as allowed under the agreements between the Debtors and the Entities holding such security deposits.

## ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1**   **General Provisions**.

Except with respect to the Insurance Policies, all Contracts and Leases shall be deemed rejected as of the Effective Date, unless a particular Contract or Lease (i) has previously been

assumed or rejected under Bankruptcy Code section 365 pursuant to a Final Order of the Bankruptcy Court, or (ii) has expired or otherwise terminated pursuant to its terms. For the avoidance of doubt, Payor Contracts are not executory contracts or being rejected under Bankruptcy Code section 365 because the Debtors have terminated such Payor Contracts.

### 6.2    Rejection Damages Bar Date.

Any non-Debtor counterparty to a Contract or Lease that is rejected in accordance with the Plan shall file a proof of Claim for damages arising from such rejection no later than the Rejection Damages Bar Date. The failure to timely file a proof of Claim shall be deemed a waiver of any Rejection Damages Claim that arose in connection with the rejection of such Contract or Lease. Any such Claim, to the extent Allowed, shall be classified as a Class 11 General Unsecured Claim.

### 6.3    Effect of Post-Confirmation Rejection.

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of a Contract or Lease entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE 7
## CONDITIONS PRECEDENT; CONFIRMATION AND EFFECTIVE DATE

### 7.1    Conditions Precedent to Plan Confirmation.

The following conditions must be satisfied or waived by the Debtors on or before the Confirmation Date:

(a)    The Disclosure Statement Order shall have been entered by the Bankruptcy Court and shall have become a Final Order; and

(b)    The Confirmation Order to be entered by the Bankruptcy Court shall contain provisions that, among other things: (1) authorize the implementation of the Plan in accordance with its terms; (2) approve in all respects the other settlements, transactions, and agreements to be effectuated under the Plan; (3) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; (4) order that the Liquidating Trust Assets are transferred to, and vest in, the Liquidating Trust on the Effective Date, free and clear of all Claims, Liens, Encumbrances, and Interests, including, without limitation, all rights of setoff and recoupment, of any Entity, except as otherwise set forth in the Plan; (5) order that the Liquidating Trustee is authorized to take any and all action necessary or appropriate to perform his duties under the Plan and the Liquidating Trust Agreement; (6) order that the GUC Liquidating Trust Assets are transferred to, and vest in, the GUC Liquidating Trust on the Effective Date, free and clear of all Claims, Liens, Encumbrances, and Interests, including, without limitation, all rights of setoff and recoupment, of any Entity, except as otherwise set forth in the Plan; and (7) order that the

64

GUC Liquidating Trustee is authorized to take any and all action necessary or appropriate to perform his duties under the Plan and the GUC Liquidating Trust Agreement

**7.2** **Conditions Precedent to the Effective Date**.

The Effective Date shall not occur and no obligations under the Plan shall come into existence unless each of the following conditions is met or, alternatively, is waived in accordance with Article 7.3:

(a)    The conditions precedent to Plan Confirmation in Article 7.1 shall have been satisfied or waived;

(b)    The Confirmation Order shall have become a Final Order and shall not have been amended, modified, vacated, stayed, or reversed;

(c)    All documents contemplated by the Plan to be executed and delivered on or before the Effective Date shall have been executed and delivered;

(d)    The Liquidating Trustee shall have been designated and shall be empowered to take all actions as contemplated by the Plan and the Liquidating Trust Agreement; and

(e)    The GUC Liquidating Trustee shall have been designated and shall be empowered to take all actions as contemplated by the Plan and the GUC Liquidating Trust Agreement.

**7.3** **Waiver of Conditions Precedent**.

Each condition precedent in Articles 7.1 and 7.2 of the Plan may be waived or modified in whole or in part by the Debtors without further Order of the Bankruptcy Court.

**ARTICLE 8**

**INJUNCTION; RELEASE; EXCULPATION**

**8.1** **General Injunctions**.

The following provisions shall apply and shall be fully set forth in the Confirmation Order.

**8.2** **Injunctions Against Interference with Consummation or Implementation of Plan**.

**All Holders of Claims or Interests shall be enjoined from commencing or continuing any judicial or administrative proceeding or employing any process against any of the Debtors, the Estates, the Liquidating Trustee, the GUC Liquidating Trustee, the Liquidating Trust, or the GUC Liquidating Trust with the intent or effect of interfering with the Consummation or implementation of the Plan or the transfers, payments or Distributions to be made hereunder.**

65

**8.3**     **Plan Injunction**.

(a)     **Satisfaction of Claims and Interests**.   The treatment to be provided for Allowed Claims and Interests shall be in full satisfaction, settlement, and release of each such Claim and Interest.

(b)     **Scope of Injunction**.   Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim or Interest are permanently enjoined from taking any of the following actions against the Debtors, the Liquidating Trustee, the GUC Liquidating Trustee, or any Released Party on account of any Claim or Interest: (1) commencing or continuing in any manner any action or other proceeding with respect to a Claim or Interest or based upon a theory which arises out of such Holder's Claim or Interest; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to a Claim or Interest; (3) creating, perfecting, or enforcing any Lien or Encumbrance with respect to a Claim or Interest; (4) asserting a setoff, right of subrogation, or recoupment of any kind with respect to a Claim or Interest, the Liquidating Trust Assets, GUC Liquidating Trust Assets, the Assets, or other property of the Estates; and (5) commencing or continuing any action that does not comply with or is inconsistent with the Plan.   For the avoidance of doubt, nothing in this injunction shall limit the rights of a Holder of a Claim to enforce the terms of the Plan.

(c)     **Release of Collateral**.   Except as expressly provided herein, unless a Holder of a Secured Claim receives a return of its Collateral in respect of such Claim under the Plan: (1) each Holder of (i) an Allowed Secured Claim; and/or (ii) an Allowed Claim that is purportedly secured, on the Effective Date shall (2) turn over and release to the Liquidating Trust any and all property that secures or purportedly secures such Claim; and (3) execute such documents and instruments as the Liquidating Trustee requires to evidence such claimant's release of such property; and (4) on the Effective Date, all Claims, rights, title, and interest in such property shall revert to the Liquidating Trust, free and clear of all Claims, including (without limitation) Liens, charges, pledges, Encumbrances, rights of setoff, rights of recoupment, and/or security interests of any kind.   No Distribution shall be made to or on behalf of any Holder of such Claim unless and until such Holder executes and delivers to the Liquidating Trustee such release of Liens.   Any such Holder that fails to execute and deliver such release of Liens within 60 days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder.   Notwithstanding the immediately preceding sentence, a Holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or Disallowed.

(d)     **Cause of Action Injunction**.   On and after the Effective Date, all Persons or Entities other than the Liquidating Trustee and the GUC Liquidating Trustee, as applicable, will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or

66

**otherwise) on account of, or respecting any claim, debt, right, or Cause of Action that the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, retains authority to pursue in accordance with the Plan.**

**(e)    Gatekeeper Provision.    No enjoined party may commence or pursue a claim or Cause of Action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Cases.    The negotiation of the Plan, the administration of the Plan or property to be disturbed under the Plan, the wind down of the business of the Debtors, the administration of the Liquidating Trust, the administration of the GUC Liquidating Trust, or any transaction in furtherance of the foregoing without the Bankruptcy Court (1) first determining after notice and a hearing, that such claim or Cause of Action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, actual fraud, or gross negligence against a Protected Party and (2) specifically authorizing such enjoined party to bring such claim or Cause of Action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article 8 of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or Cause of Action.**

### 8.4    All Distributions Received in Full and Final Satisfaction.

Except as otherwise set forth herein, all payments and all Distributions to be made in accordance with the Plan on account of Claims (including Administrative Expense Claims) shall be received in full and final satisfaction, settlement, and release of the Estates' obligations for such Claims as against the Debtors, their property, the Estates, the Liquidating Trust, and the GUC Liquidating Trust.

### 8.5    No Modification of *Res Judicata* Effect.

The provisions of this Article 8 are not intended, and shall not be construed, to modify the *res judicata* effect of any Order entered in the Chapter 11 Cases, including, without limitation, the Confirmation Order and any Order finally determining the allowance of the Professional Fee Claims of any Professional.

### 8.6    Exculpation for Debtors, Committee, and Estate Professionals.

**To the fullest extent permitted by Bankruptcy Code section 1125(e), the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation, or consummation of the Plan, the Disclosure Statement, the Sale Transaction, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Cases, except for acts or omissions as a result of actual fraud, willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under**

the Plan.  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any Claim or liability released under the Plan.

### 8.7    Releases by the Debtors and Their Estates.

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or arising from actual fraud, gross negligence, or willful misconduct, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors and the Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, the Sale Order, the Purchase Agreement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on or before the Effective Date; *provided, however*, that the foregoing release shall not prohibit the Debtors, the Liquidating Trust, the Liquidating Trustee, the GUC Liquidating Trust, or the GUC Liquidating Trustee, as applicable, from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Party.  For the avoidance of doubt, except as set specifically forth herein, nothing in this Plan or any related document shall impair any rights with respect to any D&O Claims and all D&O Claims are expressly reserved and preserved.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors' Estates and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors' Estates, Liquidating Trust, or the GUC Liquidating Trust asserting any Claim or Cause of Action released under the Debtor Release.

### 8.8    Releases by Holders of Claims (Third-Party Release)

As of the Effective Date, each of the Releasing Parties (other than the Debtors) shall be deemed to have expressly, absolutely, unconditionally, irrevocably, generally,

68

individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the AMI Settlement, the DIP Lenders Settlement, the formulation, preparation, dissemination, negotiation, or filing of the DIP Financing, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any sale, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the DIP Financing, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the assumption, rejection, or amendment of any Contract and/or Lease; (e) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected through the liquidation (including pursuant to the Plan) or classified in the Plan; (f) the filing or administration of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, including, but not limited to, the Liquidating Trust and GUC Liquidating Trust; (g) pre-petition financing, including the financing from Sandton, AMI, and related to the Trustee Advance Notes; or (h) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing (collectively, the "**Covered Released Matters**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release any post-Effective Date obligations of any Entity under the Plan, including the Plan Supplement, or other document, instrument or agreement executed to implement the Plan.

**8.9** **Term of Injunction or Stays**.

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

# ARTICLE 9

## PROVISIONS GOVERNING DISTRIBUTIONS

**9.1**    **Payment in U.S. Dollars**.

All Cash payments required under the Plan shall be made in U.S. dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, in accordance with the Plan or by wire transfer from a domestic bank, at the option of the Liquidating Trustee or the GUC Liquidating Trustee, as applicable.  The Liquidating Trustee or the Liquidating Trustee, as applicable, may use the services of a third party to aid in the Distributions required to be made under the Plan.

**9.2**    **Distributions Only on Business Days**.

Notwithstanding the foregoing provisions, if any Distribution under the Plan is due on a day other than a Business Day, such Distribution shall instead be made the next Business Day.

**9.3**    **Unclaimed Distributions**.

Unclaimed Distributions shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distribution(s) shall be deemed forfeited and expunged without any further action or Order of the Bankruptcy Court, and the Holder of such Claim(s) shall be removed from the Distribution schedules and expunged from the Claims register and shall receive no further Distributions under the Plan.  Any such Unclaimed Distributions shall, as soon as is practicable, be redistributed pursuant to the provisions of the Plan.

**9.4**    **Timing of Distributions Generally**.

The first Distribution shall occur as soon as practicable on or after the Effective Date.  To the extent subsequent Distributions are necessary, such subsequent Distributions shall occur as soon after the first Distribution Date as the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, shall reasonably determine is appropriate in light of (i) the amount of Cash on hand; (ii) the amount and nature of Disputed Claims; (iii) the activities to be accomplished, including their anticipated duration and costs; (iv) the length of time since any prior Distribution; and (v) the costs of effecting any interim Distribution.

**9.5**    **Timing of Distributions on Disputed Claims Subsequently Allowed**.

If a Disputed Claim is Allowed, in whole or in part, after the Effective Date, a Distribution shall be made on account of such Allowed Claim on the next Distribution Date that is at least fifteen (15) Business Days after such Claim is Allowed.

**9.6**    **No Payment or Distribution on Disputed Claims**.

Any contrary provision hereof notwithstanding, no payments or other Distributions shall be made on account of any Disputed Claim, or any portion thereof, unless and until such Claim is

70

Allowed by Final Order.  For the avoidance of doubt, no portion of any Disputed Claim is entitled to a Distribution.  Holders of Disputed Claims shall be bound, obligated, and governed in all respects by the Plan.

> **9.7**      **Disputed Distribution**.

If a dispute arises as to the identity of a Holder of an Allowed Claim who is to receive a Distribution, the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, may, in lieu of making such Distribution to such Holder, hold such amount until the dispute is resolved by Final Order or by written agreement among the parties to such dispute.

> **9.8**      **Transmittal of Payments and Notices**.

All Distributions shall be made to the Holder of a Claim by regular first-class mail, postage prepaid, in an envelope addressed to such Holder at the address listed on its proof of Claim filed with the Claims Agent or Bankruptcy Court or, if no proof of Claim was filed, (i) at the address listed on the Debtors' Schedules, or (ii) at such address that a Holder of a Claim provides to the Debtors and the Liquidating Trustee after the Effective Date in writing and files at least fifteen (15) Business Days prior to a Distribution Date.  Neither the Debtors nor the Liquidating Trustee shall have any duty to ascertain the mailing address of any Holder of a Claim other than as set forth herein.  The date of payment or delivery shall be deemed to be the date of mailing.  Payments made in accordance with the provisions of this Article 9.8 shall be deemed made to the Holder regardless of whether such Holder actually receives the payment.

> **9.9**      **Record Date for Distributions**.

Except as otherwise provided in a Final Order, transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 with appropriate filings made on or before the Effective Date (the "Record Date") shall be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer(s) may not have expired prior to the Record Date.  The Debtor and the Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making a Distribution with respect to any Claim, the Debtors, the Liquidating Trustee, or the GUC Liquidating Trustee, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with the Person who is listed on the proof of Claim filed with respect to such Claim, on the Debtors' Schedules as the Holder thereof, and upon such other evidence or record of transfer or assignment filed as of the Record Date.  Notwithstanding the foregoing, the Record Date shall not apply to the 2020 Bonds or any securities of the Debtors deposited with DTC, the Holders of which shall receive a Distribution in accordance with Article 9 of the Plan and, as applicable, the customary procedures of DTC.

> **9.10**      **Claims Administration Responsibility**.

> (a)      Reservation of Rights.  Unless a Claim is specifically Allowed prior to or after the Effective Date or under the Plan, the Liquidating Trustee and the GUC Liquidating Trustee, as applicable, reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, secured or unsecured,

71

including, without limitation, any and all objections to the validity or amount of any and all asserted Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Secured Tax Claims, DIP Financing Claims, Trustee Advance Notes Secured Claims, AMI Secured Claims, Bondholder Claims, Medicare and Medicaid Secured Claims, Other Secured Claims, Batsu Claims, Intercompany Claims, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The failure to object to any Claim prior to the Effective Date shall be without prejudice to, as applicable, the Liquidating Trustee's and GUC Liquidating Trustee's rights to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of the Claim.

(b)     <u>Objections to Claims</u>.  The Liquidating Trustee may dispute, object to, compromise, or otherwise resolve all Claims at any time prior to the dissolution of the Liquidating Trust or GUC Liquidating Trust, as applicable.  Unless otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims shall be filed and served no later than the Claims Objection Bar Date.

(c)     <u>Filing Objections</u>.  An objection to a Claim shall be deemed properly served on the claimant if the Liquidating Trustee causes service of any such objection to be effected in accordance with Bankruptcy Rule 3007 by mailing or otherwise delivering the objection and a notice of hearing thereon to the claimant at the address set forth on such claimant's proof of Claim at least thirty (30) days prior to the hearing thereon.

(d)     <u>Determination of Claims</u>.  Except as otherwise agreed by the Debtors, Liquidating Trustee, or GUC Liquidating Trustee, as applicable, any Claim as to which a proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases may be determined and liquidated after the Effective Date pursuant to (i) a Final Order, or (ii) applicable non-bankruptcy law.  Any Claim determined to be an Allowed Claim after the Effective Date under this Article 9.10(d) of the Plan shall be treated as an Allowed Claim in accordance with the Plan.

## 9.11   **Disputed Claims**.

(a)     For purposes of effectuating the provisions of the Plan and the Distributions to Holders of Allowed Claims, the Bankruptcy Court, on or prior to the Effective Date, or thereafter upon the request of any Holder of a Claim, the Liquidating Trustee, or GUC Liquidating Trustee, as applicable, may liquidate the amount of Disputed Claims pursuant to Bankruptcy Code section 502(c), in which event the amounts so fixed or liquidated shall be deemed to be the aggregate amounts of the Disputed Claims under Bankruptcy Code section 502(c) for purposes of Distribution under the Plan and for purposes of the Disputed Confirmation Reserve and GUC Liquidating Trust Disputed Claim Reserve, as applicable.

(b)     When a Disputed Claim becomes an Allowed Claim, there shall be distributed to the Holder of such Allowed Claim, in accordance with the provisions of the Plan (but in no event later than the next succeeding Distribution Date), Cash in the amount of all Distributions to which such Holder would have been entitled if such Holder's Claim

72

were Allowed on the Effective Date, to the extent of available Cash to make such Distribution.

(c)     In no event shall any Holder of any Disputed Claim be entitled to receive (under the Plan or otherwise) any Cash payment that is greater than the amount reserved, if any, for such Disputed Claim under the Plan.  In no event shall the Debtors, the Liquidating Trustee, or the GUC Liquidating Trustee have any responsibility or liability for any loss to or of any amount reserved under the Plan unless such loss is the result of that party's actual fraud, willful misconduct, or gross negligence.  In no event may any Creditor whose Disputed Claim is subsequently Allowed pursue or recover from any other Creditor any funds received as Distributions under the Plan.

(d)     To the extent that a Disputed Claim ultimately becomes an Allowed Claim and is entitled to a Distribution in an amount less than the amount reserved for such Disputed Claim, then on the next succeeding Distribution Date, the Liquidating Trustee or the GUC Liquidating Trustee, as applicable, shall make, in accordance with the terms of the Plan, a Distribution of the excess amount reserved for such Disputed Claim in accordance with the Plan.

(e)     The Disputed Confirmation Reserve and GUC Liquidating Trust Disputed Claim Reserve shall be treated as disputed ownership funds, within the meaning of Treasury Regulation section 1.468B-9, for all purposes associated with taxation.

(f)     Except as expressly set forth in the Plan, or otherwise agreed to in writing or ordered by the Bankruptcy Court, the Liquidating Trustee shall not have any duty to fund the Disputed Confirmation Reserve and the GUC Liquidating Trustee shall not have any duty to fund the GUC Liquidating Trust Disputed Claim Reserve.

(g)     The Liquidating Trustee or the GUC Liquidating Trustee, as applicable, shall pay, or cause to be paid, out of the funds held in the Disputed Confirmation Reserve or GUC Liquidating Trust Disputed Claim Reserve, as applicable, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Confirmation Reserve or GUC Liquidating Trust Disputed Claim Reserve, as applicable.  The Liquidating Trustee shall file, or cause to be filed, any tax or information return related to the Disputed Confirmation Reserve that is required by any federal, state, or local taxing authority.  The GUC Liquidating Trustee shall file, or cause to be filed, any tax or information return related to the GUC Liquidating Trust Disputed Claim Reserve that is required by any federal, state, or local taxing authority.

**9.12    <u>Resolution of Disputed Claims</u>.**

If the Holder of a Disputed Claim or Claim that has not otherwise been Allowed and the Liquidating Trustee or GUC Liquidating Trust, as applicable, agrees to a settlement of such Claim (a) for payment that does not exceed fifty thousand dollars ($50,000) or (b) by Allowing such Claim in an amount that does not exceed two hundred fifty thousand dollars ($250,000), the Liquidating Trustee or GUC Liquidating Trustee, as applicable, shall be authorized to enter into such settlement without any further notice or approval of the Bankruptcy Court, and the settled

73

Claims shall be deemed an Allowed Claim. If the Holder of such a Claim and the Liquidating Trustee or GUC Liquidating Trustee, as applicable, agree to a settlement of such Claim (1) for a payment that exceeds fifty thousand dollars ($50,000) or (2) by allowing such Claim in an amount that exceeds two hundred fifty thousand dollars ($250,000), the Liquidating Trustee shall provide notice of the proposed settlement (with a fourteen-day (14-day) period to object) to the Persons or Entities on the Post-Effective Date Notice List as set forth in Article 12.15 of the Plan. If no objection is received within the fourteen-day (14-day) period, the settled Claim shall be deemed to be an Allowed Claim, without the need for further review by, or approval of, the Bankruptcy Court or any other party. If an objection to a proposed settlement is received within the fourteen-day (14-day) period and such objection cannot otherwise be resolved, then the Liquidating Trustee or GUC Liquidating Trustee, as applicable, shall schedule a hearing in the Bankruptcy Court to resolve the objection.

### 9.13    No Payments of Fractional Cents or Distributions of Less Than Fifty Dollars.

(a)    Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with halfpennies or less being rounded down and fractions in excess of half of a penny being rounded up.

(b)    Any contrary provision hereof notwithstanding, for purposes of administrative convenience, no Distribution of less than fifty dollars ($50) shall be made pursuant to the Plan. Whenever any Distribution of less than fifty dollars ($50) under the Plan would otherwise be required, such funds will be retained by the Liquidating Trustee for the account of the recipient until such time that successive Distributions aggregate to fifty ($50), at which time such payment shall be made, and if successive Distributions do not ever reach fifty ($50) in the aggregate, then such Distributions shall be returned to the Liquidating Trust or GUC Liquidating Trust, as applicable.

### 9.14    Setoff and Recoupment.

Except as otherwise provided in the Plan, the Liquidating Trustee or GUC Liquidating Trustee, as applicable, may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims, defenses or Causes of Action of any nature whatsoever that the Debtors may have, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, Liquidating Trustee, or GUC Liquidating Trustee of any right of setoff or recoupment against the Holder of any Claim.

### 9.15    Estimation of Claims.

The Liquidating Trust and GUC Liquidating Trust may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim, for which such trust is responsible, not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtors may be liable under the

74

Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party-in-interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.  If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable).   The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

**9.16    No Recourse**.

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Claim Holder shall have recourse against the Debtors, the Estates, the Liquidating Trustee, the GUC Liquidating Trust, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property.  Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**9.17    Automatic Disallowance and Expungement of Certain Claims**.

On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**9.18    Tax Withholding and Reporting Requirements**.

Neither the Liquidating Trustee nor the GUC Liquidating Trustee shall be required to withhold taxes or comply with any applicable reporting requirements.   The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions.  If requested by the recipient of a Distribution, the Liquidating Trustee or GUC Liquidating Trustee, as applicable, will issue an IRS Form 1099.

**9.19** **No Distribution in Excess of Allowed Amount of Claim**.

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim.

## ARTICLE 10

## PLAN INTERPRETATION, CONFIRMATION AND VOTING

**10.1** **Procedures Regarding Objections to Designation of Classes as Impaired or Unimpaired**.

If the designation of the treatment of a Class as Impaired or Unimpaired is objected to, the Bankruptcy Court shall determine the objection, and voting shall be permitted or disregarded in accordance with the determination of the Bankruptcy Court.

**10.2** **Withdrawal and Modification of Plan**.

The Plan may be withdrawn or modified by the Debtors at any time prior to the Confirmation Date. The Debtors may modify the Plan in any manner consistent with Bankruptcy Code section 1127 prior to substantial consummation thereof. The Debtors may modify the Plan after substantial consummation with the approval of the Bankruptcy Court, provided that such modification does not affect the essential economic treatment of any Person or Entity that objects in writing to such modification.

**10.3** **Voting of Claims**.

Each Holder of a Claim as of the Voting Record Date (as defined in the Disclosure Statement Order) in Class 3 (DIP Financing Claims), Class 4 (Sandton Secured Claims), Class 5 (Trustee Advance Notes Secured Claims), Class 6 (Bond Trustee Expense Claims), Class 7 (AMI Secured Claims), Class 8 (Bondholder Claims), Class 11 (General Unsecured Claims), and Class 12 (Batsu Claims) shall be entitled to vote to accept or reject the Plan. The Disclosure Statement Order shall govern the manner and procedures for casting Ballots with the Voting Agent.

**10.4** **Acceptance by Impaired Class**.

Consistent with Bankruptcy Code section 1126(c), and except as provided for in Bankruptcy Code section 1126(e), a Class of creditors shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the Holders of Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**10.5** **Presumed Acceptances of Plan**.

Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Secured Tax Claims), Class 9 (Medicare and Medicaid Secured Claims) and Class 10 (Other Secured Claims) are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan, pursuant to Bankruptcy Code section 1126(f).

**10.6**    **Presumed Rejections of Plan**.

Class 13 (Intercompany Claims) and Class 14 (Interests) are presumed to have rejected the Plan but may elect to accept the Plan, pursuant to Bankruptcy Code section 1126(g).

**10.7**    **Cramdown**.

The Debtors request confirmation of the Plan under Bankruptcy Code section 1129(b) with respect to any Impaired Class that does not accept the Plan pursuant to Bankruptcy Code section 1126. The Debtors reserve the right to modify the Plan in order to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## ARTICLE 11

## RETENTION OF JURISDICTION BY BANKRUPTCY COURT

**11.1**    **Retention of Jurisdiction**.  Pursuant to Bankruptcy Code sections 105(a) and 1142, the Bankruptcy Court shall, to the fullest extent permissible under applicable law, have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

(a)    hear and determine any and all objections to the allowance of any Claim or Administrative Expense Claim, or any controversy as to the classification of Claims or any matters that may directly, indirectly, or contingently affect the obligations of the Debtors, the Liquidating Trustee, the GUC Liquidating trustee, to any Creditors, Holders of Claims, or other parties-in-interest;

(b)    hear and determine any and all applications for compensation and reimbursement of expenses by Professionals;

(c)    hear and determine any and all pending motions for the assumption or rejection of Contracts and Leases, and to fix any Claims resulting therefrom;

(d)    adjudicate through final judgment such contested matters and adversary proceedings as may be pending or subsequently initiated in the Bankruptcy Court, including, but not limited to, Causes of Action brought by the Liquidating Trustee;

(e)    resolve any matters related to the pre- and post-Confirmation Date sales of the Debtors' Assets, including, but not limited to, the Sale Transaction;

(f)    enforce and interpret the provisions of the Plan, the Disclosure Statement Order, the Confirmation Order, and any other Order of the Bankruptcy Court in the Chapter 11 Cases;

(g)    issue any injunction or other relief appropriate to implement the intent of the Plan, and to enter such further Orders enforcing any injunctions or other relief issued under the Plan or pursuant to the Confirmation Order;

(h)      consider any modifications of the Plan pursuant to Bankruptcy Code section 1127 and the applicable Bankruptcy Rules;

(i)      correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and the intent of the Plan;

(j)      issue and implement Orders in aid of execution, implementation, or Consummation of the Plan;

(k)      interpret and determine such other matters as the Confirmation Order may provide for or as may be authorized under the Bankruptcy Code;

(l)      enter and implement such Orders as may be appropriate if the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated;

(m)      enter a Final Decree closing the Chapter 11 Cases; and

(n)      hear any other matters not inconsistent with the Bankruptcy Code.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

### 12.1    **Headings**.

Headings are utilized in the Plan for the convenience of reference only and shall not constitute a part of the Plan for any other purpose.

### 12.2    **No Attorneys' Fees**.

No attorneys' fees with respect to any Claim or Interest shall be payable under the Plan, except as expressly specified herein or Allowed by a Final Order.

### 12.3    **Dissolution of Committee**.

On the Effective Date, the Committee shall dissolve automatically, and the members thereof (solely in their capacities as Committee members) shall be released and discharged from all further authority, duties, responsibilities, and obligations arising from or related to the Chapter 11 Case; *provided, however*, that the Committee shall continue to exist, and its Professionals shall continue to be retained, solely for purposes of preparing and prosecuting any final fee applications of its Professionals.  For the avoidance of doubt, Ovation Healthcare will not receive any release or exculpation.

### 12.4    **Additional Documents**.

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further

78

evidence the terms and conditions of the Plan.  The Debtors, the Liquidating Trustee, or the GUC Liquidating Trustee, as applicable, and Holders of Claims receiving Distributions pursuant to the Plan and all other parties-in-interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.5    Governing Law.

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of Texas, without giving effect to the principles of conflict of laws that would require application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

### 12.6    Notices.

Except as otherwise specified in the Plan, after the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Liquidating Trustee shall be served on:

> If to the Debtor:
> McDermott Will & Emery LLP
> c/o Marcus Helt
> 2501 North Harwood Street, Suite 1900
> Dallas, Texas 75201
> Email: mhelt@mwe.com
>
> If to the Liquidating Trustee:
> MeadowLark Advisors, LLC
> c/o Jonathan Nash
> PO Box 203024
> Austin, TX 78720
>
> If to the GUC Liquidating Trustee:
> Caliber Advisors, LLC
> c/o David Gonzalez
> 7373 E. Doubletree Ranch Road Suite 210,
> Scottsdale, AZ 85258

### 12.7    No Discharge.

The Debtors shall not receive a discharge under the Plan under Bankruptcy Code section 1141(d)(3).

**12.8    Claims In Dollars**.

Any Claims asserted in foreign currencies shall be converted to United States Dollars in accordance with the prevailing exchange rates published by the *Wall Street Journal* on the Confirmation Date.

**12.9    Term of Injunctions or Stays**.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or any Order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms. For the avoidance of doubt, nothing in this Article 12.9 shall serve to abrogate any of the provisions of Article 8 of the Plan.

**12.10    Entire Agreement**.

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.11    Severability**.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and (c) nonseverable and mutually dependent.

**12.12    No Waiver or Estoppel**.

Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Committee and/or its counsel, or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court.

**12.13    Conflicts**.

80

In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern.  In the event that the provisions of the Plan and the provisions of the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

### 12.14   No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in the Plan or the Disclosure Statement shall be deemed as an admission by any Person or Entity with respect to any matter set forth herein.

### 12.15   Post-Effective Date Notice.

Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the US Trustee's Office, counsel to the Liquidating Trustee, counsel to the GUC Liquidating trustee, and any creditor that has a direct pecuniary interest in the relief sought by the pleading.  With the exception of the US Trustee, any Person desiring to remain on the Debtors' Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee and GUC Liquidating Trustee.  Parties who do not file a request for continued service shall be removed from the Debtors' Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading.  Notice of the requirement to file a request for continued service will be provided in the notice sent to all creditors regarding the confirmation of the Plan.

### 12.16   Deemed Acts.

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### 12.17   Reservation of Rights.

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### 12.18   Binding Effect.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim or Interest against the Debtors who held such Claim or Interest at any time during the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired

under the Plan and whether or not such Holder has accepted (or has been deemed to accept) the Plan. The rights, benefits, and obligations of any Person named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person (including, but not limited to, any trustee appointed for the Debtors under chapter 7 or 11 of the Bankruptcy Code). The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any Order that may be entered converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

Dated: April 23, 2024
      Dallas, Texas

                                         By: */s/  Jonathan Nash*
                                             Jonathan Nash
                                             Chief Restructuring Officer
                                             Sunland Medical Foundation

# **EXHIBIT B**

Confirmation Notice

Marcus A. Helt
TX Bar No. 24052187
Jack G. Haake
TX Bar No. 24127704
Grayson Williams
TX Bar No. 24124561
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Tel:    (214) 295-8000
Fax:    (972) 232-3098
Email:   mhelt@mwe.com
        jhaake@mwe.com
        gwilliams@mwe.com

Natalie Rowles (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017-3852
Tel:    (212) 547-5400
Fax:    (212) 547-5444
Email:   nrowles@mwe.com

COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNLAND MEDICAL FOUNDATION, *et al.*,[1] | ) | Case No. 23-80000 (MVL) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |

## NOTICE OF CONFIRMATION, EFFECTIVE DATE, AND
## ADMINISTRATIVE CLAIMS BAR DATE

**PLEASE TAKE NOTICE** that, on April [ ], 2024, the United States Bankruptcy Court

for the Northern District of Texas (the "Court") entered the *Order Approving Disclosure Statement*

*and Confirming Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation*

*and 4750 GHW Bush Land Holdings LLC* [Docket. No. ____] (the "Confirmation Order"). Among

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or business identification number, as applicable, are: Sunland Medical Foundation (7757) and 4750 GHW Bush Land Holdings LLC (6536).  The location of the Debtors' service address is P.O. Box 203024, Austin, Texas 78720.

other things, the Confirmation Order approved the Debtor's *Second Amended Chapter 11 Plan of Liquidation of Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC*, a copy of which was attached to the Confirmation Order (the "Plan")[2] and authorized Sunland Medical Foundation and 4750 GHW Bush Land Holdings LLC (the "Debtors") to implement the Plan on the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that, on [April 26], 2024, the Effective Date under the Plan occurred.

**PLEASE TAKE FURTHER NOTICE** that the Plan establishes the Supplemental Administrative Expense Claim Bar Date as a deadline, Except as provided below for (i) Professionals requesting compensation or reimbursement for Professional Fee Claims, and (ii) US Trustee Fees, requests for payment of Administrative Expense Claims must be filed no later than **thirty (30) days** after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. Holders of Administrative Expense Claims who are required to file a request for payment of such Claims and who do not file such requests by the applicable Bar Date, shall be forever barred from asserting such Claims against the Debtors or their property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Expense Claim.  For the avoidance of doubt, any Administrative Expense Claim that arose on or before an Administrative Expense Claim Bar Date previously established by the Court shall be controlled by such prior order and nothing herein revives such Administrative Expense Claim.  Specifically, all Administrative Expense Claims that arose prior to or on March

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

14, 2024, that were not filed on or before April 15, 2024, at 5:00 p.m. (CT) are barred pursuant to the order entered at Docket No. 417.

**PLEASE TAKE FURTHER NOTICE** that Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Effective Date matters for which notice is required to be given shall be deemed sufficient if served upon the US Trustee's Office, counsel to the Liquidating Trustee, the GUC Liquidating Trustee, and any creditor that has a direct pecuniary interest in the relief sought by the pleading. With the exception of the US Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee. Parties who do not file a request for continued service shall be removed from the Debtors' Bankruptcy Rule 2002 service list upon the Effective Date and shall be served with pleadings only where they have a direct pecuniary interest in the relief sought by the pleading.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan provides that all executory contracts and unexpired leases will be rejected.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are rejecting those executory contracts and leases attached hereto as **Schedule 1**.

**PLEASE TAKE FURTHER NOTICE THAT** all Proofs of Claim with respect to Claims arising from the rejection of Contracts and Leases, including executory contracts or unexpired leases, if any, must be filed with the Court no later than **thirty (30) days** from entry of an order approving such rejection (which will be the Confirmation Order, in the case of an executory contract or unexpired lease that is rejected pursuant to the Plan). Any Claims arising from the rejection of an executory contract or unexpired lease not filed within that period of time shall be disallowed, forever barred from assertion, and shall not be enforceable against the Debtors the

3

Liquidating Trust, GUC Liquidating Trust, or property thereof, without the need for any objection by the Debtors, the Liquidating Trustee, or GUC Liquidating Trustee, as applicable or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in this chapter 11 case are available free of charge by visiting https://cases.stretto.com/sunlandmedical/.  You may also obtain copies of any pleadings by visiting the Court's website at https://ecf.txnb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: Dallas, Texas
April __, 2024

**MCDERMOTT WILL & EMERY LLP**

*/s/ Draft*
Marcus A. Helt
TX Bar No. 24052187
Jack G. Haake
TX Bar No. 24127704
Grayson Williams
TX Bar No. 24124561
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Tel:        (214) 295-8000
Fax:       (972) 232-3098
E-mail:    mhelt@mwe.com
              jhaake@mwe.com
              gwilliams@mwe.com

Natalie Rowles (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Tel:        (212) 547-5400
Fax:       (212) 547-5444
Email:     nrowles@mwe.com

**COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION**

5

**Schedule 1 to Contract Rejection Notice**

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| Sunland Medical Foundation | M1 Healthcare, LLC | Medical Billing Management |
| Sunland Medical Foundation | Inovalon Holdings, Inc. ("Inovalon") | Revenue Cycle Management Application |
| Sunland Medical Foundation | Professional Finance Company, Inc. ("PFC") | Receivable Collection Management |
| Sunland Medical Foundation | Proliant | Payroll Application |
| Sunland Medical Foundation | First Party Receivable Solutions ("PFC"?) | Receivable Collection Management |
| Sunland Medical Foundation | Healthcare Reimbursement Partners, LLC ("HRP") | Cost Report Compliance |